UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
                                        :

Jordan Herzberg,                          :     **ECF Case**

                                       :

Plaintiff                            :     No. 07 Civ. 10503 (RJS)

                                       :

          - against -               :

                                       :

MegaSpirea Productions SAS, MegaSpirea    :
International Inc., MegaSpirea Holdings Ltd.,   x
MegaSpirea Holding A.G., MegaSpirea NV, Mr.  :
Hersch Reich,                          :

                                       :

                  Defendants.      :

                                       :

                                       :

                                     ::

                                     ::

                                     ::

                                     ::

                                     :
------------------------------------------------------------ x

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS

Peretz Bronstein
BRONSTEIN, GEWIRTZ & GROSSMAN
LLC
60 East 42nd Street, Suite 4600
New York, New York  10165
Telephone:  (212) 697-6484

Attorneys for Plaintiff

**TABLE OF CONTENTS**

                                                                                    **Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

I.      AS PLAINTIFF HERZBERG IS A NEW YORK DOMICILIARY, THE COURT
        HAS SUBJECT MATTER JURISDICTION OVER THIS ACTION  . . . . . . . . .7

        A.  Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        B.  Domicile is the Relevant Test for Diversity Jurisdiction –
            Not Residency . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            1.  Plaintiff Herzberg and his Wife are New York Domiciliaries . . . . . . . . . .9

                a.  Herzberg and His Wife Own and Maintain a Home in
                    New York . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
                b.  Herzberg and his Wife Maintain Their Professional Lives in
                    New York . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
                c.  Herzberg's and his Wife's Social Lives Are Centered in
                    New York . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

            2.  Defendants Have Not Shown By Clear and Convincing Evidence that
                Herzberg Is No Longer A New York Domiciliary . . . . . . . . . . . . . . . . . .14

II.     ALL DEFENDANTS WERE PERSONALLY SERVED WITHIN NEW YORK
        AND TRANSACT BUSINESS IN NEW YORK.  THEREFORE, THERE IS
        PERSONAL JURISDICTION OVER ALL DEFENDANTS . . . . . . . . . . . . . .16

        A.  Defendants Were Personally Served Within New York . . . . . . . . . . . . . . 17

        B.  This Case Involves a Contract Formed in New York and
            Largely Performed in New York . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

            1.  Herzberg's employment contract with Defendants was formed in New
                York . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

            2.  The Performance of the Contract Largely Took Place in New York . . .22

      C.  There is No Due Process Violation – New York Is a Primary Locale for
          Reich's and MegaSpirea's Business Activity . . . . . . . . . . . . . . . . . . . . . . . 22

III.     NEW YORK IS THE MOST CONVENIENT FORUM FOR THIS ACTION 23

# TABLE OF AUTHORITIES

**Cases:**

**Page**

Aurecchione v. Schoolman, 426 F.3d 635 (2d Cir. 2005) . . . . . . . . . . . . . . .    7

Boston Safe Deposit & Trust Co. v. Morse, 779 F. Supp. 347 (S.D.N.Y. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7

Broadstone Realty Corp. v. Evans, 213 F. Supp. 261 (S.D.N.Y. 1962) . . . . . .    8

Burnham v. Superior Court, 495 U.S. 604, 617-19 (1990) . . . . . . . . . . . . . . .    14

Chappelle v. Beacon Communications Corp., 863 F. Supp. 179 (S.D.N.Y. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    9

Cyberscan Technology, Inc. v. Sema Ltd., 06 Civ. 526 (GEL), 2006 U.S. Dist. LEXIS 90375 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    passim

Digital Lab Solutions, LLC v. Stickler, 06 Civ. 6482 (LLS) , 2007 U.S. Dist. LEXIS 18396 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    18

DiRienzo v. Phillip Services Corp., 294 F.3d 21 (2d Cir. 2002) . . . . . . . . . . .    20

Gates v. Pinnacle Communications Corp., 623 F. Supp.  38, (S.D.N.Y. 1985)    18

George Reiner & Co v. Schwartz, 41 N.Y.2d 648; 363 N.E.2d 551; 394 N.Y.S.2d 844 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    18

Geogiadis v. First Boston Corp., 90 Civ. 7672 (PKL), 1994 U.S. Dist. LEXIS 10263 (S.D.N.Y. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    21

Gulf Oil Corporation v. Gilbert, 330 U.S. 501; 91 L. Ed. 1055; 67 S. Ct. 839 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    20

Kadic v. Karadzic, 70 F.3d 232 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . .    14

Katz v. Goodyear Tire & Rubber Co., 737 F.2d 238 (2d Cir. 1984) . . . . . . . .    7, 8

Kovowras v. Pinkerton, 97 Civ. 6098 (MBM), 1998 U.S. Dist. LEXIS 5962 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    13

Libra Global Technology Services (UK) Ltd. v. Telemedia Int'l Ltd. 279 A.D.2d 326; 719 N.Y.S.2d 53 (1st Dept 2001) . . . . . . . . . . . . . . . . . . . . . . . .    18

iv

**Page**

Manu Int'l v. Avon Products, Inc., 641 F.2d 62 (2d Cir. 1981) . . . . . . . . . . .   22
.

Optimum Worldwide Ltd. v. Klebener, 95 Civ. 1359 (HB)(HBP), 1997 U.S.
Dist. LEXIS 11097 (S.D.N.Y. Aug. 1, 1997) . . . . . . . . . . . . . . . . . . . . . . . . .   18

OR.EN. Orobia Engineering S.R.L.v. Nacht, 97 CIV. 4912 (SAS)(KNF),
1998 U.S. Dist. LEXIS 16319 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . .   13, 15, 19

Palazzo v. Corio, 232 F.3d 38, 42 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . .   7, 8

Peregrine Myanmar Ltd. v. Segal, 95 Civ. 8286 (RPP), 1995 U.S. Dist.
LEXIS 18179 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9, 20

United Computer Capital Corp. v. Secure Products LP,  218 F. Supp. 2d 273
(N.D.N.Y. 2002) . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

Walther v. Maricopa Int'l Investment Corp., 97 Civ. 4816 (HB), 1998 U.S.
Dist. LEXIS 5475 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

Wiwa v. Royal Dutch Petroleum, Co., 226 F.3d 88, 97-98 (2d Cir. 2000) . . .   19, 20

**Statutes and Rules**:

28 U.S.C. § 1332(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

28 U.S.C. § 1653 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

Fed. R. Civ. P. 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

Fed. R. Civ. P. 12(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

Fed. R. Civ. P. 15(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

N.Y. CPLR § 302(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15, 18

N.Y. C.P.L.R. § 311 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

**Treatises**:

13B Wright, Miller & Cooper § 3612 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

Plaintiff Jordan Herzberg ("Herzberg") respectfully submits this memorandum of law, along with the accompanying Declaration of Jordan Herzberg and Declaration of Anne Herzberg, in opposition to the motion of defendants MegaSpirea Productions SAS, MegaSpirea International, Inc., MegaSpirea Holdings Ltd., MegaSpirea Holding A.G., MegaSpirea NV, (collectively, "MegaSpirea"), and Hersch Reich ("Reich")(collectively "Defendants") to dismiss Herzberg's complaint ("Complaint" or "Compl.") pursuant to Fed. R. Civ. P. ("Rule") 12(b)(1), 12(b)(2), 12(b)(6), and under the doctrine of *forum non conveniens*.

## PRELIMINARY STATEMENT

In their Memorandum of Law, Defendants ask "Why did Plaintiff bring this action here?"  The answer is simple:  Plaintiff Herzberg – a New York domiciliary – was recruited by Defendants in New York, entered into an employment contract in New York with Defendants, and pursuant to that agreement, performed a significant amount of his work on behalf of Defendants in New York.   Defendants' motion to dismiss the case for lack of subject matter jurisdiction, lack of personal jurisdiction, and *forum non conveniens* is therefore without merit.

First, Defendants argue there is no subject matter jurisdiction over the instant dispute, because Plaintiff Herzberg resides in Israel.  Diversity jurisdiction in this action is appropriate, however, because Plaintiff is a New York domiciliary and has been since 2001.

Second, Defendants argue there is no personal jurisdiction in this case because they claim to have no connection to New York and do not transact business in New York. Defendants have more than sufficient contacts with New York on which to base personal

1

jurisdiction.  Defendants were personally served in New York the same day the

Complaint was filed while in New York on MegaSpirea business. A significant portion of

MegaSpirea's work is conducted in New York and its fundraising activity is centered in

New York.  Indeed, Plaintiff's work alone on behalf of MegaSpirea involved more than

EIGHTY meetings in New York.  And MegaSpirea's principals flew to New York on

MegaSpirea's account more than SIXTY times between March 2005 and January 2007.

Third, as to the convenience of the forum, New York is the logical and just forum

for this action.  MegaSpirea's headquarters is located in this Circuit and advertised to be

"in the New York City Metropolitan area"; the contract at issue was formed and largely

performed in New York; and Herzberg and other witnesses are located in New York.

## FACTUAL BACKGROUND

This action arises out of Defendants MegaSpirea's and Reich's refusal to deliver

on their promise to Plaintiff Herzberg for a ten percent (10%) equity interest in

MegaSpirea.[1]  (Compl. ¶ 1.)

### Plaintiff Jordan Herzberg

Herzberg has been a New York domiciliary since 2001, though his connection to

New York dates back to 1999.  (Herzberg Decl. ¶¶ 10-14.)[2]  Since 1999, he has been

employed by New York-based companies and has maintained a residence in Manhattan.

(Id. at ¶¶ 10-14, 18-21)  In 2004, he married his wife, Anne, herself a New York

domiciliary since 1996.  (Anne Herzberg Decl. at ¶ 2.) His wife is a New York State-

---

[1] As the factual record is developed in this case, it will become increasingly clear that MegaSpirea and Reich fail to pay for services incurred as a matter of course.  For example, Plaintiff was informed that MegaSpirea and Reich have a more than $300,000 debt overdue with their travel agent.

[2] Citations to "Herzberg Decl." and "Exh." refer to the Declaration of Jordan Herzberg in Support of Plantiff's Opposition to Defendants' Motion to Dismiss and the exhibits attached thereto.  Citations to "Anne Herzberg Decl." and "Exh." Refer to the Declaration of Anne Quintal Herzberg in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss and the exhibits attached thereto.

licensed attorney and notary public. (Id. at ¶ 23.) She attended law school in New York and worked as an associate for five years in New York law firms. (Id. at ¶¶ 5, 7-8.) She purchased an apartment in Manhattan in 2002. (Id. at ¶ 9.) Due to religious and personal reasons, and as is common practice in their family, Herzberg and his wife temporarily went to live in Israel in 2005. (Herzberg Decl. at ¶¶ 37-41; Anne Herzberg Decl. at ¶¶ 11-17.) Although they are currently residing in Israel, Herzberg and his wife have maintained their personal and professional lives in New York. Their immediate family is located exclusively in North America. (Herzberg Decl. at ¶ 52; Anne Herzberg Decl. at ¶ 28.) Their friends and social networks are in New York. (Herzberg Decl. at ¶ 52; Anne Herzberg Decl. at ¶ 26.) They maintain their apartment containing much of their personal property in Manhattan along with a 212 landline phone number and cable and internet service. (Herzberg Decl. at ¶¶ 42-48; Anne Herzberg Decl. at ¶¶ 18-22.) They receive mail at their New York address. (Herzberg Decl. at ¶ 49; Anne Herzberg Decl. at ¶ 29.) Mrs. Herzberg maintains her New York bar certification and notary license. (Anne Herzberg Decl. ¶ 23.) Mrs. Herzberg is a member of the New York State Bar Association. (Id.) She carries a New York driver's license and has voted in New York since 2000. (Id. ¶¶ 32-33.) Herzberg retains New York attorneys to assist with his estate planning and other personal legal matters and a New York accountant for accounting advice. (Herzberg Decl. ¶¶ 53-56.) Herzberg and his wife file US taxes and New York taxes as necessary in accordance with New York and IRS regulations. (Id. at ¶ 57; Anne Herzberg Decl. at ¶ 30.)

**The Defendants**

Defendant Reich is a Belgian citizen yet is in New York for MegaSpirea business on an at least monthly basis.  (Herzberg Decl. ¶ 78.)  He is the President and Chairman of the Board of MegaSpirea International, Inc.; the Co-Founder and President of MegaSpirea Holdings, Ltd.; the Co-Founder and President of MegaSpirea NV; and Co-Founder and President of MegaSpirea, AG. (Compl. ¶ 10, Herzberg Decl. ¶ 78.)

MegaSpirea develops and markets its technology for implementation in the mailing and postal industry in the United States and abroad.  MegaSpirea comprises several corporate entities.  These entities share common management, officers, and directors.  (Klein Decl. ¶ 1; Herzberg Decl. ¶¶ 78, 82, Exhs. D, E at 10-12, F at 3-4.)  Each of the various entities plays a specific function within the corporate structure:

MegaSpirea International, Inc., is MegaSpirea's international headquarters and the main marketing and sales arm of the company.  (Herzberg Decl. ¶ 81; Exh. D.)  It is located within the "New York City Metropolitan Area" and originally sought office space in New York City.  (Id.)  MegaSpirea International's management is present at most of the marketing, sales, and investor meetings for MegaSpirea – many of which take place in New York.  (Id.; Exh. G)  During his employment, Herzberg held the title of Business Development for MegaSpirea International and at times, was asked to bill this entity for his employment services.  (Id. ¶¶ 82-84)

MegaSpirea Holdings, Ltd. is an Israeli holding company and was established as the parent entity of the entire MegaSpirea corporate structure.  (Herzberg Decl. ¶ 81; Exh. E.) Investors in MegaSpirea (most of whom are located in New York) and MegaSpirea management are awarded shares in this entity.  (Id.)  Herzberg held the title of Strategic

4

Advisor for MegaSpirea Holdings and was granted shares in this entity pursuant to his agreements with Defendants. At times, MegaSpirea Holdings paid Herzberg his monthly compensation. (Id.)

MegaSpirea, N.V. is the owner of the the Mailliner technology patents. This entity licenses the use of the patents to MegaSpirea SAS and MegaSpirea International. (Herzberg Decl. ¶ 81.) Herzberg secured legal counsel to determine the legal status of both the European and U.S. patents and was involved in negotiating the agreement to purchase the patent rights from its original owner. (Id.) Two of the attorneys secured by Herzberg and who performed legal work on the patent were New York-based attorneys. (Id.)

MegaSpirea SAS is the R&D and manufacturing arm of the company and prior to the establishment of MegaSpirea International and MegaSpirea Holdings originally handled all corporate matters. (Herzberg Decl. ¶ 81.) Herzberg was Managing Director of this entity and at times, MegaSpirea SAS paid Herzberg his monthly compensation. (Id.)

Despite the differing functions of each of the corporate entities, for all external meetings, MegaSpirea's officers, directors and management, communicate that they are a single corporate entity. (Herzberg Decl. ¶ 83.) Plaintiff held titles at three of the MegaSpirea entities and conducted work on behalf of all of the corporate entities at various times of his employment. (Id. ¶ 82) Plaintiff was paid by MegaSpirea SAS and MegaSpirea Holdings Ltd. (Id.) At certain times, he was instructed send his monthly invoices to MegaSpirea International. (Id.) His compensation was at times deposited in his A.G. Edwards brokerage and savings account and at other times, in Israel. (Id.)

5

Potential witnesses in the case, including Isaac Wolf, Moty Strobel, and numerous investors and potential investors in MegaSpirea, reside in New York.  (Id. ¶¶ 62, 64, 73.)

**Plaintiff's New York Employment Agreement**

MegaSpirea and Reich approached Herzberg, a New York domiciliary, in New York, and heavily recruited Herzberg in New York to assist in forming a company that would promote and market a new direct mail technology called the Mailliner. (Compl. ¶ 2).   Herzberg was recruited specifically for his contacts in New York and from the outset of his employment, it was understood that a significant part of his work would take place in New York.  (Herzberg Decl. ¶ 74.)  On or about March 16, 2005, Reich made an offer to Herzberg in New York. The terms of the offer included a monthly payment to Herzberg equal to 10,000 Euro and reimbursement of expenses, along with a 10% equity interest in the MegaSpirea entity Herzberg was to help establish in exchange for Herzberg joining the senior management of MegaSpirea.  (Compl. ¶¶ 18-19, Herzberg Decl. ¶ 67-68.).  At that meeting, Herzberg accepted the terms of the offer.  (Compl. ¶ 19; Herzberg Decl. ¶ 67-68.)  He immediately began working providing substantial services worldwide on behalf of MegaSpirea, though a significant portion of his work was centered in New York, including meetings with investors and potential investors, meetings with investment banks, management meetings, interviewing and securing legal counsel, and marketing and sales meetings.  (Herzberg Decl. ¶ 76.)

Herzberg attended more than EIGHTY meetings on behalf of MegaSpirea and Reich in New York.  At more than half of those meetings, Defendant Reich or other principals of MegaSpirea were present.  (Herzberg Decl. Exhs. G, L.)  MegaSpirea

6

officers and management as well as many MegaSpirea associates flew to and from New York on the MegaSpirea travel account.  (Id. Exh. L.)

## ARGUMENT

**I.    AS PLAINTIFF HERZBERG IS A NEW YORK DOMICILIARY, THE COURT HAS SUBJECT MATTER JURISDICTION OVER THIS ACTION**

Defendants erroneously seek to dismiss the Complaint for lack of subject matter jurisdiction on the basis that Herzberg is a United States citizen currently residing in Israel.  The applicable test, however, pursuant to 28 U.S.C. § 1332(a)(2) is where Herzberg is domiciled and not where he currently resides.  See Palazzo v. Corio, 232 F.3d 38, 42 (2d Cir. 2000).  And although Herzberg is currently residing in Jerusalem, he maintains his domicile in New York.[3]

### A.    Standard of Review

The determination of Plaintiff's citizenship "is a mixed question of fact and law."  See Palazzo, 232 F.3d at 42 (citations omitted).  Under the legal component, an "individual's citizenship, within the meaning of the diversity statute, is determined by his domicile."  Id.  Once a domicile has been established, it is presumed to be retained "unless it can be shown that [the party] has established a new domicile."  Katz v. Goodyear Tire & Rubber Co., 737 F.2d 238, 243-44 (2d Cir. 1984).  Affidavits and other supporting materials may be submitted to establish jurisdiction.  See Boston Safe Deposit & Trust Co. v. Morse, 779 F. Supp. 347, 348 (S.D.N.Y. 1991).  These documents should be construed in the light most favorable to the plaintiff.  Id.  In order to defeat Defendants' motion to

---

[3] Plaintiff will amend his complaint as necessary to reflect that he is a New York domiciliary.  Under Federal Rule of Civil Procedure Rule 15(a)(1), a plaintiff may amend the complaint as of right before an answer is served and pursuant to 28 U.S.C. § 1653, "defective allegations of jurisdiction [can] be amended, upon terms, in the trial or appellate court."  Aurecchione v. Schoolman, 426 F.3d 635, 638-39 (2d Cir. 2005).

dismiss, Plaintiff "need only establish a *prima facie* showing of jurisdiction." Id. A party alleging a change in domicile must prove the change by clear and convincing evidence "before he can rebut the presumption that a person retains his old domicile . . . ." Id. See also Palazzo 232 F.3d at 42; Katz, 737 F.2d at 243.

### B.    Domicile is the Relevant Test for Diversity Jurisdiction – Not Residency

As stated, citizenship of a party depends upon his or her place of domicile.    It is possible to reside in one location and be domiciled in another. See Broadstone Realty Corp. v. Evans, 213 F. Supp. 261, 265 (S.D.N.Y. 1962) "Residence alone is not the equivalent of citizenship . . .[and] is not necessarily lost by protracted absence from home". Id. (citations omitted). Moreover, "[a] person may have several residences and can change his residence at will but domicile, once established, so remains until a new domicile is legally acquired." Id. If a party maintains more than one residence, the court should focus on the party's intent and "must examine the entire course of a person's conduct". Id. The court is to apply a "'totality of the evidence' approach . . . under which no single factor is conclusive." Id.  Relevant factors include:

> where civil and political rights are exercised, taxes paid, real and personal property (such as furniture and automobiles) located, driver's and other licenses obtained, bank accounts maintained, location of club and church membership and places of business or employment, . . . whether the person owns or rents his place of residence, the nature of the residence (i.e., how permanent the living arrangement appears), affiliations with social organizations, and the locations of the person's physician, lawyer, accountant, dentist, stockbroker, etc.

Chappelle v. Beacon Communications Corp., 863 F. Supp. 179, 181 (S.D.N.Y. 1994) (citing 13B Wright, Miller & Cooper § 3612 at 530-31).   These factors point to New York as Herzberg's domicile.

### 1.  Plaintiff Herzberg and his Wife are New York Domiciliaries

Plaintiff Herzberg has been a New York domiciliary since 2001 and his wife has been domiciled in New York since 1996.  (Herzberg Decl. ¶ 14; Anne Herzberg Decl. ¶ 2.)  Herzberg and his wife are currently residing in Israel for religious and personal reasons, but they consider New York to be their true home.  (Herzberg Decl. ¶ 41; Anne Herzberg Decl. ¶ 15-17.)

### a.  Herzberg and His Wife Own and Maintain a Home in New York

Herzberg and his wife own and maintain a home in New York.  (Herzberg Decl. ¶ 42; Anne Herzberg Decl. ¶ 18.)  Each month, they pay their mortgage and co-op maintenance bill and carry insurance for the apartment.  (Herzberg Decl. ¶ 42, 46; Anne Herzberg Decl. ¶ 18-19.)  They maintain a (212) landline, cable and internet service, and Herzberg maintains New York cell phone numbers.  (Herzberg Decl. ¶ 43-45; Anne Herzberg Decl. ¶ 20-21.)  The majority of their mail, including bank statements, credit card bills, utility bills, legal and professional correspondence is sent to their New York address.  (Herzberg Decl. ¶ 49; Exh. A; Anne Herzberg Decl. ¶ 29.)  Much of their personal property including furniture, china, silver, Judaica items, expensive cookware and appliances, clothing, linens, books, CDs, sporting equipment, family photos, personal papers, and financial records is located at their apartment. (Herzberg Decl. ¶ 47; Anne Herzberg Decl. ¶ 22.)  See Peregrine Myanmar Ltd. v. Segal, 95 Civ. 8286 (RPP), 1995

U.S. Dist. LEXIS 18179, at *15 (S.D.N.Y. 1995) (defendant found to be New York

domiciliary, even though she was residing in Myanmar, because she owned and

maintained an apartment in New York, had a landline telephone number and received

business mail at that address).

        As executor of his father's estate, all of Herzberg's dealings with the IRS

and the probate court have been via his New York address.  (Herzberg Decl. ¶ 53.)  He

engaged a New York-based attorney to assist with his father's estate planning and

probate work.  (Id.)  Herzberg has retained the same attorney to assist with his own estate

planning.  (Id. ¶ 54.)  In addition, Herzberg has engaged other New York counsel for

many of his personal legal matters as well as a New York accountant.  (Id. ¶¶ 55-56.)

Herzberg and his wife file US federal tax returns and file New York State tax returns, as

necessary, in accordance with IRS and New York State regulations.  (Herzberg Decl. ¶

57; Anne Herzberg Decl. ¶ 30.)  He has filed New York State tax returns in 2001 and

2002 and his wife has filed New York tax returns from 1997-2004.  Herzberg maintains

his primary checking account and Mrs. Herzberg maintains her primary bank account at

Citibank and they transact business at the West 86th Street branch.  (Herzberg Decl. ¶ 58;

Anne Herzberg Decl. ¶ 31.)  Herzberg's wife carries a New York State driver's license

and has voted in New York since 2000.  (Anne Herzberg Decl. ¶¶ 32-33.)

      **b.  <u>Herzberg and his Wife Maintain Their Professional Lives in New York</u>**

        Since 1999, Herzberg has worked for New York-based companies.

(Herzberg Decl. ¶¶ 10-13, 18-23.)  While the MegaSpirea entities are not based in New

York, with the exception of MegaSpirea International which is located within "the New

York City Metropolitan Area", a significant portion of Herzberg's work for MegaSpirea

occurred in New York.  (Id. ¶¶ 74-76.) While residing in Israel, Herzberg has specifically

chosen to continue working for New York-based companies so that when he returns to

New York, as he does frequently, he can also address his family's personal and business

affairs.  (Id. ¶ 23.)  Herzberg's wife attended law school at Columbia University.  (Anne

Herzberg Decl. ¶ 2.)  She took the New York State bar in July 1998 and worked as an

associate in the New York offices of the law firms Winston & Strawn and Shearman &

Sterling from 1999-2004.  (Anne Herzberg Decl. ¶¶ 4-5, 7-8.)  Herzberg's wife maintains

her New York bar membership, completes New York CLE classes, is a member of the

New York State Bar Association, and a licensed New York notary public.  (Anne

Herzberg Decl. ¶ 23.)  She is not licensed to practice law in Israel and has not taken the

Israeli bar.  She is not fluent in Hebrew.  (Anne Herzberg Decl. ¶ 24.)  If she and

Herzberg were to remain indefinitely in Israel, her career options would be severely

limited.  (Id.)

### c.  Herzberg's and his Wife's Social Lives Are Centered in New York

Not only is Herzberg's and his wife's home located and their professional

lives based in New York, but their social lives are centered there as well.  They are

members of a New York synagogue and affiliated with a second synagogue in

Manhattan. (Herzberg Decl. ¶ 50; Anne Herzberg Decl. ¶ 25.)  They are affiliated with

New York charitable and social institutions.   (Herzberg Decl. ¶ 51; Anne Herzberg Decl.

¶ 27.)  The majority of their friends and professional contacts live in New York and their

immediate family is exclusively located in the United States or Canada.  (Herzberg Decl.

¶ 52; Anne Herzberg Decl. ¶ 26.)  Herzberg's wife has no family in Israel.  (Anne

Herzberg Decl. ¶ 28.)

### 2. Defendants Have Not Shown By Clear and Convincing Evidence that Herzberg Is No Longer A New York Domiciliary

Defendants point to several facts that claim to "prove" Herzberg is now an Israeli domiciliary. Many of these facts are simply wrong or distorted and in any event, do not rise to the level of clear and convincing evidence. Defendants first argue that "a married man's domicile 'is presumed to be where his wife and family reside, **if that is a permanent home**, and there is no proof of separation.'" (Defs. Mem. at 9). While Herzberg's family is currently residing in Israel, as shown in the evidence submitted by Plaintiff, it is not their permanent home, nor do they consider Israel to be their permanent home.

Defendants claim that Plaintiff pays taxes in Israel, has an Israeli passport, and is a member of the Israeli army reserves. (Defs. Mem. at 9.) While this is true, Herzberg, on account of his birth to an Israeli father is deemed an Israeli citizen and therefore, is required under Israeli law to pay taxes, serve in the reserves, and use an Israeli passport when he leaves and enters the country. (Herzberg Decl. ¶¶ 6-8.) Defendants allege that Herzberg "is active in the Israeli Labor party and other political, religious, and cultural activities in Israel". (Defs. Mem. at 9.) They offer no evidence, however, to support this allegation aside from a summary of a grant proposal for one of the non-profit organizations for which Herzberg raises funds as part of his employment with the New York-based JDAA. (Herzberg Decl. ¶¶ 21-22.) Moreover, Herzberg is not a member of any political party in Israel, much less been "active" in the Israeli Labor Party and they offer no evidence to back up this claim. (Herzberg Decl. ¶ 24,) Defendant's citation of a Tufts Alumni newsletter that Plaintiff currently resides in Israel is meaningless – Herzberg does not deny that he is currently living in Israel.

Defendants further claim that Herzberg traveled to and from Israel while working for MegaSpirea.  (Defs. Mem. at 9.) This fact is also unremarkable.  Obviously, as to those times when Herzberg was residing in Israel, he would, of course, have to fly to and from Israel to perform his work for MegaSpirea in New York and other international locales.  While some of his MegaSpirea paychecks were wired to an Israeli bank account, many others were deposited and wired to accounts in the US.[4]  (Herzberg Decl. ¶ 84.)

It is clear from the "entire course" of Herzberg's and his wife's conduct that they have remained New York domiciliaries despite their current residence in Israel.  And Defendants have not met their burden of proving by "clear and convincing evidence" that Plaintiff's docmicile is no longer in New York.  It is therefore appropriate for this Court to exercise subject matter jurisdiction over this case.

## II.    ALL DEFENDANTS WERE PERSONALLY SERVED WITHIN NEW YORK AND TRANSACT BUSINESS IN NEW YORK.  THEREFORE, THERE IS PERSONAL JURISDICTION OVER ALL DEFENDANTS

On a motion to dismiss for lack of personal jurisdiction, "plaintiff need only make a prima facie showing of facts sufficient to establish jurisdiction".  OR.EN. Orobia Engineering S.R.L.v. Nacht, 97 CIV. 4912 (SAS)(KNF), 1998 U.S. Dist. LEXIS 16319, at *6 (S.D.N.Y. 1998) (hereinafter, "Or.En"). Moreover, "[p]laintiff's complaint and affidavits are to be construed, and any doubts are to be resolved, in the light most favorable to the plaintiff." Id.  See also Cyberscan Technology, Inc. v. Sema Ltd., 06 Civ. 526 (GEL),  2006 U.S. Dist. LEXIS 90375, at * 4-5 (S.D.N.Y. 2006).

---

[4] The facts of Kovowras v. Pinkerton, 97 Civ. 6098 (MBM), 1998 U.S. Dist. LEXIS 5962 (S.D.N.Y. 1998), cited by Defendants, is inapposite to the instant action.  In that case, the plaintiff gave up his rental apartment in New York when he moved to Hong Kong and his claimed "residence" in New York was an apartment he "rented" at his parents' home. In contrast, Herzberg owns and maintains an apartment in New York, and has continued doing so while he has resided in Israel.

There should be no dispute as to personal jurisdiction over the Defendants. Defendants were personally served in New York and under hornbook law, this in itself is sufficient to confer personal jurisdiction.  Second, this case involves the breach of a contract made in New York with a New York domiciliary that was largely performed in New York.   It is inconceivable that there would be a due process violation for Defendants to litigate this case in New York -- Defendants have engaged in more than **eighty** business and marketing meetings in New York; specifically target New York investors to raise capital; and advertise to the public that they are located "in the New York City Metropolitan area."  Defendants' motion to dismiss for lack of personal jurisdiction must be denied.

A. **Defendants Were Personally Served Within New York**

Defendants have apparently forgotten about the longstanding principle of transient jurisdiction.  Nowhere in their brief, do Defendants mention the significant fact that all Defendants were personally served in New York City.  In fact, they were served while in New York on MegaSpirea business the exact same date the Complaint was filed.[5]  It is well-established law that personal service in the state, in other words, transient jurisdiction, is sufficient for conferring personal jurisdiction over a defendant and comports with the notion of due process.  See Kadic v. Karadzic, 70 F.3d 232, 247 (2d Cir. 1995) (finding personal jurisdiction over Serbian national personally served in New York while in attendance at UN meeting).  See also Burnham v. Superior Court, 495 U.S. 604, 617-19 (1990).

---

[5] This case is even more compelling than the traditional transient jurisdiction case which usually involves a defendant temporarily in the jurisdiction on business unrelated to the action.  Here, Defendants were served in New York (where they are frequently present), while engaging in business directly related to the case.

On November 22, 2007, Defendant Reich was served with the Complaint (the same day it was filed) at his hotel in Brooklyn while, upon belief, Reich was in New York on MegaSpirea business.  (Herzberg Decl. ¶ 2.)  Such service is enough to acquire personal jurisdiction over Defendant Reich.  Not only is Reich an individual defendant in this case, but he is also the CEO and/or President of all the corporate defendants. (Compl. ¶ 10.)  Personal service on Reich, therefore, is also enough to perfect service on the MegaSpirea entities as well.  See N.Y. CPLR. § 311 (personal service on a corporation is perfected by service on an officer or director).

### B.  This Case Involves a Contract Formed in New York and Largely Performed in New York

In addition to transient jurisdiction, there is personal jurisdiction over defendants pursuant to New York's long arm jurisdiction statute.  Under N.Y. CPLR § 302(a)(1), personal jurisdiction may be asserted over a non-domiciliary who, in person or through an agent, "transacts any business within the state." Or.En, 1998 U.S. Dist. LEXIS 16319, at *6-8. The plaintiff must show that the defendant "'purposefully availed himself of the privilege of conducting activities within New York" such that bringing [the defendant] before a New York court does not offend due process, and that plaintiff's cause of action 'arose out of' those activities in New York." Id. (citations omitted).  In addition, "a single transaction may properly serve as grounds for jurisdiction 'even though the defendant never entered New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted.'" Id. (citations omitted).  The proof required to show that a defendant is "transacting business" in New York is "considerably less" than that required to show that a defendant is "doing business" in New York. Id. Furthermore, § 302(a)(1) "does not require that any particular

15

proportion of defendants' acts took place in New York" -- a defendant will be deemed to transact business in New York, where the parties expect "significant activity in New York pursuant to the contract, and at least some of the expected activities in New York did in fact take place." Cyberscan Techonology, Inc., 2006 U.S. Dist. LEXIS 90375, at *8, 11-13.

The exercise of jurisdiction is therefore appropriate over Defendants because Plaintiffs' employment contract with Defendants was formed in New York and Plaintiff largely performed the contract in New York.

### 1.  Herzberg's employment contract with Defendants was formed in New York.

Defendants claim that Plaintiff "does not allege that [his employment] agreement was formed in New York." (Defs. Mem. at 6)  This is a gross misrepresentation of the Complaint.  Herzberg was initially approached about employment with MegaSpirea by Defendant Reich in New York and was heavily recruited in New York to work for MegaSpirea.  Herzberg specifically alleges that his employment contract with Megaspirea was formed in New York:

> *On or about March 16, 2005, Reich made an offer to Herzberg in*
> *__New York City__*

(Complaint at ¶ 18.)  And Herzberg accepted that offer in New York City.  (Complaint at ¶ 19, Herzberg Decl. ¶¶ 68-69.)

### 2.  The Performance of the Contract Largely Took Place in New York

Following his acceptance of Defendant Reich's offer of employment on March 16, 2005, Herzberg immediately began working for MegaSpirea.  (Herzberg Decl. ¶¶ 61,

63, 65, 68; Compl. ¶ 19.)  His main responsibilities for MegaSpirea were to put

appropriate management structures in place; form a new corporate entity; and help raise

capital for the company.  (Herzberg Decl. ¶¶ 76, 87-88.)  A significant portion of these

duties were intended to be carried out in New York and were in fact done so.  (Id. at 74-

76.)  For example, Herzberg engaged in the following activity in New York on behalf of

MegaSpirea:

> management and strategy meetings; meetings and negotiations
> regarding MegaSpirea's intellectual property; employee
> interviews; meetings with and retention of MegaSpirea's counsel;
> meetings with investors and potential investors; meetings with
> investment bankers; meetings with potential clients and purchasers
> of the business, and telephone, email, and fax communications.

(Complaint at ¶¶ 19-21.)  Plaintiff conducted work in New York on behalf of all of the

corporate entities at various times of his employment.  (Herzberg Decl. ¶¶ 80-83.)  In

fact, Herzberg attended more than eighty meetings in New York on behalf of the

MegaSpirea entities.  (Herzberg Decl. ¶ 76; Exh. G.)  Each of the MegaSpirea entites has

overlapping management, officers, and employees.  (Herzberg Decl. ¶ 79; Exhs. D, E at

10-12, F at 3-4.)  Messrs. Reich and Klein are in primary control of each of the

MegaSpirea corporations.  (Klein Decl. ¶ 1; Compl. ¶ 10.)  Despite the differing

functions of each of the corporate entities, during external meetings in New York,

Herzberg and MegaSpirea's officers, directors and management, would communicate as a

single corporate entity.  (Herzberg Decl. ¶ 83.)   In addition, Herzberg was paid by

MegaSpirea SAS and MegaSpirea Holdings.  (Herzberg Decl. ¶ 84.)  At certain times, he

was also instructed to send his monthly invoices to MegaSpirea International.  (Id.)

17

These contacts are more than enough to establish personal jurisdiction over the Defendants. Indeed, New York courts have found long-arm jurisdiction even where "the contact amounted to only a one-day visit to New York," where defendant was in New York "at the time the contract, establishing a continuing relationship between the parties, was negotiated and made." <u>George Reiner & Co v. Schwartz</u>, 41 N.Y.2d 648, 651; 363 N.E.2d 551, 553; 394 N.Y.S.2d 844, 847 (1977). <u>See also</u> <u>Optimum Worldwide Ltd. v. Klebener</u>, 95 Civ. 1359 (HB)(HBP), 1997 U.S. Dist. LEXIS 11097, *14 (S.D.N.Y. Aug. 1, 1997) ("Personal jurisdiction under CPLR § 302(a)(1) has been found on the basis of meetings conducted in New York prior to further negotiations and the signing of a contract or meetings conducted in New York after the contract's execution.").[6]

## C.    There is No Due Process Violation – New York Is a Primary Locale for Reich's and MegaSpirea's Business Activity

It staggers belief that Defendants repeatedly claim that exercise of personal jurisdiction over them would not comport with due process because they do not "purposely direct[] any of their business activity in New York". (Defs. Mem. at 14.) New York is a primary nexus for MegaSpirea's business activity. As mentioned above, Herzberg performed significant activity and attended more than eighty business meetings

---

[6] Again, Defendants' cases are inapposite. In <u>Digital Lab Solutions, LLC v. Stickler</u>, the court dismissed for lack of jurisdiction because contract negotiations occurred solely via email and there were no post-contractual meetings in New York. 06 Civ. 6482 (LLS), 2007 U.S. Dist. LEXIS 18396, at *8 (S.D.N.Y. 2007). In <u>Libra Global Technology Services (UK), Ltd. v. Telemedia Int'l Ltd.</u> the only New York contact was a 45 minute video conference. 279 A.D.2d 326; 719 N.Y.S.2d 53 (1st Dept 2001). The court in <u>United Computer Capital Corp. v. Secure Products LP</u>, dismissed for lack of personal jurisdiction, because the contract at issue was formed in New Jersey and the parties engaged in only five meetings in New York over a three year period that were unrelated to the contract at issue. 218 F. Supp. 2d 273, 279 (N.D.N.Y. 2002). <u>See also</u> <u>Gates v. Pinnacle Communications Corp.</u>, 623 F. Supp. 38, 39 (S.D.N.Y. 1985) (the only contacts with New York were a one hour meeting and a minor business relationship between the parties); <u>Walther v. Maricopa Int'l Investment Corp.</u>, 97 Civ. 4816 (HB), 1998 U.S. Dist. LEXIS 5475, at *24 (S.D.N.Y. 1998) (only New York contact was a shared Christmas meal). In this case, Herzberg and Defendants negotiated and formed the contract in New York; it was understood a significant part of the contract was to be performed in New York; and more than eighty post-contractual meetings over a two year period took place in New York.

in New York on behalf of MegaSpirea.  Defendant Reich was present at at least one-third of these meetings.  (Herzberg Decl. Exh. G.)  Other MegaSpirea executives and employees, including Mr. Klein, Mr. Strobel, and Mr. Salens, traveled to New York for business dozens of times, not to mention the many other MegaSpirea associates who flew to and from New York on MegaSpirea's travel account. (Herzberg Decl. at ¶ L.) See Or.en, 1998 U.S. Dist. LEXIS 16319, at *6-8 (finding twice yearly visits to New York was enough to confer jurisdiction).  MegaSpirea's capital raising activity was centered in New York and specifically targeted New York investors.  See Wiwa v. Royal Dutch Petroleum, Co., 226 F.3d 88, 97-98 (2d Cir. 2000) (conducting fundraising and investment activity in New York met "doing business standard" sufficient for personal jurisdiction and due process); Cyberscan Technology, 2006 U.S. Dist. LEXIS 90375, at *12-13 (post-contractual fundraising sufficient to confer jurisdiction even where "overwhelming majority" of services performed abroad).   MegaSpirea sought repeated counsel of Professor Frank Romano in Rochester for his technology expertise.  (Herzberg Decl. ¶ 76; Exhs. H, I.)  MegaSpirea international headquarters originally sought office space in New York before moving to Connecticut.  (Herzberg Decl. ¶ 71.)  And on the company website, MegaSpirea highlights that it is located within the "New York City Metropolitan area."  (Herzberg Decl. ¶ 70; Exh. D.)  Finally, as discussed, Defendants were personally served while conducting MegaSpirea business activity within the state. Clearly, exercise of personal jurisdiction over these Defendants more than comports with the requirements of due process.[7]

---

[7] If the Court finds it cannot decide this issue based upon the declarations and documentary evidence submitted, Plaintiff respectfully requests that Defedants be ordered to engage in discovery as to whether personal jurisdiction exists.  See Or.en, 1998 U.S. Dist. LEXIS 16319, at *7.

III.    **NEW YORK IS THE MOST CONVENIENT FORUM FOR THIS ACTION**

Defendants seek to dismiss this case under the doctrine of *forum non conveniens.*
While district courts have discretion in rare instances to grant motions to dismiss based
on this doctrine, there is a "strong presumption in favor of a plaintiff's choice of forum."
Wiwa, 226 F.3d at 100; Peregrine Myanmar Ltd., 1995 U.S. Dist. LEXIS 18179, at *21.
A plaintiff should not be deprived of his choice of forum except where a defendant can
show that it would be "so oppressive and vexatious to them as to be out of all proportion
to plaintiffs' convenience" and "defendant bears the burden of demonstrating why the
plaintiff's choice of forum should be disturbed." DiRienzo v. Phillip Services Corp., 294
F.3d 21, 20-22 (2d Cir. 2002); Peregrine Myanmar Ltd., 1995 U.S. Dist. LEXIS 18179, at
*21. To meet this burden, Defendants must demonstrate, by analyzing several public and
private interest factors (set forth in Gulf Oil Corporation v. Gilbert, 330 U.S. 501, 508-
509, 91 L. Ed. 1055, 67 S. Ct. 839 (1947)), that the "balance substantially favor[s] the
alternative forum". Id. These factors include: (1) "relative ease of access to sources of
proof"; (2) availability of compulsory process for attendance of unwilling witnesses; (3)
cost of obtaining attendance of willing witnesses; (4) possibility of viewing the premises
where the injury occurred; and (5) other practical problems relating to efficiency and
expense of a trial; (6) court congestion; (7) unfairness of imposing jury duty on citizens
of a forum unrelated to the litigation; (8) local interest in having localized controversies
decided locally; and (9) "avoidance of the unnecessary problems in conflict of laws or in
applying foreign law." Id. Defendants have failed to demonstrate that the balance of
these factors "substantially favors" the alternative forum instead of New York and that

20

litigating in New York would be "so oppressive and vexatious" as to be "out of all proportion".

Defendants argue that Belgium and Israel are two alternative forums because "all of the defendants are amenable to jurisdiction in Israel and Belgium by virtue of their presence there." (Defs. Mem. at 16.) Yet, Defendants offer no support to back up this dubious claim. Defendants offer no specifics as to why they are amenable to jurisdiction in Israel or Belgium nor do they attest that they will submit to such jurisdiction should the case be transferred. Aside from MegaSpirea Ltd., none of the other Defendants are present in Israel. And in Belgium, according to Defendants, the only relevant party with a connection to Belgium is Defendant Reich – Defendants claim numerous times throughout their moving papers that MegaSpirea N.V. (the only other party with Belgian citizenship) has no connection to this action. While Reich's family is located in Belgium and he is a Belgian citizen, based on Herzberg's experience working with Defendant Reich, he spends most, if not all, of his working week traveling internationally, and is in New York at least monthly. (Herzberg Decl. 78; Exhs. G, L.) See Geogiadis v. First Boston Corp., 90 Civ. 7672 (PKL), 1994 U.S. Dist. LEXIS 10263, at *11 (S.D.N.Y. 1994) (balance did not shift to alternative forum, even though principal witness lived in that forum, because he traveled frequently to New York).

New York, on the other hand, is clearly the more convenient forum and the forum with the most connection to this case. Herzberg was recruited in and his employment contract was formed in New York. Herzberg engaged in more than eighty meetings in New York on behalf of MegaSpirea, in contrast to significantly fewer meetings in Israel and only eight in Belgium. (Herzberg Decl.77; Exhs. J, K.) Herzberg is a New York

domiciliary and returns to New York frequently for his work.  (Id. ¶ 23, 60.)  Defendant

Reich is also in New York frequently on MegaSpirea business.  (Id. ¶ 78; Exhs. G, L.)

MegaSpirea's international headquarters is located in this Circuit and is promoted by the

company as being located in the "New York City Metropolitan area".  (Id. Exh. D.)  Most

of the relevant documentation in this case has been annexed to the complaint and

Herzberg's Declaration.  Any documents in the possession of MegaSpirea International

are located within the "New York City Metropolitan area".  Herzberg believes the

remaining relevant documentation is available in electronic form and could easily be

reproduced in New York.  If such documentation is available in Israel, it can easily be

provided to Herzberg.  (Id. ¶ 90.)  See Cyberscan Technology, Inc., (denying dismissal of

case under *forum non conveniens* in part because "defendants offer no reason to think that

transporting [documentary] evidence to New York would pose any insurmountable or

even significant hardship on the parties.").  Two of the potential witnesses identified in

the Complaint, Isaac Wolf and Moty Strobel, reside in New York.  (Id. ¶ 62, 64.)  The

majority of MegaSpirea's actual and solicited investors are New York residents.  (Id. ¶

73; Exh. G)  If Defendants continue to falsely claim that Herzberg was supposed to and

did not bring potential investors to the company, these individuals could potentially be

called as witnesses and they are located in New York.  Moreover, New York courts have

an interest in adjudicating disputes relating to contracts formed in New York and largely

performed in New York.  That some of Herzberg's claims may be subject to Israeli law,

does not tilt the scales in favor of dismissal.[8]  See Manu Int'l v. Avon Products, Inc., 641

F.2d 62, 67-8 (2d Cir. 1981) (finding that "the need to apply foreign law is not in itself a

reason to apply the doctrine of forum non conveniens").

---

[8] Belgian law does not play a role in the case.

It is clear under the Gilbert factors that Herzberg's choice to litigate this case in New York should be given a high amount of deference.  Accordingly, Defendants' motion to dismiss this case on the basis of *forum non conveniens* should be denied.

*   *   *   *

For all of the foregoing reasons, Defendants' motion to dismiss the Complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, and *forum non conveniens* should be denied in its entirety.


Dated:  New York, New York
        February 14, 2008


                                    Respectfully Submitted,


                                    BRONSTEIN, GEWIRTZ & GROSSMAN LLC
                                            /s/ Peretz Bronstein
                                    By: _____
                                        Peretz Bronstein (PB8628)
                                        Anne L. Quintal (AQ0490)

                                    60 East 42nd Street
                                    Suite 4600
                                    New York, New York  10165
                                    Telephone:  (212) 697-6484

                                    Attorneys for Plaintiff


23

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
                                              :    **ECF CASE**
Jordan Herzberg,                              :    No. 07 Civ. 10503 (RJS)
                                              :
Plaintiff                                     :
                                              :
               - against -                    :    **DECLARATION**
                                              :    **OF ANNE QUINTAL**
                                              :    **HERZBERG IN SUPPORT OF**
MegaSpirea Productions SAS, MegaSpirea        :    **PLAINTIFF'S OPPOSITION TO**
International Inc., MegaSpirea Holdings Ltd.,  x    **DEFENDANTS' MOTION TO**
MegaSpirea Holding A.G., MegaSpirea NV, Mr.   :    **DISMISS**
Hersch Reich,                                 :
                                              :
               Defendants.                    :
                                              :
                                              :
                                              :
                                              ::
                                              ::
                                              ::
                                              ::
                                              :
------------------------------------------------------------ x

        I, ANNE QUINTAL HERZBERG, hereby declare under penalty of perjury under

the laws of the United states of America, pursuant to 28 U.S.C. § 1746, that the following

is true and correct.

        1.      I was born in Washington, D.C. in 1971 and grew up in Montgomery

County, Maryland.

        2.      In 1996, I began attending law school at Columbia University.  At

that time, I considered my domicile to change from Maryland to New York.

        3.      While in law school, I rented an apartment at 502 W. 113th Street in

Manhattan.

4.    In 1997, I was a summer associate at the law firm of Winston & Strawn at their offices located at 200 Park Avenue in Manhattan.  I also worked there during my last semester of law school in Spring 1998.  In November 1997, I accepted an offer of employment with Winston & Strawn to begin in September 1999.

5.    In May 1998, I received my J.D. from Columbia and took the New York State bar exam in July 1998.

6.    In September, 1998, I attended Nishmat, the Jerusalem Center for Advanced Jewish Study for Women for the 1998-99 academic year.  As a practicing Jew, I wanted to study Jewish law in Israel for a year prior to beginning my legal career in New York.  Following the end of the program in July 1999, I returned to New York and rented an apartment at 730 Columbus Avenue in Manhattan.

7.    I began working as an associate at Winston & Strawn from September 1999-March 2003.

8.    From May 2003-September 2004, I was an associate at Shearman & Sterling at 599 Lexington Avenue in Manhattan.

9.    In January 2002, I purchased an apartment at 210 W. 90th Street in Manhattan.

10.    I met my future husband, Jordan Herzberg, in September 2003.  In October 2004, we were married.

11.    My husband and I are practicing Jews.  As is common among practicing Jewish couples when they get married, they go to live in Israel for a period of time for religious reasons.

2

12.    This practice is also very common in my family.  After getting married, each of my six first cousins moved to Israel for a temporary period of two through eight years and afterwards returned to their homes in the United States.

13.    This practice is also very common in my husband's family.  His sister lived in Jerusalem for 7 years after college and then afterwards returned to her home in the United States

14.    In addition, my husband's father and grandparents were Israeli citizens and he has always been curious about what it would be like to reside as a family in Israel.

15.    As I consider New York to be my permanent home, when we got married, I agreed to go to Israel solely on a temporary basis.

16.    When my husband and I decided to go to Israel, it was our understanding that we would not be permanently relocating to Israel.

17.    For these reasons, in January 2005, my husband and I went to Israel. Although we are currently residing in Israel, my true home is in New York.  We have maintained our professional and personal lives in New York and we consider ourselves to be domiciliaries of New York.

18.    We maintain our home at 210 W. 90th Street.  Each month, Each month we make mortgage payments to Citimortgage as well as pay our co-op maintenance bill which includes upkeep of the building as well as all applicable New York state taxes.

19.    Our apartment is insured by Allstate Insurance.  Our agent is the Jordan Insurance Agency located at 561 Columbus Avenue in Manhattan.

20.    We maintain our New York land-line telephone number.

21.    We continue cable and internet service with Time Warner Cable at our apartment.

22.    Much of our personal property including furniture, china, silver, Judaica items, expensive cookware and appliances, clothing, linens, books, CDs, sporting equipment, family photos, personal papers, and financial records is located at our apartment on West 90th Street.

23.    I maintain my New York bar membership and am a current member of the New York State Bar Association.  I complete New York CLE classes.  I am also a New York licensed notary public.

24.    I am not licensed to practice law in Israel and I have not taken the Israeli bar.  I am not fluent in Hebrew.  If my husband and I were to remain indefinitely in Israel, my career options would be severely limited.

25.    My husband and I are members of the Kehilat Orach Eliezer congregation in Manhattan.  I have been a member since 1997 and my husband has been a member since 1999.  We are also affiliated with Congregation Ramat Orah in Manhattan where I was a member from 1997-2005 and where we held part of our wedding celebrations in October 2004.  We receive weekly updates via email from these synagogues.

26.    The majority of our friends and social circle are located in New York.

27.    I continue to be a member of American Friends of Nishmat located in Manhattan.

28.    My immediate family is located in New York, Maryland, and Massachusetts.  I have no family in Israel.

29.    The majority of my mail, including bank statements, credit card bills, utility bills, legal and professional correspondence goes to our New York address. Attached as Exhibit A to my husband's Declaration are examples of mail received at our New York address.  Personal information, such as account numbers and amounts, has been redacted.

30.    I currently file US federal tax returns and file New York State income tax returns, as necessary, in accordance with IRS and New York State regulations.  I filed New York State tax returns from 1997 through 2004.  In 2005 and 2006, my income was less than $10,000.  In 2007, my income was less than $15,000. Attached as Exhibit N is a copy of my receipt for my 2004 tax return.

31.    I maintain my primary personal bank account at the West 86th Street Citibank branch in Manhattan.

32.    I carry a New York driver's license.

33.    I have voted in New York elections since 2000.

34.    Since we have been in Israel, as a family, we return to our home in New York several times a year to visit friends and family and to take care of personal and business affairs.

Executed:     Jerusalem, Israel
                 February 13, 2008


/s/ Anne Quintal Herzberg
_____
Anne Quintal Herzberg

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
                                                    :     **ECF Case**
Jordan Herzberg,                                    :
                                                    :     No. 07 Civ. 10503 (RJS)
Plaintiff                                           :
                                                    :
              - against -                           :     **DECLARATION**
                                                    :     **OF JORDAN HERZBERG**
MegaSpirea Productions SAS, MegaSpirea              :     **IN SUPPORT OF PLAINTIFF'S**
International Inc., MegaSpirea Holdings Ltd.,        x     **OPPOSITION TO**
MegaSpirea Holding A.G., MegaSpirea NV, Mr.         :     **DEFENDANTS' MOTION TO**
Hersch Reich,                                       :     **DISMISS**
                                                    :
                              Defendants.           :
                                                    :
                                                    :
                                                    :
                                                    ::
                                                    ::
                                                    ::
                                                    ::
                                                    :
------------------------------------------------------------ x

       I, JORDAN HERZBERG, hereby declare under penalty of perjury under the laws

of the United States of America, pursuant to 28 U.S.C. § 1746, that the following is true

and correct.

       1.    My counsel has shown me the Memorandum of Law and the

Declaration of Mendel Klein submitted by Defendants in support of their Motion to

Dismiss.  I submit this Declaration in order to respond to Defendant's claims – many of

which are not true.

       2.    I understand from my counsel that Defendant Reich, individually

and as CEO and/or President of the MegaSpirea corporate entities, was personally served

with a copy of the Complaint on November 22, 2007 (the same day it was filed) at the

Avenue Plaza Hotel in Brooklyn, New York.  I believe that Reich was in New York on

MegaSpirea business.

## PERSONAL BACKGROUND

3.    I was born in Montreal, Canada, in 1970.

4.    In 1973, my family and I moved to Miami, Florida where I was

domiciled until 2000.

5.    During that time, I became a naturalized U.S. citizen.

6.    As my father was an Israeli citizen, though he left the country at the

age of 23, I was also born an Israeli citizen.  As required by Israeli law, all citizens are

required to serve in the Israeli military.  In July 1993, I went to Israel to complete my

military obligations.  Following my release from the army in April 1996, I immediately

returned home to Florida.

7.    If I am present in Israel, I am required by law to fulfill my military

reserve duty obligations.

8.    Because I was born an Israeli citizen, I am required by law to enter

and exit Israel on an Israeli passport.

9.    I attended graduate school at the Fletcher School of Law and

Diplomacy at Tufts University from September 1996 through May 1998.  Following

graduation, I returned home to Florida.

**DOMICILIE IN NEW YORK**

      10.   In September 1998, I began employment with SDA Enterprises, a company controlled by the owners of Slim Fast Foods.   I worked out of the company's Manhattan and West Palm Beach, Florida offices.

      11.   From October 1999 through October 2000, I rented an apartment on West 85th Street in Manhattan.

      12.   In November 2000, I co-signed a lease with my sister for an apartment on West 105th Street.  From November 2000 through February 2001, I traveled extensively internationally for work though I returned to New York repeatedly.  In March 2001, I returned to New York and lived with my sister on West 105th Street until May 2001.  From May 2001 through April 2003, I rented an apartment at West 87th Street in Manhattan.

      13.   In March 2001, I became the Chief Operating Officer of Vivid Collection, a diamond company located on Fifth Avenue in Manhattan. I continued working for Vivid until July 2002.

      14.   As of March 2001, I considered my domicile to change from Florida to New York.  I believe that I live and work in a global village.  While I have done extensive traveling and have worked in many parts of the world since 2001, my home and my anchor has been New York.

      15.   As a practicing Jew, for religious reasons, I went to study at the Pardes Institute of Jewish Studies in Jerusalem from September 2002 through May 2003.

      16.   I returned to New York in April 2003 for several weeks to care of personal and business matters.  When my lease expired at the end of April 2003, I

transferred all of my personal possessions to my sister's apartment at 792 Columbus Avenue in Manhattan.

17. From June 2003 through March 2004, I spent extensive time traveling for work and employment opportunities, including throughout the United States, Israel, France, Egypt, Switzerland, Russia, and Armenia. I also spent extensive time visiting family in Canada and Florida. During this time, I repeatedly returned to New York for weeks at a time. I usually stayed with my sister, though on occasion, I also stayed with friends.

18. In early 2003, I began consulting for several New York-based companies.

19. From April 2003 through March 2005, I was a Managing Director of Avocet Aircraft. The company's offices were located on Central Park South and later on West 57th Street in Manhattan.

20. From July 2003 through March 2006, I was the Director, Treasurer and Assistant Secretary of the New York-based Delaco Corporation. The office was located on 42nd Street in Manhattan.

21. In January 2004, I became a consultant for the New York not-for-profit corporation, Judaism and Democracy Action Alliance of North America ("JDAA"). I have continued consulting for the JDAA until the present time.

22. My work for the JDAA includes raising funds, primarily in New York, for several Israel-based non-profits. One of those non-profit organizations is Mosaica.

4

23.   One of the primary reasons I work for the JDAA, accepted an offer to work for MegaSpirea, and continued working for Avocet and Delaco, is that much of my work for these organizations is/was based in New York and I would have the opportunity to travel regularly, if not frequently to New York while my wife and I are residing in Israel, so that I could maintain our personal and business affairs there.

24.   I have never been a member of nor an activist for the Labor Party in Israel.  I have never been a member of any political party in Israel or in the United States.

**My Wife is a New York Domiciliary**

25.   In September 2003, I met my wife, Anne, a New York domiciliary and attorney.

26.   My wife attended law school at Columbia University.

27.   In 1997, she was a summer associate at the law firm of Winston & Strawn at their offices located at 200 Park Avenue in Manhattan.  She also worked there during her last semester of law school in Spring 1998.  In November 1997, my wife accepted an offer of employment with Winston & Strawn to begin in September 1999.

28.   In May 1998, my wife received her J.D. from Columbia and took the New York State bar exam in July 1998.

29.   In September, 1998, my wife attended Nishmat, the Jerusalem Center for Advanced Jewish Study for Women for the 1998-99 academic year. Following the end of her program in July 1999, she returned to New York and began working as an associate at Winston & Strawn from September 1999-March 2003.

30.   From May 2003-September 2004, she was an associate at Shearman & Sterling at 599 Lexington Avenue in Manhattan.

31. In January 2002, she purchased an apartment at 210 W. 90th Street in Manhattan.

32. In March 2004, I returned to New York in order to be with her. In October 2004, we were married.

33. My wife maintains her New York bar membership and is a current member of the New York State Bar Association. My wife is also a New York licensed notary public.

34. My wife is not licensed to practice law in Israel. She has not taken the Israeli bar. She is not fluent in Hebrew.

35. My wife carries a New York driver's license.

36. My wife has voted in New York since 2000.

### Why We Are Currently Residing in Israel

37. My wife and I are practicing Jews. As is common among practicing Jewish couples when they get married, they go to live in Israel for a period of time for religious reasons.

38. In addition, as my father and my grandparents lived in Israel, I have always been curious about what it was like to reside as a family in Israel.

39. This practice is common in my family. My sister lived in Jerusalem for 7 years after college and then afterwards returned to her home in the United States.

40. This practice is also very common in my wife's family. After getting married, each of her six first cousins moved to Israel for a temporary period of two through eight years and afterwards returned to their homes in the United States.

41.     For these reasons, in January 2005, my wife and I went to Israel. Although we are currently residing in Israel, we have maintained our lives in New York and consider ourselves to be domiciliaries of New York.

**We Own and Maintain a Home in New York**

42.     We maintain our home at 210 W. 90th Street.  Each month we make mortgage payments to Citimortgage as well as pay our co-op maintenance bill which includes upkeep of the building as well as all applicable New York state taxes.

43.     We maintain our New York land-line telephone number.

44.     I maintain my New York cell phone service.

45.     We continue cable and internet service with Time Warner Cable at our apartment.

46.     Our apartment is insured by Allstate Insurance.  Our agent is the Jordan Insurance Agency located at 561 Columbus Avenue in Manhattan.

47.     Much of our personal property including furniture, china, silver, Judaica items, expensive cookware and appliances, clothing, linens, books, CDs, sporting equipment, family photos, personal papers, and financial records is located at our apartment on West 90th Street.

48.     My bicycle is being stored at a friend's apartment in Manhattan on West End Avenue.

49.     The majority of our mail, including bank statements, credit card bills, utility bills, legal and professional correspondence goes to our New York address. Attached as Exhibit A are examples of mail received at our New York address.  Personal information, such as account numbers and amounts, has been redacted.

7

**Our Social Lives Are Centered in New York**

50.    My wife and I are members of the Kehilat Orach Eliezer congregation in Manhattan.  My wife has been a member since 1997 and I have been since 1999.  We are also affiliated with Congregation Ramat Orah in Manhattan where my wife was a member from 1997-2005 and where we held part of our wedding celebrations in October 2004.  We receive weekly updates via email from these synagogues.

51.    Other New York charitable and social institutions I am affiliated with include the New York Blood Center, American Friends of Pardes Institute, American Friends of Livnot, and the American Friends of Laniado Hospital.

52.    My immediate family is located exclusively in North America.  The majority of our friends and social circle are located in New York.

53.    My father passed away in July 2005 in Clearwater, Florida and I was named the executor of his estate.  My dealings with the IRS and the probate court have all been through my New York address.  Attached as Exhibit B are copies of correspondence with the IRS and probate court in relation to my father's estate.  I engaged a New York-based attorney, Richard Sauer, to assist with my father's estate planning and probate work.  His office is located on West 57th Street in Manhattan.

54.    I have engaged the same New York-based attorney for my own personal estate planning.

55.    I have engaged, Peretz Bronstein, New York counsel for many of my personal legal matters.

56.    I have an accountant, Joel Gilbert, based in New York.

57.    I currently file US federal tax returns and file New York State income tax returns, as necessary, in accordance with IRS and New York State regulations.  I was required under New York law to file state tax returns in 2001 and 2002.

58.    I maintain my primary personal checking account at Citibank and transact business at the West 86th Street branch in Manhattan.  My wife's primary savings and checking accounts are located there.

59.    Several of my physicians are located in Manhattan including, doctors Nathan Rabhan, Jacob Melamed, Willibald Nagler, and Michael Brodherson.

60.    As a family, we return to our home in New York several times a year to visit friends and family and to take care of personal and business affairs.  Attached as Exhibit C is a spreadsheet detailing my travels to New York since January 2005 on non-MegaSpirea business and personal matters.  On many of these trips, my wife and son returned to New York beforehand and remained after I left.

## My Employment Contract with MegaSpirea

61.    On or about November 8, 2004, I was contacted in Manhattan by Defendant Reich regarding a business opportunity at his start-up company, MegaSpirea.  A mutual acquaintance of mine and Reich's, Isaac Wolf, had spoken to Reich about my business experience and reputation.

62.    Isaac Wolf is a resident of Boro Park, Brooklyn.  He operates a diamond business on West 47th Street in Manhattan.  In his Declaration, Mr. Klein claims that Isaac Wolf owns a house in Israel.  This is not true.  Mr. Wolf has personally told me on several occasions that he does not own any property in Israel.

9

63.     Defendant Reich invited me to a meeting at the Hilton Hotel on Avenue of the Americas in Manhattan.  The meeting took place on or about November 9, 2004, in Room 3747.  Attendees at the meeting included myself, Reich, Dirk Salens, currently CEO of MegaSpirea International, Inc., Jan Rassachaert, currently CFO of MegaSpirea International, Inc., and Moty Strobel, Defendant Reich's assistant.

64.     Moty Strobel is a US citizen. In his Declaration, Mr. Klein claims that Strobel is an Israeli resident.  During the course of my employment with MegaSpirea, I was informed by Defendant Reich that Mr. Strobel lived in Section 8 housing in Boro Park, Brooklyn.

65.     At the meeting, Reich presented MegaSpirea's business plan and wanted my help in forming a new MegaSpirea entity that would promote and operate the business.

66.     Following the November 9, 2004 meeting, I met with Defendant about a dozen times in New York City, Israel, and other locales where Reich actively recruited me to work with MegaSpirea.

67.     On or about March 16, 2005, in Manhattan, Reich made me an offer of employment.  Mr. Klein was not present at this meeting.  The terms of the offer included a monthly payment equal to 10,000 Euro and reimbursement of expenses, along with a 10% equity interest in the new MegaSpirea parent entity I was to help establish in exchange for my joining the senior management of MegaSpirea.

68.     I accepted the terms of the offer at that meeting in New York City. Shortly thereafter, I received my first payment of 10,000 Euro.

**MegaSpirea Contacts With New York**

69.     In his Declaration, Mendel Klein claims that the various MegaSpirea entities do not transact business in New York.  Based on my experience as an executive with MegaSpirea and as will be detailed below, this is not true.

70.     MegaSpirea International, Inc.'s website markets itself as being located in the "New York City Metropolitan Area."  Attached as Exhibit D is a page from MegaSpirea's website advertising its location.

71.     In 2006, MegaSpirea sought office space in New York City for its international headquarters.

72.     Mr. Klein writes, "The MegaSpirea entities are in the business of creating and marketing mailing and postal technology in Israel and Belgium".  This is a half-truth.  As mentioned, MegaSpirea international headquarters are located in the "New York City metropolitan area" and the company markets its technology all over the world including the United States.  MegaSpirea markets its technology annually at the Graphos Expo in Chicago, Illinios, as well as other U.S. trade shows. While I was employed for the company, Pitney Bowes was targeted by MegaSpirea as a potential customer and/or major investor in the business.  Attached as Exhibit E is MegaSpirea Holdings' October 2006 Executive Summary.  Attached as Exhibit F is MegaSpirea SAS's  Executive Summary which highlights some of the company's U.S. dealings.

73.     In addition, MegaSpirea's investment activity is centered in New York City and the vast majority of MegaSpirea investors are located there.

74.     It is also not true, as Mr. Klein claims, that my work for MegaSpirea was to be performed only in "Israel, Belgium, and other foreign countries." One of the reasons I was recruited and hired by MegaSpirea was on account of my extensive business contacts in New York.  From the outset of my employment, it was understood that a significant part of my work would take place in New York.

75.     In fact, a considerable amount of my efforts on behalf of the company involved work in the United States including New York, Connecticut, Florida, Illinois, and New Jersey.  One of my titles was Business Development for MegaSpirea International, Inc. – the Megaspirea entity located in the "New York City Metropolitan area".

76.     My work for MegaSpirea included extensive services in New York including, management and strategy meetings; employee interviews; meetings with and retention of MegaSpirea's counsel; meetings with investors and potential investors; meetings with investment bankers; meetings with potential clients and companies interested in investing in the business; meetings with Frank Romano – a mailing and postal technology expert and Professor Emeritus at the Rochester Institute of Technology;  and numerous MegaSpirea-related telephone calls and other communications made to and from New York City.  Attached as Exhibit G is a spreadsheet detailing my meetings in New York on behalf of MegaSpirea.  Attached as Exhibit H are copies of documents relating to Professor Romano's promotion of MegaSpirea.  Attached as Exhibit I are several documents relating to some of the work done by MegaSpirea in New York or with New York residents.  These documents are

only a select portion of documents in my possession relating to MegaSpirea work in New York.

77.    In contrast, very little of my work for MegaSpirea took place in Belgium, though more of my work occurred in Israel (while not as much as in New York).  Attached as Exhibit J is a spreadsheet detailing my meetings in Belgium on behalf of MegaSpirea.  Attached as Exhibit K is a spreadsheet detailing my meetings in Israel

78.    In addition to my own meetings in New York on behalf of MegaSpirea, Defendant Reich and MegaSpirea management had many other meetings in New York.  Based on my experience as an executive for MegaSpirea, Mr. Reich spends most, if not all, of his working week traveling internationally and I believe Mr. Reich travels to New York on MegaSpirea business at least once a month.  Attached as Exhibit L is a partial list of travel to New York by MegaSpirea's executives via the Ayala Tours Travel Agency.  This list shows MegaSpirea executives as well as others who traveled to and from New York on the MegaSpirea account more than sixty times.  I am aware that Defendant Reich and other MegaSpirea executives also used other travel agents for their business travel including the Castles Travel agency.  I have also been informed by Ayala Travel that Reich and the MegaSpirea entities have an overdue debt of more than $300,000.

### MegaSpirea Corporate Structure

79.    Each of the MegaSpirea entites has overlapping management and officers.  Messrs. Reich and Klein are in primary control of each of the entities.

13

80.    When I originally started working for MegaSpirea there were only two companies – MegaSpirea, N.V. and MegaSpirea SAS.  From the outset of my employment, Mr. Reich explained to me that part of my job was to create a corporate structure that would be as tax advantageous to him and the company, including the creation of additional corporate entities.  Over the course of my employment with MegaSpirea, MegaSpirea AG, MegaSpirea International, Inc. and MegaSpirea Holdings Ltd. were established.

81.    Each of the entities plays a different function in the overall corporate structure. MegaSpirea, N.V. is the owner of the the Mailliner 100 technology patent.   MegaSpirea SAS is the R&D and manufacturing arm of the company and originally handled all corporate matters.  Megaspirea International was set up as the international headquarters in the greater New York area including marketing, sales, and overseeing the technical design of the Mailliner 100 and future generations of the machine.  MegaSpriea Holdings was set up as the parent entity of the aforementioned companies.  Investors and employees of MegaSpirea are awarded shares in this entity.

82.    Over the course of my employment with MegaSpirea, I, like many of my co-executives held several titles in the various entities.  I was in charge of Business Development for MegaSpirea International, Inc.  I was Strategic Advisor for MegaSpirea Holdings, Ltd. and I was a Managing Director of MegaSpirea SAS.  In addition, I helped secure legal counsel to determine the legal status of both the European and U.S. patents and was involved in negotiating the agreement to purchase the patent rights from the original owner.  Two of the attorneys secured by me were New York-based.

14

83.     For all external meetings, we communicated that we were one corporate entity.  We presented ourselves as MegaSpirea and not as separate MegaSpirea entities.

84.     My compensation from MegaSpirea was paid at times via MegaSpirea SAS, at times via MegaSpirea Ltd., and at times I was asked to bill MegaSpirea International for my time.  My compensation was at times wired to my savings/brokerage account with A.G. Edwards and at other times wired to Israel.  Attached as Exhibit M are copies of wire payments made by MegaSpirea to my A.G. Edwards account.  This account is under the name of Samuel Holdings LLC.

85.     In his Declaration, Mr. Klein claims that a meeting took place in April or May 2006 in Belgium regarding my shares in the company.  No such meeting took place in April or May 2006 and Mr. Klein was never present at any meeting between myself and defendant Reich in Belgium to discuss my receipt of shares.

86.     Mr. Klein also claims that I never "performed as promised" and that I failed to bring any new investors or any money whatsoever to MegaSpirea Holdings, Ltd.  At all times, I performed my duties professionally for MegaSpirea.

87.      Prior to my employment with the company, I made it very clear that I could not raise money for the company in good faith unless specific corporate structures were put into place. In addition, the corporate assets – namely the rights to the Mailliner technology patent had to be settled.  My first duties for the company were to ensure that these steps were taken.

88.    It is also not true that I did not bring new investors to the company. I was primarily responsible for bringing the large investment bank Houlihan Lokey Howard & Zukin to the company who was prepared to sign an engagement letter with MegaSpirea. I also solicited the company to several other large investors. There was never any condition that my receipt of shares in MegaSpirea was tied to my raising a specific dollar amount for the company nor would I have agreed to such a condition.

89.    Following the termination of my employment, of which I was never directly informed, MegaSpirea continued to represent I was a member of its senior management team. For instance, the Company's U.S. (and only) website listed me as part of MegaSpirea management at least until May 2007. See Exhibit D annexed hereto. Moreover, my MegaSpirea email address was still active as of December 11, 2007.

90.    I believe that most of the relevant documentation in this action have been attached to the Complaint or to my Declaration. I believe the remaining documentation is in the possession of MegaSpirea International, which is located within the New York City Metropolitan area, or is available in electronic form. To the extent any relevant documents are located in Israel, they can be easily provided to me by MegaSpirea's Israeli counsel and produced in New York.

Executed:    Jerusalem, Israel
                  February 13, 2008

/s/ Jordan Herzberg
_____
Jordan Herzberg

# Exhibit A

☐ CORRECTED (if checked)

| PAYER'S name, street address, city, state, ZIP code, and telephone no. | 1 Rents | OMB No. 1545-0115 | |
|---|---|---|---|
| DELACO COMPANY, THE<br>1105 NORTH MARKET STREET, SUITE 1800<br>WILMINGTON DE 19801<br>302-427-2634 | $<br><br>2 Royalties<br>$ | 2005<br><br>Form 1099-MISC | **Miscellaneous Income** |
| | 3 Other income<br>$ | 4 Federal income tax withheld<br>$ | Copy B<br>For Recipient |
| PAYER'S Federal identification number    Redacted | RECIPIENT'S identification number | 5 Fishing boat proceeds<br>$ | 6 Medical and health care payments<br>$ | |
| RECIPIENT'S name, street address (including apt. no.), city, state, and ZIP code<br><br>JORDAN HERZBERG | | 7 Nonemployee compensation<br>Redacted<br>$ | 8 Substitute payments in lieu of dividends or interest<br>$ | This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported. |
| 210 W. 90TH STREET, #4K<br><br>NEW YORK, NY 10024 | | 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ► ☐ | 10 Crop insurance proceeds<br>$ | |
| | | 11 ///// | 12 ///// | |
| Account number (see instructions) | | 13 Excess golden parachute payments<br>$ | 14 Gross proceeds paid to an attorney<br>$ | |
| 15a Section 409A deferrals | 15b Section 409A income | 16 State tax withheld<br>$ | 17 State/Payer's state no. | 18 State income<br>$ |
| $ | $ | $ | | $ |

Form **1099-MISC**        (Keep for your records.)        Department of the Treasury - Internal Revenue Service

BORO CODE:      1
BLOCK #:  01237
LOT #:    0017

City of New York
P.O. Box 3180
New York, NY 10007-3180

0001 0043996 00000000 001 001 43996 INS: 0 0

I..lIII...II.....I.I.I..I...II..I.I.I..I...II..II.....III..I.I
ANNE QUINTAL
210 W 90TH ST APT 4K
NEW YORK, NY 10024-1241



FINANCE
NEW • YORK
THE CITY OF NEW YORK
DEPARTMENT OF FINANCE
nyc.gov/finance

October 1, 2007

Dear Homeowner,

The Mayor and the City Council have approved another property tax rebate. Your enclosed rebate check is the City's way of recognizing the sacrifice you made to keep New York City fiscally sound.

Sincerely,

Martha E. Stark

Martha E. Stark
Finance Commissioner

cashing this check, you are acknowledging that this property is the primary residence of at least one of the owners ted below. If none of the owners listed below is a primary resident: 1. Do not cash the check; and 2. Return this letter ong with the check to: New York City Department of Finance, Rebate Return Unit--NMPR, One Centre Street, Room 500, ... York NY 10007. Thank you for helping us keep our information correct and updated.

 at&t

Page:                 1 of 5
Billing Cycle Date:   10/17/07 - 11/16/07
Account Number:       02688372-001-42



**How To Contact Us:**
- 1-800-331-0500 or 611 from your wireless phone
- For Deaf / Hard of Hearing Customers (TTY/TDD)
  1-866-241-6567

**Wireless Number with Rollover**
646-853-0620 - 10117 Minutes

| | |
|---|---:|
| Previous Balance | 80.49 |
| Payments Posted | -80.49 |
| BALANCE | 0.00 |
| Monthly Service Charges | 63.98 |
| Usage Charges | 0.00 |
| Credits/Adjustments/Other Charges | 6.36 |
| Government Fees and Taxes | 7.30 |
| TOTAL CURRENT CHARGES | 77.64 |
| To be applied to your card on file on/after Dec 09, 2007 | -77.64 |
| **Total Amount Due $0.00** | |

## Get your Billing Details at att.com/mywireless

In the coming months you may notice our new bill format. We are simplifying your paper bill by removing the itemized call and data details. All the important information you need is still available and now easier to read on fewer pages. As always, all your account details including call and data usage details are available online. Just login to att.com/mywireless it's safe, secure and easy! Thank you for supporting us in our ongoing commitment to the environment.

Return the portion below with payment only to AT&T Mobility. ✂

*9020 N. MAY AVE., #250 NYC*
*OKLAHOMA CITY, OK 73120*

#BWNHHBD
#02688372420018#
AV 01 016835 31965H 86 A**5DGT
JORDAN A HERZBERG
210 W 90TH ST
#4K
NEW YORK, NY 10024-1241

Account Number:    02688372-001-42
Total Amount Due:           $0.00
Amount Paid:

S _____

* Please do not send correspondence with payment.

☐  Yes, enroll me in AutoPay.
     Signature required on reverse.

**Total Amount
Due by Dec 09, 2007**
Please Mail Check Payable to:

AT&T Mobility
P.O. Box 537113
Atlanta, GA 30353-7113

42002688372100102007111600000007764505

# Citi Platinum Select" Appreciation Plus"

**citi**

Account Number

| Customer Service: | Total Credit Line | Available Credit Line | Cash Advance Limit | Available Cash Limit | New Balance |
|---|---|---|---|---|---|
| 1-800-335-4112 | $8400 | $8400 | $1000 | $1000 | $20.00 |
| BOX 6500 | Statement/ | Amount Over | Past Due | Purch/Adv | Minimum |
| SIOUX FALLS, SD | Closing Date | Credit Line | | Minimum Due | Amount Due |
| 57117 | 09/11/2007 | $0.00 + | $0.00 + | $0.00 = | $0.00 |
| | | | | | Amount |

Sale Date  Post Date  Reference Number   Activity Since Last Statement

**ATTENTION: THE ATTACHED CHECK CANNOT BE USED UNTIL YOU CONFIRM THAT YOU HAVE RECEIVED IT. PLEASE CALL 1-800-852-7282 FROM THE U.S. AND CANADA.**

|  |  | **Payments, Credits & Adjustments** | -10.00 |
|---|---|---|---|
| 8/29 | 88888888 | $10 CREDIT PROMOTION. USE BY 10/15/07 | |
| 9/11 | | **Standard Purch** CREDIT PROTECTOR FEE MNTHLY 8009505114 | 0.00 |

TRANSFER YOUR HIGH-RATE BALANCES AND SAVE! Enjoy a promotional 0.000% APR on transferred balances until 04/01/08. After that your purchase APR will apply. Plus, your credit line may increase up to a total credit line of $9,700.* There is a finance charge of 3% of the amount of each balance transfer, but not less than $5.00. Check valid until 10/11/07. Your current credit line may increase up to a total credit line of $9,700 based upon our review of your credit history, and includes any credit line increases that you may have received within the last 60 days.

Save Now, use the attached check, or visit us at
http://www.balancetransfer.citicards.com.

*** *** ***   No Payment Required   *** *** ***
Your account has a credit balance.   You may use it to offset future purchases.

Enjoy our gift of a $10 bonus credit! It's yours. Just use your Citi Card to shop, dine out, buy movie tickets and more. But hurry! You must use your card by October 15, 2007 or lose your bonus credit.

Pay your credit card bill online anytime. It's easy, secure and free. Plus, you can schedule payments in advance or pay by 5pm ET on a weekday to post the same day! Sign in at citicards.com and select Make a Payment.

| Account Summary | Previous Balance | (+) Purchases & Advances | (-) Payments & Credits | (+) FINANCE CHARGE | (=) New Balance |
|---|---|---|---|---|---|
| PURCHASES | $0.00 | $0.00 | $10.00 | $0.00 | $10.0 |
| ADVANCES | $10.00- | $0.00 | $0.00 | $0.00 | $10.0 |
| TOTAL | $10.00- | $0.00 | $10.00 | $0.00 | $20.0 |

Days This Billing Period:

| Rate Summary | Balance Subject to Finance Charge | Periodic Rate | Nominal APR | ANNUAL PERCENTAGE RATE |
|---|---|---|---|---|
| PURCHASES Standard Purch | $0.00 | 0.03559%(D) | 12.990% | 12.990% |
| ADVANCES Standard Adv | $0.00 | 0.06367%(D) | 23.240% | 23.240% |

230599

SEND PAYMENTS TO:  CITI CARDS PO BOX 183057 COLUMBUS, OH 43218-3057
PLEASE FOLLOW PAYMENT INSTRUCTIONS ON REVERSE SIDE. PAYMENT MUST BE RECEIVED BY 5:00 PM LOCAL TIME ON 10/08/2007

Visit: www.citicards.com

**citi**

Redacted

1542418054865844900000000000005511

Your Account Number

Please Enter Amount Of Payment Enclosed

$

| Payment Due Date | Your Total Balance | Minimum Amount Due |
|---|---|---|
| OCT 08 2007 | CREDIT | * * * |

23059S MC   00 A 1     BR1041027

CITI CARDS
PO BOX 183057
COLUMBUS, OH         43218-305

003059

ANNE QUINTAL
210 W 90TH ST
APT 4K
NEW YORK          NY   10024-1241

(   )                    (   )
New Home Phone          New Business Phone

Print changes of address, phone number or email above.*

*If you provide an e mail address, we may use it to contact you about your account. We may also use your e-mail address to send you information about products and services you might find useful.



U.S. Service Center    000
PO Box 769013
San Antonio, TX 78245-9013

109395/R1/04F000

000
CITIBANK, N. A.
**Account**

ANNE L QUINTAL
210 WEST 90TH STREET APT. 4K
NEW YORK NY          10024-1241

**Statement Period**
Aug. 20 - Sept. 20, 2007

Page 1 of 4

## CITIBANK ACCOUNT AS OF SEPTEMBER 20, 2007

**Relationship Summary:**

| | |
|---|---|
| Checking | $. |
| Savings | $ |
| Investments (not FDIC insured) | ----- |
| Loans | $0.00 |
| Credit Cards | ----- |

**WHEN PLANNING THAT NEXT GETAWAY**
Plan on Citibank's World Wallet® Service to make ordering Foreign Currency easier than ever.
You have access to a wide variety of Foreign Currencies, delivered right to your door or place of business.
(Anywhere in the Continental U.S.).

Limits/Fees apply.    Call 1-800-756-7050 for details

**Checking**                                                              **Balance**
  Regular Checking                                                          $

**Savings**                                                                 **Balance**
  Preferred Money Market                                                    $

**Total Checking and Savings**                                             $.

| Loans | Credit Line | Amount Available | Amount You Owe |
|---|---|---|---|
| Checking Plus (as of 9/20/07) | $5,000.00 | $5,000.00 | $0.00 |
| Variable Rate Ready Credit (as of 8/22/07) | $10,000.00 | $10,000.00 | $0.00 |

**Total Outstanding Loan Balance**                                         $0.00

---

*Are you worried about what you're going to do when your adjustable-rate mortgage resets? Thinking about tapping into the equity of your home?*
Citibank, backed by the strength and stability of Citi, has solutions that fit your needs. For more information, or to apply, contact your mortgage Lending Consultant at your local Citibank Financial Center.

*First mortgage loans are made available through CitiMortgage, Inc., and equal housing lender. CitiMortgage, Inc. does business as CitiCorp Mortgage in NM.*

## SUGGESTIONS AND RECOMMENDATIONS

### Pay Bills Online for FREE at citibankonline.com

Online Bill Payment can save you time and money.
Quickly schedule and pay several bills at one time or easily set up recurring payments.
Tell us who you want to pay and when. Then, with a few clicks of a mouse, your bills are paid.

Redacted

63

Page 1



520 BROAD STREET
NEWARK, NJ 07102

Invoice Period 08/03/2007 To 09/02/2007

Account No.
Invoice No.    42001713
2127210150 Unlimited Local

| | |
|---|---|
| Amount of Last Bill | $87.36 |
| Payments as of 09/02/2007 | $87.36 |
| Adjustments as of 09/02/2007 | $0.00 |
| **Beginning Balance** | **$0.00** |
| **Current Bill Total Charge** | **$77.78** |
| **Total Amount Due** | **$77.78** |

Payment Due Date on 09/26/2007

ll.,llll...ll......l.l.l.l.ll..l.l.lll.l.l.ll.l..ll.lll...llll..l.ld.l
ANNE L. QUINTAL
210 W 90TH ST APT 4K
NEW YORK, NY 10024-1241

We value your business and thank you for using IDT.
Please do not pay this bill. The total amount due has been charged
to your account on 09/26/2007 per your automated payment arrangement

**FOR CUSTOMER SERVICE CALL 1-800-889-9126**
Monday - Friday, 8:00 am to 10:00 pm Eastern
For Online Account Management, visit www.idt.net/account

Account No.
Invoice No.    42001713    Payment Due    09/26/2007    Total Due    $77.78    **Amount Enclosed**

Please Check Here If Address Changes And Complete Reverse Side

lll..l..l..lll....ll..ll.l.l.l..l.l.ll.l..l.ll..l
**IDT AMERICA**
P. O. Box 27894
NEWARK, NJ 07101-7894

ANNE L. QUINTAL
210 W 90TH ST APT 4K
NEW YORK, NY 10024



00019288349000000000777800000000007778111000008

| PAYER'S name, street address, city, state, and ZIP code | 1 Rents | OMB No. 1545-0115 | |
|---|---|---|---|
| IDT Contact Services, Inc<br>520 Broad St    16Flr<br>Newark, NJ 07102<br>973-438-3469 | 2 Royalties | 2005<br>1099-MISC | **Miscellaneous Income** |
| | 3 Other Income | 4 Fed income tax withheld | **Copy B**<br>**For Recipient** |

| PAYER'S Federal Tax ID | RECIPIENT'S identification No. | 5 Fishing boat proceeds | 6 Med & health care pmts | This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported. |
|---|---|---|---|---|
| RECIPIENT'S Name and Address<br><br>Herzberg, Anne<br>210 W 90th St Suite 4K<br>New York, NY 10024 | | 7 Nonemployee Compensation<br>$ | 8 Pmts in lieu of Div or Int | |
| | | 9 Payer made direct sales of $5000 or more of consumer products to a buyer (recipient) for resale | 10 Crop Insurance proceeds | |
| | | 13 Excess Golden Par Pmts | 14 Gross paid to an attorney | |

| Account Number | 15a Sec 409A deferrals | 15b Sec 409A income | 16 State tax withheld | 17 State/Payer's state no. | 18 State income |
|---|---|---|---|---|---|
| 580 | | | | | |

Form **1099-MISC**                    (Keep for your records.)                    Department of the Treasury - Internal Revenue Service

---

| PAYER'S name, street address, city, state, and ZIP code | 1 Rents | OMB No. 1545-0115 | |
|---|---|---|---|
| IDT Contact Services, Inc<br>520 Broad St    16Flr<br>Newark, NJ 07102<br>973-438-3469 | 2 Royalties | 2005<br>1099-MISC | **Miscellaneous Income** |
| | 3 Other Income | 4 Fed income tax withheld | **Copy 2**<br>**To be filed with recipient's state income tax return, when required.** |

| PAYER'S Federal Tax ID | RECIPIENT'S identification No. | 5 Fishing boat proceeds | 6 Med & health care pmts | |
|---|---|---|---|---|
| RECIPIENT'S Name and Address<br><br>Herzberg, Anne<br>210 W 90th St Suite 4K<br>New York, NY 10024 | | 7 Nonemployee Compensation<br>$ | 8 Pmts in lieu of Div or Int | |
| | | 9 Payer made direct sales of $5000 or more of consumer products to a buyer (recipient) for resale | 10 Crop Insurance proceeds | |
| | | 13 Excess Golden Par Pmts | 14 Gross paid to an attorney | |

| Account Number | 15a Sec 409A deferrals | 15b Sec 409A income | 16 State tax withheld | 17 State/Payer's state no. | 18 State income |
|---|---|---|---|---|---|
| 580 | | | | | |

Form **1099-MISC**                    Department of the Treasury - Internal Revenue Service

---

## Instructions to Recipients

Account number. May show an account or other unique number the payer assigned to distinguish your account. Amounts shown may be subject to self-employment (SE) tax. If your net income from self-employment is $400 or more, you must file a return and compute your SE tax on Schedule SE (Form 1040). See Pub. 533, Self-Employment Tax, for more information. If no income or social security and Medicare taxes were withheld and you are still receiving these payments, see Form 1040-ES, Estimated Tax for Individuals. Individuals must report as explained below. Corporations, fiduciaries, or partnerships report the amounts on the proper line of your tax return.

Box 7. Shows nonemployee compensation. If you are in the trade or business of catching fish, box 7 may show cash you received for the sale of fish. If payments in this box are SE income, report this amount on Schedule C, C-EZ, or F (Form 1040), and complete Schedule SE (Form 1040). You received this form instead of Form W-2 because the payer did not consider you an employee and did not withhold income tax or social security and Medicare taxes. Contact the payer if you believe this form is incorrect or has been issued in error. If you believe you are an employee, report this amount on line 7 of Form 1040 and call the IRS for information on how to report any social security and Medicare taxes.

R13 Format(c)www.1099Express.com

IDT Contact Services, Inc
520 Broad St    16Flr
Newark, NJ 07102

Important Tax Return Document Enclosed

Herzberg, Anne
210 W 90th St Suite 4K
New York, NY 10024

 Redacted

  

| ** ** | **Invoice Date** | 17/01/2007 | **Rental Agreement** | 321D41173 |
| | **Invoice No** | I7196302 | | 602S00239 |
| | **Original Invoice** | | **Brought Fwd RA** | |
| **INVOICE** | **VAT Reg No** | 366'394 | **Carried Fwd RA** | |

7027

MR JORDAN AARON HERZBERG
210 WEST 90TH STREET, APT 4K
NEW YORK, NY
10024
U.S.A

| **Account No** | |
| **Order Number** | 0729945489 |
| **Voucher Number** | 0729945489 |

| **Rental End** | 17/01/2007 | 18:55 | **Location** | Zurich Airport |
| **Rental Start** | 17/01/2007 | 11:13 | **Location** | Zurich Airport |
| **Rental Length** | 1 day | | **Driver Name** | MR JORDAN AARON  HERZBERG |

## Vehicle Details

| Registration | Description | KM Out | KM Out | Driven |
|---|---|---|---|---|
| VD512175 W | Opel Vectra STW 5dr Auto | 2476 | 2800 | 324 |

## Charge Details

| Charge Type | VAT Rate | Units | Rate | Total |
|---|---|---|---|---|
| Rental - Group Charged EA | 7.60 | 1 | 116.48 | 116.48 |
| Service Fee | 7.60 | | 18.00 | 24.30 |
| Vehicle Registration Fee | 7.60 | 1 | 4.00 | 4.00 |
| Winter Equipment | 7.60 | 1 | 7.00 | 7.00 |
| Environmental Surcharge | 7.60 | | | 7.50 |
| Fuel Purchased | 7.60 | | | 87.00 |

| **Cost of Rental** | | | | 246.28 |
| VAT On 246.28 | | | 7.60 | 18.71 |

pt: FT
dt: D
acc: OVS
stat: 4, MIX
div:

| **Total Cost (CHF)** | 264.99 |
| **Voucher Value** | 0.00 |
| **Cash Payments** | 0.00 |
| **Credit Card Payments** | ***** | 264.99 |
| **Balance Due (CHF)** | 0.00 |

The Credit Card Payments above amount to EUR169.59 at an exchange rate of CHF 1 = EUR0.64

Redacted

Vanguard Rental
(Switzerland) AG
¹onggerstrasse 40
37 Zurich

Invoice
Queries:

Email:

Reservations:
All other
Enquiries:

Tel:+41 44 654
5512
Fax:+49 1805
002739
frage@emea.vanguardcar.com

Tel:0800 55 70 21
Tel:+41 43 366

All transactions entered into are subject
to the company's standard terms and
conditions of trading

E & O E

December 8, 2007
Account Number

Page 1 of 2

Customer Code .

•0000288
TIME WARNER CABLE OF NYC
41-51 KISSENA BLVD FLUSHING NY   11355-3189
B150 1100 BB RP   08  12082007 YYYNYY

ANNE QUINTAL
210 W 90 ST APT 4K
NEW YORK NY  10024-1241

|..|lll..|l....|.|.|..|l.|.l.|.|..|l.l|..|.||.|.|

## In the know...

IMPORTANT! THIS BILL REFLECTS NEW RATES, WHICH
TOOK EFFECT DECEMBER 1,2007.

Do you love basketball? Then you need NBA LEAGUE PASS on
digital cable. Catch the games you can't see anywhere else. To
order for only 4 payments of $44.75, call 1.800.OK.Cable today.
NBA TV included.

### *Account Summary*

| | |
|---|---|
| Previous Balance | $ 106.62 |
| Payments received by 12/8/2007 | 106.62 CR |
| Current Charges | 114.28 |
| **Total due by 12/29/2007** | **$ 114.28** |

### *Account Details for service 12/18/07 to 01/17/08*

| | |
|---|---|
| 12/03 Credit Card Payment | 106.62 CR |

### Current Charges

| Monthly Charges | |
|---|---|
| 12/08 Basic Service | .00 |
| D2 Package | 22.95 |
| DTV, Cinemax And Pod, HBO And Pod | .00 |
| Remote(s) @ $0.25 Ea | .00 |
| Standard Service | .00 |
| Converter(s) @ $7.40 Ea | 50.15 |
| Bulk Service Charge | 36.95 |
| Road Runner Online Svc | |

| Taxes and Fees | |
|---|---|
| 12/08 Franchise Fee | 4.17 |
| FCC Regulatory Fee | .06 |
| | 114.28 |

| | |
|---|---|
| **Total due by 12/29/2007** | **$ 114.28** |

Please see reverse side for more information

## TIME WARNER CABLE

## Moving?

Call (212) or (718) 358-0900 before
the big day to receive our special
*Time to Move* offer!

Make Check Payable To:

TIME WARNER CABLE OF NYC
PO BOX 9227
UNIONDALE NY   11555-9227

|..|l..|ll.|.|.|.|l.|.|.|.|.|..|l.|.|l.|.l.|.|.ll..|.l.|.ll

**ANNE QUINTAL**

Account Number

| | |
|---|---|
| **Total due by 12/29/2007** | **$ 114.28** |

## Pay Online

Go to timewarnercable.com/nyandnj
and click on "My Account."

Redacted

**Membership Rewards®**
**Points Available**
at 11/25/07, when charges due are paid in
full and all accounts are in good standing.



**Personal Card**
**Statement of Account**

Prepared For
JORDAN A HERZBERG

| | Account Number | Closing Date | |
|---|---|---|---|
| | XXXX-XXXXX | 11/25/07 | Page 1 of 8 |

| | Previous Balance $ | Payment Activity $ | New Activity $ inc. Adjustments and Finance Charges if any | New Balance $ | Minimum Amount Due $ | **Payment Due Date** **12/20/07** |
|---|---|---|---|---|---|---|
| Due in Full | 152.64 | -152.64 | 179.31 | 179.31 | 179.31 | |
| Flexible | 29.18 | -29.18 | 103.04 | 103.04 | 20.00 | |
| Total | 181.82 | -181.82 | +282.35 | =282.35 | 199.31 | Please refer to page 3 for important information regarding your account |

To manage your Card account online or to pay your bill, please visit us at **www.americanexpress.com.** For additional contact information, please see the reverse side of this page.

**Give Loved Ones the Services and Protection of Your Card**
Get up to five Additional Cards for a total annual fee of $30 with the first year, fee-free.* Manage household spending on one billing statement. You can earn one Membership Rewards® point for virtually every dollar charged on your Additional Cards.** To add Additional Cards to your account, go to **www.americanexpress.com/addcard** or call **1-800-354-4763**, and mention **RSVP 627H.**
*Terms, conditions and restrictions apply. After the first year, there is only one annual fee of $30 for up to five Additional Cards. The annual fee for each Additional Card after the first five on your account is $30. **Terms and conditions for the Membership Rewards program apply. Visit **www.membershiprewards.com/terms** for more information.

| **Activity** | * indicates posting date | Amount $ |
|---|---|---|
| | | -181.82 |
| 11/15/07* | ELECTRONIC PAYMENT RECEIVED-THANK | |

| **Due in Full Activity for JORDAN A HERZBERG** | | Amount $ |
|---|---|---|
| Card XXXX-XXXXX. | | 80.49 |
| 11/08/07 | CINGWS*0268837200142WICHITA FAL      TN | |
| | 8003310500 | |
| | Description | |
| | TELEPHONE SERV | 72.46 |
| 11/18/07 | T-MOBILE RECURNG PMT800-937-8997      WA | |
| | T-MOBILE | 26.36 |
| 11/21/07 | AMAZON.COM      AMZN.COM/BILL      WA | |
| | MERCHANDISE | 179.31 |

**Total Due in Full Activity**

Continued on Page 3

↓ Please fold on the perforation below, detach and return with your payment ↓

**Payment Coupon**

| | Account Number | **Payment Due Date:** **12/20/07** | Please enter account number on all checks and correspondence. |
|---|---|---|---|

JORDAN A HERZBERG
APT 4K
210 W 90TH ST
NEW YORK NY 10024-1241

**New Balance** **$ 282.35** — Make check payable to American Express.

**Minimum Amount Due** **$199.31** — See Finance Charges section on reverse side for a description of when additional Finance Charges are not assessed on Features.

$ _____ •
Amount enclosed

Check here if address or telephone number has changed. Please note changes on reverse side.

Mail Payment to:

AMERICAN EXPRESS
P.O. BOX 2855
NEW YORK NY 10116-2855

Redacted

0000372064794856001 000028235000019931 21 H

T · ·Mobile· stick together

**Your Statement**
Statement For:   **JORDAN HERZBERG**
Mobile Number :   **(917) 865-4100**
Account Number:

Page    1 of    3

### Important Information

Thank you for using EasyPay. Amount
will be forwarded for automatic
processing. Do not pay this bill or
mail remittance.

AV 01 013622 08476H 66 A**5DGT

### Summary of Charges

| | | |
|---|---|---|
| Previous Balance | $ | 72.36 |
| Pmt Rec'd -Thank You | $ | (72.36) |
| Monthly Service Charges | $ | 72.46 |
| **Total Amount Due** | **$** | **72.46** |
| **Total Amount Due by** | | **11/20/07** |

JORDAN HERZBERG
210 W 90TH ST APT 4K
NEW YORK NY 10024-1241

---

### Monthly Service Summary
Monthly service charges from   9/24/07  -  10/23/07

| Mobile Number | Monthly Service Charges | Adjustments | Usage Charges | One Time Charges | Other Charges | Taxes & Surcharges | Total Charges |
|---|---|---|---|---|---|---|---|
| 917-865-4100 | $    59.99 | $    - | $    - | $    - | $    - | $    12.47 | $    72.46 |

| **Available Service** | | | | Type | WHENEVER | | WEEKEND |
|---|---|---|---|---|---|---|---|
| NW1500 Nts/Wkds | | Incl Minutes | | Minutes | 1,500 | | - |
| | | Use Them Or Lose Them | | Minutes | - | | Unlimited |

---

PLEASE DETACH THIS PORTION AND RETURN WITH YOUR PAYMENT PLEASE MAKE SURE ADDRESS SHOWS THROUGH WINDOW.

T · ·Mobile·

Statement For: **JORDAN HERZBERG**
Mobile Number:   (917) 865-4100
Account Number:

| Amount Due By 11/20/07 | Amount Enclosed |
|---|---|
| $72.46 | EasyPay |

T-MOBILE
PO BOX 790047
ST. LOUIS MO 63179-0047

☐  To pay this invoice using your credit card - check box and complete the reverse side

☐  For EasyPay Option - check box and complete the reverse side

☐  If you have changed your address - check box and record new address on the reverse side.

040343598018112007000007246310024124141

# Exhibit B

SF  52  000000     670     1321     49
2007.40   000173              10024     IRS USE ONLY

17547-669-00109-7    A0088288    210
266475691              SB    V

Department of the Treasury
**Internal Revenue Service**
CINCINNATI, OH 45999-0039

For assistance, call:
1-866-699-4083

**Notice Number:** CP210
**Date:** October 15, 2007

**Taxpayer Identification Number:**

029390.379105.0116.003 1 AT 0.334 702
||..|||..||..,.|.|.|.|.|..||.|.||.|.|.|..||.|||...,.|||.|.|

**Tax Form:** 706
**Tax Period:**

SAMUEL     HERZBERG ESTATE
JORDAN HERZBERG
210 W 90TH ST APT 4K
NEW YORK    NY    10024-1241618

Statement of Adjustment to Your Account

Overpayment on Account Before Adjustment                    $.

Adjustment Computation

Tax - Increase                                             $

Interest Charged                                          $
    Net Adjustment Charge                                 $

Balance Due                                            **NONE**

## Penalty and Interest

About Your Notice - The penalty and/or interest charges on your account are explained on the following pages. If you want a more detailed explanation of your penalties and interest, please call the telephone number listed on the top of this notice. You may call your local IRS telephone number if the number shown on your notice is a long-distance call for you. All days mentioned in the paragraphs below are calendar days, unless specifically stated otherwise.

Interest: $.

### 09 Interest

We charged interest because you did not pay your tax on time. Generally, we calculate interest from the due date of your return (regardless of extensions) until you pay your tax in full. The interest rate is variable and may change quarterly. We charge interest on all penalties except estimated tax penalties.

*(Internal Revenue Code section 6601)*

Redacted

Page 1

## IN THE CIRCUIT COURT, SIXTH JUDICIAL CIRCUIT,
## IN AND FOR PINELLAS COUNTY, FLORIDA
## PROBATE DIVISION

IN RE: THE ESTATE OF

**SAM HERZBERG**

_____/

**UCN:** 522005CP005557XXESXX          **REF #: 05005557-ES 003**

### ORDER TO FILE REQUIRED DOCUMENTS

**THIS CAUSE** coming before the Court upon its own motion and the Court finding from an examination of the file and records of the above-referenced case that the following required documents are delinquent:   Necessary documents to close

ORDERED: That the personal representative **JORDAN HERZBERG**, and **JEFFREY M GAD**, attorney of record, are required to file the above listed documents within twenty (20) days and this file shall be reviewed by the Court in twenty (20) days. Failure to file the required documents may result in appropriate Court action. Any response to this Order shall be in writing.

DONE AND ORDERED in Clearwater, Pinellas County, Florida, this _____ day of October, 2007.

CIRCUIT JUDGE

TRUE COPY
ORIGINAL SIGNED

OCT 2 4 2007

GEORGE W GREER
CIRCUIT JUDGE

Copies furnished to:

JEFFREY M GAD                    Attorney
401 E JACKSON ST #1700
TAMPA          FL 33602

JORDAN HERZBERG                  Personal
210 W 90TH ST #4K                Representative
NEW YORK       NY 10024

## IF YOU HAVE FILED THE ABOVE DOCUMENTS, PLEASE DISREGARD THIS ORDER.

Order to File (OFRD)
10/00 revised 01/06

# Exhibit C

**Herzberg in US (non MegaSpirea)**

**2005**

| | | |
|---|---|---|
| Jan-25 | NY | SDA Bris |
| Mar 29-April 11 | NY/MD/CA/NV | JDAA/family |
| April 15-May 9 | NY (Anguilla) | JDAA/family |
| July 6-9 | NY/FL | Business/family |
| July 18-21 | NY/FL | Business/family |
| Aug 2-3 | NY/FL | Business/family |
| **Sept 17** | | **Birth (no flying 6 weeks before and 4 weeks afterward)** |
| Oct 31-Nov 1 | NY | Business |
| Nov 13-Nov 19 | Canada, NY, TX | JDAA |
| Dec 20-Jan 10 | NY/FL/DC/GA | Business/family/esate/taxes/MSP |

**2006**

| | | |
|---|---|---|
| Jan 13-23 | NY/GA/FL | Business/family |
| Jan 26-30 | GA/NY | Business/family |
| Feb 20-23 | FL/NY | Business/family/JDAA |
| Feb-27 | NY/GA/FL | Estate Planning |
| Mar 20-22 | NY/FL | Business/family/estate planning |
| Mar 28-April 1 | NY/FL | Business/family/estate planning |
| Apr-26 | NY | Accounting, also MSP |
| May-09 | NY | JDAA (David sable) |
| May 29-31 | NY | JDAA(also MSP) |
| July 12-August 8 | NY/Canada | JDAA,Family, estate planning, also MSP |
| Aug 24-29 | NY/NV | JDAA, estate planning |
| Sept 13-21 | NY,IL,OH,CT,NJ,MA, F | JDAA, estate planning |
| Oct-16 | NY | JDAA |

**2007**

| | | |
|---|---|---|
| | Feb-15 DC/FL/NY | |
| Mar 21-29 | NY,FL, MA | JDAA |
| Jul 9-18 | ME/NY/FL | Family, business |
| July 25-August 1 | NY | JDAA |
| **Sept 17** | | **Birth (no flying 6 weeks before and 4 weeks afterward)** |
| Dec 1-7 | NY,TX,CA | JDAA |
| Jan 16-19 | NY, DC, FL | JDAA |

# Exhibit D

*The New Leader of the Mail Revolution*



Home

The Mailliner 100™

News

About Us

Management

Contact us

See the Mailliner 100™ Video

# The people

MegaSpirea International is managed by a professional and international team with r years of experience in the mailing and printing industry and financial services. MegaSpirea International's headquarters is located in Norwalk, Connecticut, USA, in New York City metropolitain area. MegaSpirea International's R&D facility is located between Basle (Switzerland) and Strasbourg (France), in the heart of the three-coun! area (France, Germany and Switzerland).

## Hersch Reich

**President, MegaSpirea International Inc**

Hersch has a decade of experience as a venture capitalist in deals in North America Europe. Hersch, majority shareholder of MSI, was the first person to realize the value the patents associated with Continuous Strip Packing technology and has pushed fol entry into the market ever since.

## Dirk Salens

**CEO, MegaSpirea International Inc**



Dirk, a sociologist and economist by training, has been a major player in the Belgian printing industry for over 15 years. In 1997 Dirk, together with the Rochester Institute of Technology and ter the leading printing companies in Belgium, founded the Flemish Innovation Center for Graphic Communication. Dirk is also in the middle of an 8 year term as President of the Board of KISP, Benelux's largest printing school. Dirk served recently as genera manager of a Belgian printing company.

## Clare Woodman

**COO, MegaSpirea International Inc**



Clare brings a unique blend of expertise to the company, with al 20 years in the production mail industry at Pitney Bowes. She ha worked in engineering, product management, strategic marketin and alliance development, along the whole value chain of produ mail, both hardware and software. Clare has an electrical engineering degree, a master of business administration and ho US patents, in a range of topics from real-time machine control 1 Electronic Bill Presentment and Payment

## Hubert Freyburger

**Director General, MegaSpirea Production SAS**

Hubert brings 30 years of engineering design and manufacturing experience to the MSP team. Before joining MSP, he was most recently General Manager of Kern (France), the world's leading producer of top of the line mass mailing machinery. Hubert also founded the WF Euro-Envelopes (France).



## Jan Rasschaert

**CFO, MegaSpirea International Inc**



Jan has spent the last 20 years working in the finance and bank
industries. He has held senior management position at KBC
(Belgium) and at Societe Generale.

## Jordan Herzberg

**Business development, MegaSpirea International Inc**



Jordan served recently as Chief Operating Officer of Vivid
Collection, a New York City-based diamond jewellery house. Pri
that he was involved in the food and consumer products industr
most recently as Chief of Staff to the Chairman and Founder of
Fast Foods Company, where he played an active role in the sale
the privately-held company to Unilever. Jordan holds a Master o
Arts and Diplomacy from the Fletcher School of Law and Diplon
at Tufts University, and has completed graduate work at Harvar
Business School.

## Thierry Frebourg

**Chief Engineer**



Thierry, formerly chief engineer of Kern, is in charge of the day t
day engineering at MSP's plant in Colmar.

Copyright © 2007 MegaSpirea International, Inc. - Legal Information

# Exhibit E

# MEGASPIREA

# EXECUTIVE SUMMARY
## October 30, 2006

This document contains proprietary information of MegaSpirea Holdings and its subsidiaries. It is submitted for the sole purpose of your express intention to learn more about MegaSpirea Holdings and its subsidiaries. The contents of this document should not be disclosed to any other party nor should it be used for any purpose other then such a review as agreed upon by in writing y MegaSpirea Holdings and its subsidiaries.

## MISSION STATEMENT

A *revolution is* occurring in the mailing industry. The industry is more viable than ever, as the Internet drives more and more business into the mail stream. For every online purchase, a parcel is sent and a bill is generated. A name and address is added to the lists that mailings are routinely sent to in overwhelming numbers.

Yet the mailing industry is crying out for new leadership, leaders who can respond to market trends and technologies that have emerged within the past few years. As these trends converge, the industry will grow and new markets will open up to technology providers.

However trends do not develop on their own, they develop when innovative leaders act and provide the necessary catalyst for change. The Mailliner 100™ by MegaSpirea leverages *dynamic envelope creation*™ to address the market needs created by the trends discussed above. Including the envelope with the print stream and creating the mail piece holistically simplifies the mailing operation. This allows for higher security, reduced operator intervention and overhead, an increase in flexibility with regard to cycle time, and reduced inventory and materials handling. There is no need to store pre-printed forms and envelopes.

MegaSpirea is committed to the concept of dynamic envelope creation and has built the hardware/software, and developed integration strategies that leverage that innovation in the mail industry.

The revolution begins. The markets are ready and the technology is rapidly developing. All that is needed to act as a catalyst is a new leader to create the conditions that result in critical mass. *MegaSpirea is leading this revolution.*

2

## WHAT WE DO

MegaSpirea's patented technology revolutionizes the mass mailing industry by its ability to allow for mail content and envelope to be printed and cut from the same roll of paper in one continuous and dynamic work-flow. It does this without compromising user content variability and customization, while increasing productivity and quality of mail, with lower cost for labor & supplies

## MAILLINER 100™ ADVANTAGE

What differentiates the Mailliner 100™'s technology is that the integrity of the mail content is guaranteed by the continuous workflow as content-follows-envelope, this work-flow ensures no break from start to finish. This eliminates the need for stocking pre-printed envelopes and allows for greater flexibility. It also reduces the time frame from document creation to ready mail.

## MegaSpirea's Mailliner 100 ™ vs. Conventional Technology

### One Step Continuous Work Flow

- The Mailliner 100™ allows integrated output software to manipulate the importation of the client databases to print variable and non-variable documents together with the envelope enabling Ready Mail. In one step,the Mailliner 100™ then generates documents and envelopes according to client/user specifications, performs mail finishing (insertion), and Ready Mail becomes available at the final destination depot of the Post Office closest to the mail recipient.

### The 6-Steps of Conventional Technology: The Fragmented Approach

- Production and internal storage of envelopes
- Printing of fixed elements (logo etc.)
- Printing of variable elements (address, etc.)
- Inserting of documents into envelope
- "Ready Mail" to be dispatched to the local Post Office
- Post Office dispatches to final destination depot closest to the mail recipient

3

The advantage of MegaSpirea's Mailliner 100™ technology is its capability of uniting previously fragmented approaches in order to drive greater efficiencies. The true test of MegaSpirea's innovative technology is that it can facilitate delivery of hybrid mail directly to the closest destination depot of the intended mail recipient.

### HOW IT WORKS

The process begins with the creation of a print file using a document composition tool which is capable of receiving and storing client-facilitated information and data (a letter or invoice) for immediate or delayed output. The key is to ensure that the tools employed create a document that is output agnostic and scaleable.

MegaSpirea uses Piece-Tracking Software to clean up old formats, perform page counts or add bar codes to each page to facilitate document integration with file-based processing control systems. This assures mail piece integrity. These modifications need not be extensive but the software allows for user-initiated customized formats. This is user-friendly enough for clients to fully capitalize on the available print\mail finishing technology to boost processing efficiency and insure process integrity.

Customer data is then extracted from a data repository and merged with a variable document format to create a print image. Data is printed in a continuous flow with allowances made for envelope creation on the same roll of paper on which the content (mail document) is printed on.

Once the document is printed it is fed into the Mailliner 100™. Utilizing MegaSpirea's patented die-cutting technology, the document and envelope are then cut from one continuous paper roll-feed, collated, folded, inserted into the envelope, and sealed. An optical quality control tracking system ensures completeness and accuracy of the output and provides verification that the document was sent.

4

# MAIL MARKET TRENDS, READINESS AND TIMELY OPPORTUNITIES

The mail industry, until now, has been mired with outdated solutions and segregated components provided without much foresight. The opportunity exists to leverage independent new technologies and business strategies in the mail printing and postal markets to drive growth by dynamic mail creation. Here is a shortlist of the trends that are shaping demand in the mail industry;

- **Variable data and digital color printing**
  - Direct mail campaigns are moving to smaller, full-colour, personalized mailings.
  - Workflows are being simplified, to reduce the number of independent processes involved. For example, forms and envelopes will no longer be printed and stored, but will be created dynamically.
  - Workflows will be developed for increased flexibility. For example, just-in-time (JIT) targeted offers will be printed along with mail pieces.
  - The direct mail market is being revolutionized by print on demand (POD) technology. POD leads to shorter mail runs, with more targeted, personalized mailings that are increasingly being handled from start to finish by graphics companies lacking mailing expertise. These companies need simplified solutions and are seeking innovative answers from vendors.

- **Security and Privacy**
  Security and privacy concerns will continue to drive strict regulations regarding the processing of documents:
  - Health care has already experienced significant legislation that has impacted the processing of physical documents, ultimately driving to a completely automated process with no operator intervention.
  - The financial industry is already highly regulated regarding content and timeliness of documents, but has experienced significant failures with existing procedures. New procedures are needed to avoid further failures.



- **Postal privatization**
  - Postal agencies worldwide are entering into private sector partnerships seeking cost efficiencies (privatizations of postal service in Great Britain, Germany, etc.).Postal agencies can add value to existing operations by producing mail, not just delivering it.

- **Emerging markets**
  - The postal needs of these markets with little or no mailing infrastructures are growing significantly. They can take advantage of new technologies and processes without having to integrate with legacy systems. This represents a lucrative area for immediate introduction of ultra-modern mailing systems.

- **Hybrid Mail:**
  - Desktop solutions allow a mail producer to create mail on a personal computer, send it electronically to a mail outlet facility where it is printed, produced and mailed as close to the recipients address as possible. This particular area represents a very significant future revenue stream for the Mailliner 100™, allowing an envelope creation fee of between 5- 10 Euro cents.

- **Targeted Advertisement**
  - It is widely accepted that targeted advertisement as the most effective means of promoting products. The internet search engines ( GOOGLE, YAHOO ) have advanced this to a whole new plateau. A personalized envelope provides the most effective means of utilizing these capabilities. This opens up a whole new revenue stream for the mass mailing industry.

All these techniques are pointing to another trend. The convergences of transactional and marketing communication mail will convert mail production facilities from cost centers to profit center.

## MEGASPIREA'S CORE REVENUE STREAM

MegaSpirea's business is unconventional and as unique as its technology. To understand the potential growth and success of MegaSpirea's business model, it is crucial to bear in mind the core revenue generator is not realized from the sales of its hardware and/or software. Rather, it is the income generated from envelope creation that drives its revenues.

MegaSpirea projects that in 2007 it will contract to install 50 machines under the following terms:

- Installation fee of €150,000 per machine
- Machine contracts are for a minimum period of five years
- Envelope creation fee of €1.4 cent per envelope
- Minimum monthly commitment of 3,000,000 envelopes per machine

Contracts that call for lesser quantities will be result in higher envelope fees. An example of the cash flow model reflecting the above is as follows:

50 machines x 3,000,000 envelopes x 12 months x 5 years x 0.014= €126,000,000
This model will be further elaborated in the attachments.

MegaSpirea will also have income stream from selling Piece Tracking Software which works in tandem with the Mailliner 100™. It is an optical quality tracking software that ensures completeness and accuracy of the Mailliner 100™ output. The software is sold unbundled from the hardware to provide the option for the clients to install their proprietary software.

## ORGANIZATION STRUCTURE

**MegaSpirea Holdings (Israel)**, a privately held company incorporated in Israel in July 2006, wholly-owns three subsidiaries: MegaSpirea Production SAS (France), MegaSpirea International, Inc. (USA), and MegaSpirea AG (Switzerland).

**MegaSpirea Production SAS (France)**, established in February 2005, is located in Colmar, France. It is responsible for Engineering, Research & Development, Manufacturing, and Prototyping.

**MegaSpirea International Inc. (USA)**, established in December 2005, is located in Norwalk, Connecticut. It is the Sales & Marketing arm of MegaSpirea Holdings, and is responsible for MegaSpirea's US sales and marketing, strategic business development, and Public Relations.

**MegaSpirea AG (Switzerland)** established under the laws of Switzerland in April 2006 is responsible for the strategic positioning of the organization. It actively seeks out acquisitions that can enhance value and complement MegaSpirea's core business

## THE PEOPLE

### Hersch Reich, Co-Founder – President

Hersch has a decade of experience as a venture capitalist. A majority shareholder of MegaSpirea, Hersch was the first person to realize the commercial potential applications of the company's unique patented technology, and is responsible for it becoming the viable business it is today.

### Dirk Salens – Chief Executive Officer (Israel)

A sociologist and economist by training, Dirk, has been in the Belgian printing industry for over fifteen years. In 1997, in consortium with ten other leading Belgian printing companies and The Rochester Institution of Technology (USA), Dirk founded the Flemish Innovation Centre for Graphic Communication in Belgium. Since 2000, Dirk has been the President of the Board of the largest printing school in Belgium, KISP. In 2002, he joined Sofadi, NV, a Belgian printing company based in Brussels mired in financial difficulty; Dirk's expertise in the business helped successfully maneuver the turn-around of Sofadi, NV.

### Hubert Freyburger, Co-Founder – Chief Executive Officer (France)

An engineer by training, Hubert founded and managed Dessindus, an engineering company specializing in finishing technology in France in 1981. He co-founded Via-Dessindus and two decades later sold his business to KERN SAS (France), one of the world's leading manufacturers of high-end mass mailing machinery. He joined KERN SAS (France) as their General Manager the same year. Hubert brings 30 years of engineering design and manufacturing experience to the Megasprirea team. As recently as 2003, he co-founded WF Euro-Envelopes SAS, a highly successful envelope manufacturing firm in France.

10

## Clare Woodman – Chief Operating Officer

Clare brings a unique blend of expertise to MegaSpirea, with almost 20 years in the production mail industry at Pitney Bowes. She has worked in engineering, product management, strategic marketing and alliance development, along the whole value chain production mail, both in hardware and software. Clare has an electrical engineering degree, an MBA and holds seven US Patents, in a range of topics from real-time machine control to Electronic Bill Presentment and Payment (EBPP).

## Jordan Herzberg – Strategic Advisor

Jordan served as a Chief Operating Officer of Vivid Collection, a New York City-based Diamond Jewelry house. Prior to that, he was involved in the food and consumer products industry, most recently as Chief of Staff to the Chairman & Founder of Slim-Fast Foods Company, where he played a major role in the sale of the privately-held company to Unilever. Jordan holds a Master of Arts & Diplomacy from the Fletcher School of Law and Diplomacy at Tufts University, and has completed graduate work at Harvard Business School.

## Jan Rasschaert – Chief Financial Officer

Jan has spent the last twenty years working in the finance and banking industries. He has held senior management positions at KBC (Belgium) and at Societe Generale.

## Thierry Fribourg – Chief Engineer

Thierry studied engineering in France. He joined Dessindus is 1991, and in 2002, he was employed by KERN SAS (France) as their Chief Engineer. An expert in the mechanics of "printing", he later joined Altech Applications in 2004, and became their Project Manager.

## PATENTS

The Patents, the foundation of the Mailliner 100™ technology, is owned by a third party. An Irrevocable Agreement has been signed between the Group and the Patent holder whereby the Group has full rights and use of the Patent to conduct its business. Under the terms of the Agreement, the Patent Holder will be remunerated a ceiling rate of 12% from the Royalty Income Revenues received by the Group for the duration of the Patent.

The Patent impacting MegaSpirea's business are the European Patent EP0.873.263, United States Patent US5.971.260, and a Patent application US10.445.798 currently pending approval in the United States Patent Office. Both the EP0.873.263 and the US5.971.260 patents detail a method for producing an "envelope" and its "contents" in one continuous step manufacturing operation based on a roll-fed printing system and an in-line mail finishing operation. The Patents were approved in March 1996 and will expire in March 2016.

## STRATEGIC ACQUISITION & ALLIANCES

In the last 15 months, MegaSpirea had formed strategic partnerships with other entities that would enhance its business, and/or would be integral to its success. These business partners are specialists in print mail, machine design & manufacturing, and/or software engineering. MegaSpirea recognizes the indelible importance of establishing alliances that are strategic to aiding its growth. It will continue to search out opportunities to strengthen its business development. Listed below are brief descriptions of each MegaSpirea's five business partners to date:

### Group Joos N.V. (Belgium)

Group Joos is an all-round graphic company that offers a wide range of products and services, chief amongst them are document management, business document services, direct marketing services, and packaging. The company provides start to finish print & digital mail communication to private companies and government agencies. Megaspirea's first beta-test of its Mailliner 100™ will be conducted at Group Joos' facility in Belgium at the end of October 2006. Group Joos is also Megaspirea's first commercial customer for its Mailliner 100™.

### ISETO Corporation (Japan)

Iseto's business dates as far back as 1855 when it began as a wholesaler and retailer of Japanese washi paper and has since expanded amongst many things into an information processing service provider. Headquartered in Kyoto, Japan, Iseto today provides information processing services, manufacturing and sales of business forms, and sales & development of system equipment for the printing industry in Japan. It specializes in providing mailing services that utilize a variety of equipment to print, insert envelopes, dispatch and deliver mail. A Memorandum of Understanding was signed between Iseto (Japan) and MegaSpirea in which Iseto shall be appointed as the exclusive distributor of Mailliner 100™ if the latter meets the Minimum Order Volume requisites: 2 machines in 2006, 25 machines in 2007. The MOU further states that the price per

13

machine is a €700,000, plus 15% allowable margin for the distributor. Click Charge is €0.05 per envelope.

## ITTI Marketing Ltd. (Israel)

ITTI is MegaSpirea's exclusive wholesaler and distributor of Mailliner 100™ in Israel. The MOU between MSP and ITTI signed in March 2006 calls for a minimum order volume of 8 machines in 42 months. For the exclusivity privilege, ITTI will pay €1,500,000 upon the successful completion of Megaspirea's first installation of the Mailliner 100™ at Group Joos in Belgium, currently scheduled for October 2006. The click charge is priced at €0.015 per envelope, of which ITTI will be assessed 10% of the click-charge collected by Megaspirea on machines sold by ITTI Marketing (Israel).

## KFW Automation (USA)

KfW Automation, headquartered in Allentown, Pennsylvania in the United States, is an engineering firm that specializes in design, concept development, system integration, and high speed automation of machinery for the mail insertion industry. Their customers include giants in the mailing industry viz., Pitney Bowes, Hewlett Packard, Heidelberg Post Press, to name a few. In May 2006, MegaSpirea signed an agreement with KFW to co-engineer a specific part of the Mailliner 100™.

## Norpak Limited (UK)

Norpak was founded in 1964 as a provider of specialty machines to the packaging industry. Today, Norpak is recognized ad UK's leading designers and manufacturers of packaging/mailing machinery and ancillary equipment, In July 2005, Norpak invested €200,000 in MegaSpirea and signed an agreement with Megaspirea to be a distributor and wholesaler of Megaspirea's Mailliner 100™ in the UK. Through Norpak, MegaSpirea will be delivering in December 2006 its first installation of a bundled hybrid mail solution of its Mailliner 100™ and SurePrints Software at the Mailing House in Newcastle, UK. The click charge per envelope for its first installation is €0.05.

**SurePrint (UK)**

SurePrint is a UK-based company specializing in business print mail delivery for hybrid mail. Its innovative PDQit (post documents quickly) software enables the user to send letters and documents to be printed, fulfilled and posted right from the user's personal computer. With PDQit, there is no need for special franking machines, paper, envelopes, stamps, etc. It is easily customizable and to the user, PDQit looks and feels the same as if the user were sending the document to be printed in the his local desktop or printer, The difference is that when the user selects the PDQit's printer, the document is automatically printed, folded, placed in an envelope and posted from SurePrint's secure facility. The cost savings, along with the convenience of utilizing PDQit, are two factors that cannot be discounted. SurePrint's hybrid mail software will be integrated into Mailliner 100™, and can be sold to the user bundled or unbundled.

In March 2006, SurePrint was purchased by Megaspirea's President & Co-founder Hersch Reich, who recognized the symbiotic synergies between MegaSpirea and SurePrint. Mr. Reich vision is to leverage and incorporate SurePrint's PDQit innovation for the mid-to-low volume hybrid mail market.

**FUTURE MILESTONES**

Beginning in November 2006, MegaSpirea will be installing five machines in Belgium, England, Israel, and Japan. Beta-Testing of the machine has been taking place since August 2006. MegaSpirea is currently negotiating transactions primarily in the emerging markets whereby it will provide start to finish mail solutions. In anticipation of projections demands, MegaSpirea is looking into expanding manufacturing capacity.

# Exhibit F



# MEGASPIREA PRODUCTION SAS

# EXECUTIVE SUMMARY

This document contains propriety material of MSP. It is submitted for the sole purpose of being reviewed as a prospective investment. The content of this document should not be disclosed to any other party nor should it be used for any purpose other then such a review as agreed upon by in writing by MSP.

**OBJECTIVE**

The Company, MegaSpirea Production SAS, is in the business of providing innovative, high speed, variable-content online mail finishing solutions to businesses with bulk-mailing needs, using its patented "Continuous Strip Packing" technology ("CSP").

The Company develops, manufactures, and markets an "in-line" envelope solution to improve efficiency of mail processing and mail delivery while significantly reducing costs and time required by conventional systems.        Integrated into the CSP System is a user-friendly, customizable document origination technology, an in-line document-to-envelope insertion system, postage metering, and multi-line optical character readers sorting capability.

MSP is in the initial startup stage, and is seeking investors and/or strategic alliances to bring about its patented innovation in variable content mail finishing and mail delivery.

## MANAGEMENT AND KEY ADVISORS

MegaSpirea Productions was founded in January 2005 in Colmar, France. The operations of MSP has thus far been funded by venture capital funds. The Company has as principals and/or advisors experts in the various fields of bulk-mail printing, printing hardware manufacturers, and venture capitalists:

### Management

- Hersch Reich, Co-founder & President
  - Hersch has a decade of experience as a venture capitalist in deals in North America and Europe. Hersch, majority shareholder of MSP, was the first person to realize the value of the patents associated with Continuous Strip Packing technology and has pushed for its entry into the market ever since.

- Hubert Freyburger, Co-founder & Chief Executive Officer
  - Hubert brings 30 years of engineering design and manufacturing experience to the MSP team. Prior to joining MSP, he was most recently General Manager of Kern SAS (France), the world's leading producer of top of the line mass mailing machinery. Hubert also co-founded the very successful WF Euro-Envelopes SAS (France).

- Dirk Salens, Co-founder & Chief Operating Officer
  - Dirk, a sociologist and economist by training, has been a major player in the Belgian printing industry for over 15 years. In 1997, Dirk, together with the Rochester Institute of Technology and ten of the leading printing companies in Belgium, founded the Flemish Innovation Center for Graphic Communication. Dirk is also in the middle of an 8 year term as President of the Board of KISP, Benelux's largest printing school. Dirk serves as general manager of a Belgian printing company.

- Jan Rasschaert, Chief Financial Officer
  - o Jann has spent the last 20 years working in the finance and banking industries. He has held senior management position at KBC (Belgium) and at Societe Generale.
- Jordan Herzberg, Managing Director
  - o Jordan served recently as Chief Operating Officer of Vivid Collection, a New York City-based diamond jewelry house. Prior to that he was involved in the food and consumer products industry, most recently as Chief of Staff to the Chairman and Founder of Slim-Fast Foods Company, where he played an active role in the sale of the privately-held company to Unilever. Jordan holds a Master of Arts and Diplomacy from the Fletcher School of Law and Diplomacy at Tufts University, and has completed graduate work at Harvard Business School.
- Thierry Fribourg, Chief Engineer
  - o Thierry, formerly chief engineer of Kern SAS, is in charge of the day to day engineering at MSP's plant in Colmar.

## Board of Advisors

- Franz Hunkeler, Chairman/CEO, Hunkeler AG, Switzerland. Hunkeler AG is a leading manufacturer and system supplier for paper processing . The main emphasis is on superior paper handling and finishing in connection with high-performance digital printing systems, the development of innovative systems for web-finishing, as well as the production of advanced paper waste solutions. The company is based in Switzerland and active worldwide.
- Alex Joos, CEO of Group Joos, Belgium. Group Joos is a leading printing company in the Benelux-market, specialized in direct mail and document management and printing-services. Group Joos is an innovating company and invests in new technology, like digital printing and new document services (electronic and printed documents). The company is based in Belgium and is active in Europe.

## MSP's "Continuous Strip Packing" Technology

Organizations today understand the power of mail to exchange critical information and the potential impact mailing costs have on their bottom lines. As organizations struggle to achieve higher productivity, it becomes vital how mail and document flow is managed to minimize cost, optimize effectiveness, up-hold the integrity, reliability, and security of the mail delivery process.

MSP's innovative technology addresses all these concerns. Viewing the flow of communication as a dynamic and continuous process, the output architecture has to be integrated from separate steps of creation, fulfillment, postage metering, and delivery of the document to the intended recipients.

Organizations are invariably looking for ways to improve processes and productivity, yet, many face an indelible challenge to proactively implement new technologies for the generation and distribution of bills, statements, and invoices. MSP's Continuous Strip Packing technology expounds on human functionality through managing the integrated processes mentioned above in a way that does not compromise users' content variability and customization while assuring greater process integrity, faster cycle times, increased productivity, and higher quality mail, along with lower costs for supplies and labor. **The true test of the CSP innovation is that it can facilitate delivery of mail directly to the final destination depot of the Postal Office of the intended mail recipients. The CSP technology centers on making mail finishing and delivery more efficient, effective, reliable, and secure.**

The basis of the Continuous Strip Packing technology (hereafter referred to as "CSP", the "System", or "CSP technology") harnesses its capability of uniting previously fragmented approaches to drive greater efficiencies and foment new levels of effectiveness for the clients/users. The Continuous Strip Packing ("CSP") System comprises of a computer and a print/finish continuous strip packing capability fully integrated into one component. The process begins with the creation of a print file using a document composition tool which is capable of receiving and storing client-facilitated information or data (in this case, a letter)

for immediate or delayed output. The key is to ensure that the tools employed to create the document is done in a way that is output agnostic and is scaleable.

The System software could clean-up old formats, perform page counts or add bar codes to each page to facilitate document integration with file-based processing control systems to assure mail piece integrity. These modifications need not be extensive but the software allows for user-initiated customized formats, and is user-friendly enough for clients to capitalize fully on the available print/mail finishing technology to boost processing efficiency and process integrity.

Customer data is then extracted from a data repository and merged with a variable document format to create a print image. Once the print ready document is printed, the document will be folded, sealed in an envelope with the appropriate postage affixed, and **sorted for dispatch and delivery at its final destination depot of the Postal Office** by multi-line optical character readers. Document and Envelope are printed and cut from the same roll of paper in **one** continuous work-flow.

Sorting is performed using the Post Offices' existing ZIP+4 coding. This format shortens the delivery time by at least half by mitigating the first dispatch and sorting processes. The encryption of information and transmission of the letter is safe and secure. The integrity of the processes is not compromised as the platform communicates from computer-to-computer and bypasses human manipulation during the process.

### CSP Technology vs. Conventional Technology

The CSP System employs intuitive processes along the way that replaces the need for direct manpower. MSP's innovative Continuous Strip Packing technology's integrated output architecture calls for more than a mix of print/finish equipment because it requires software that can manipulate the importation of the client databases to provide the final end result and hardware that generates its final piece, "Ready-Mail", intended for delivery.

### The One-Step Cycle of the CSP: Continuous Work Flow

- Generates envelopes according to client/user specifications, prints variable and non-variable client/user content, perform "mail finishing", and **"Ready Mail"** becomes available in 20 seconds at the *final destination depot* of the nearest Postal Office of the intended mail recipient.

### The Six Steps Cycle of Conventional Technology:
### The Un-integrated Approach

- Production of envelopes
- Printing of fixed elements (logo, etc.)
- Printing of variable elements (address, etc.)
- Printing of commercial flyer
- Inserting of document to envelope
- "**Ready Mail**" to be dispatched to the Post Office.

## MSP's Value Proposition to the U.S. Postal System and Bulk-Mailers

Until now, most of the emphasis in automation has been processing machine-imprinted mail. The progress we have seen over the years is remarkable. In spite of this, the Postal Service entered the 21st. Century challenged by mail volume losses from diversion to technological alternatives and direct competition, changing markets, and pockets of inefficiencies. The combination of growth in costs of labor, employee health care & retirement, fuel, and facilities, the gap between revenue and expenses, and decreased mail volume carry serious financial implications for the U.S. Postal Service system.

Mail volume has been affected by intense competition both from direct alternatives, such as FedEx and UPS, and from technological substitutes, such as email and electronic bill presentment and payment systems. Even Postal Administrations abroad such as Germany's Deutsche Post and Nederlands' TPG have entered portions of the U.S. postal market. Competition is keen and the most efficient and reliable entities will gain market share. Profitability margins will get squeezed. Technological innovation that improves productivity, cut costs, saves process time, and manpower is what MSP's Continuous Strip Packing technology is bringing to the mail service industry.

**MSP's CSP System digitizes the process of mail finishing, sorting, and delivery in one continuous process, making it less labor intensive, less complex, and less expensive for the client/user and the Postal System. Its online mail finishing component utilizes a combination of dynamic die-cutting and a patented continuous paper document conversion technology which supersedes conventional methods.**

**PATENTS AND BUSINESS STRATEGY**

MegaSpirea has successfully applied for both United States and European Patents on their Continuous Strip Packing technology. The European Patents apply to these contracting countries within the European Patent Organization, viz.: Austria, Belgium, Bulgaria, Switzerland, Cyprus, Czech Republic, Denmark, Estonia, Finland, France, Germany, Hellenic Republic, Hungary, Ireland, Italy, Lichtenstein, Luxembourg, Monaco, Netherlands, Portugal, Romania, Slovakia, Slovenia, Spain, Sweden, Turkey, and United Kingdom. MSP intends to organize its business into two main segments:

I. Bulk Mail Users – To design and develop a stand-alone multi-function online mail finishing CSP System, called the **"Mailliner"** for businesses with heavy volume mailing needs, i.e. businesses which are required to mail out client statements, bills, invoices, marketing pieces, etc. on a consistent basis, or to bulk load mail users and direct mail companies. This machine is geared towards direct mail and mail fulfillment houses where job specifications are more diverse and content is variable. We expect this business segment to roll out in the first quarter of 2006. Production of a prototype has already begun in our Colmar manufacturing facilities. The cost savings for these businesses with high mailing demand needs using the CSP Technology is as high as 15%.

II. Postal Agencies – To market MSP's Continuous Strip Packing Systems to Postal Agencies in the United States, Europe, and Asia. However, in the projections and illustrations provided in this text, MSP will use the United States Postal market as a baseline revenue model, driven by the fact that the United States has one of the lowest postage rates in the developed world, and therefore provides for a more conservative look into the revenue generation for the Company. Please see comparison chart of First Class postage in Selected developed Countries for a twenty (20) gram Letter.

| First Class Postage in Selected Developed Countries (in USD) | |
|---|---|
| Japan | 0.68 |
| Germany | 0.64 |
| New Zealand | 0.46 |
| Great Britain | 0.46 |
| Netherlands | 0.46 |
| United States | 0.37 |
| Canada | 0.35 |
| Australia | 0.33 |

MSP intends to introduce its CSP technology to Postal Agencies in the U.S. and throughout the world where bulk-mail users can direct delivery to Postal Offices equipped with CSP technology anywhere in the world. The CSP System at the Postal Offices receives the data from bulk-mail senders, regurgitates the information onto print, and outputs it for dispatch and delivery.

The CSP technology revolutionizes the landscape of direct mail and how mail delivery will be performed in the future. As the CSP technology becomes mainstream for Postal Agencies, it will ultimately facilitate individual machine imprinted mail users to send mail directly from their desktop to the Postal Office nearest to their addressee by latching on to Internet interface.

## MAIL DELIVERY IN THE UNITED STATES

The Mail Delivery System has come a long way. In the United States, mail delivery has evolved from foot to horseback to stagecoach and steamboat to railroad. When gold was discovered in California in 1848, the pioneer movement quickened, and in that year the Post Office Department awarded a contract to the Pacific Mail Steamship Company to carry mail to California. It was supposed to take three to four weeks to receive a letter from the East Coast, but this goal was seldom achieved.

It wasn't until April 3, 1860, that the Pony Express ran through parts of Missouri, Kansas, Nebraska, Colorado, Wyoming, Utah, Nevada, and California. On an average day, a rider covered 75 to 100 miles. He changed horses at relay stations, set about 10 or 15 miles apart, transferring him and mail to continue the journey.

From the Pony Express to Railway Mail Service to Airmail, and in the process we have gleaned over Confederate Postal Service, Free City Delivery, Rural Free Delivery, to name a few. Today, following the United States Postal Reform in the 1960s, a new generation of equipment in changing the way mail flows and improving productivity.

Multi-line optical character readers (MLOCRs) read the entire address on an envelope, spray a barcode on the envelope, and then sort it at the rate of more than nine per second. Wide area barcode readers can read a barcode virtually anywhere on a letter. Advanced face-canceller systems face, cancel, and sort mail. How mail is further sorted is by using ZIP+4 Code. The ZIP+4 code reduces the number of times a piece of mail had to be handled. It also shortened the time carriers spend casing their mail (placing it in order of delivery). First tested in 1991, the delivery point barcode, which represents an 11-digit ZIP Code, will virtually eliminate the need for carriers to case mail because mail will arrive in trays at the delivery post office sorted in "walk sequence". The MLOCR reads the barcode and address, and then constructs a unique 11-digit delivery point barcode using the Postal Service's National Directory and the last two digits of the street address. Then barcode sorters put the mail in sequence for delivery.

Statistics show that First Class Mail volume in the United States which covers 66% of the United States Postal Service's overhead expenses, indicate that the Postal Service is no longer able to rely on the growth of First-Class mail volume to fund the maintenance and expansion of the delivery network (which to date requires an infrastructure expansion to cover an additional 1.7 million new delivery points annually). First Class Mail volume currently accounts for 99.2 billion pieces in 2003. However, Standard mail volume, for the first time in history, have exceeded projected First Class Mail volume, and is fast becoming an area of precipitous growth. Standard mail, primarily advertising, bills, statements, invoice mail is CSP's technology's first point of target. Statistical data points to Standard Mail as a growth area, a forecast that favors MSP's entry into the market.

The United States Postal Service remains committed to its fundamental mission to provide timely, reliable mail delivery to all households, through application of new technologies, effective managing transportation performance and improving operational processes that will reduce handlings and errors. One of the critical points addressed by the U.S. Commissioner of Postal Services to Congress recently was *the recognition to improve the quality of mail preparation and to enter the mail closer to the point of delivery.* In order to support current and future business needs, the United States Postal Service, for one, must optimize its information infrastructure and re-engineer its systems. Through its Advanced Computing Environment (ACE) initiative, it has begun to take steps to study more efficient distribution computing infrastructure, software processes, and upgrading existing hardware to enhance stability, reliability, and speed at lower costs.

How mail is created, transported to the Post Office for sorting, then redirecting it to the Post Office of destination for resorting before it makes it final journey to the recipient takes time, expenses, and manpower. Since letter mail represents approximately 70 percent of the Postal Service's total mail volume, the development of letter mail equipment is instrumental in aiding productivity. Automation, speed, and efficiency are key drivers in the conceptual development of MSP's innovative "continuous strip packing" technology. This is a giant leap in the right direction of automated bulk-mail delivery systems. Presently, there is no technology in place that will be able to deliver bulk-mail directly to the destination depot of the Postal System.

**FUNDING REQUIREMENTS**
MSP seeks capital of 6,000,000 Euro in exchange for 6 % ownership of the company.


**EXIT STRATEGY**
The Company intends to pursue a public offering or seek to be acquired in 2006 pending on market conditions.

For further information please contact:

Dirk Salens
Tel + 32 495 216 134
Fax
dirk@megaspirea.com

Jordan Herzberg
972-54-780-6129
972-2-6733-814
Jordan@megaspirea.com

# Financial Projections

| | | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | Total |
|---|---|---|---|---|---|---|---|---|
| **Turnover** | sales machines | 0.00 | 6.000.000,00 | 20.000.000,00 | 80.000.000,00 | 400.000.000,00 | 600.000.000,00 | 1.106.000.000,00 |
| | service revenue | 0.00 | 0.00 | 450.000,00 | 1.500.000,00 | 6.000.000,00 | 30.000.000,00 | 37.950.000,00 |
| | royalties | 0.00 | 0.00 | 506.250,00 | 1.687.500,00 | 6.750.000,00 | 33.750.000,00 | 42.693.750,00 |
| | total | 0.00 | 6.000.000,00 | 20.956.250,00 | 83.187.500,00 | 412.750.000,00 | 663.750.000,00 | 1.186.643.750,00 |
| **Cost** | operational cost | 1.100.000,00 | 4.935.000,00 | 16.450.000,00 | 50.000.000,00 | 237.500.000,00 | 337.500.000,00 | 647.485.000,00 |
| | sales cost | 0.00 | 600.000,00 | 2.000.000,00 | 8.000.000,00 | 40.000.000,00 | 60.000.000,00 | 110.600.000,00 |
| | total | 1.100.000,00 | 5.535.000,00 | 18.450.000,00 | 58.000.000,00 | 277.500.000,00 | 397.500.000,00 | 758.085.000,00 |
| **profit/loss** | | -1.100.000,00 | 465.000,00 | 2.506.250,00 | 25.187.500,00 | 135.250.000,00 | 266.250.000,00 | 428.558.750,00 |
| **% profit** | | | 7,75% | 11,96% | 30,28% | 32,77% | 40,11% | 36,12% |

| | | 2006 | 2007 | 2008 | 2009 | 2010 |
|---|---|---|---|---|---|
| cost per machine | 2008 outsourcing production | 315.000,00 | 329.000,00 | 250.000,00 | 237.500,00 | 225.000,00 |
| sales machines | 400.000 euro | 0.00 | 80.00 | 200,00 | 1.000,00 | 1.500,00 |
| service revenu | 7,5% of salesprice | 7,50% | 7,50% | 7,50% | 7,50% | 7,50% |
| royalties | per envelope | 0.015 | 0.015 | 0.015 | 0.015 | 0.015 |
| output machine /year | 22.500.000 env/year | 0.00 | 1.125.000.000,00 | 4.500.000.000,00 | 22.500.000.000,00 | 33.750.000.000,00 |
| % of market | 450 billion items (UPU) | 0,00% | 0,25% | 1,00% | 5,00% | 7,50% |

# Exhibit G

Meetings in NY

| Date | Person | Organization | Purpose |
|---|---|---|---|
| **2004** | | | |
| Nov 9/10, 2004 | Hersch Reich, Dirk Salens, Jan Raesschart, Moty Strobel | MegaSpirea | Interview |
| Dec 21, 2004 | Hersch Reich | MegaSpirea | Interview |
| **2005** | | | |
| Feb. 16, 2005 | Hersch Reich, Yehuda Berzon | Potential investor, MegaSpirea | |
| March 3, 2005 | Hersch Reich, Barry Pomerantz | MegaSpirea, Potential Investor | Raise $ |
| March 14, 2005 | Hersch Reich | MegaSpirea | Raise $ |
| March 14, 2005 | Barry Pomerantz, Robert Rubin, Hersch Reich | Potential investors, MegaSpirea | |
| March 14, 2005 | Ya'acov Prager | Broker | |
| March 15, 2005 | Hersch Reich | MegaSpirea | Raise $ |
| March 16, 2005 | Jacob Weinreb, Hersch Reich | Potential investor | |
| March 16, 2005 | Hersch Reich | MegaSpirea | |
| March 30, 2005 | Joseph Hecht, Hersch Reich | Citilink Ventures International LLC | |
| March 31, 2005 | Mitch Kirschner, Hersh Reich | Potential investor, MegaSpirea | |
| April 18, 2005 | Ezra Berkowitz | Investor | Invested $ |
| April 18, 2005 | Gladys Chao | UBS | |
| April 18, 2005 | Hersch Reich | MegaSpirea | |
| April 18, 2005 | Dirk Salens | MegaSpirea | |
| April 18, 2005 | Hersh Reich, Moty Strobel, Dirk Salens | MegaSpirea | |
| April 18, 2005 | Gladys Chao, Dirk Salens, Moty Strobel | UBS, MegaSpirea | Raise $ |
| April 18, 2005 | Charles Noonan, Paul Austin, Dirk Salens | SDA Enterprises, MegaSpirea | Raise $ |
| August 4, 2005 | Samuel Kestenbaum | MegaSpirea | |
| August 4, 2005 | Hersch Reich | MegaSpirea | |
| August 4, 2005 | Irwin Gross | Potential Investor | Raise $ |
| August 4, 2005 | Prof. Frank Romano | Rochester Institute of technology | Advice |
| August 10, 2005 | Henry Leibowitz | Fried Frank | Legal |
| November 16, 2005 | Hersch Reich | MegaSpirea | |
| November 16, 2005 | Hersch Reich, Claire Woodman, Naftalie Siegar, Chaim/A... | Investors, MegaSpirea | Raise $ |
| **2006** | | | |
| January 3, 2006 | Andrew Chao | | |
| January 3, 2006 | Hersch Reich, Mendell Klein | | |
| January 3, 2006 | Hersch Reich, Mendell Klein, Andrew Chao | | Interview C |
| January 3, 2006 | Dirk, Claire, Andy Chao | | Interview C |
| March 28, 2006 | Dirk Salens, Claire Woodman | | |

| Date | Names | Notes |
|---|---|---|
| April 26, 2006 | Hersch Reich | MegaSpirea |
| April 26, 2006 | Isaac Wolf | |
| April 26, 2006 | Gary Katz, Robert Sales, Isaac Wolf | Delaware Street Capital |
| April 26, 2006 | Brian McDonald, Isaac Wolf | Houlihan Lokey Howard & Zukin Raise $ |
| May 9, 2006 | David Sable, Clare Woodman, Isaac Wolf | PR |
| May 9, 2006 | Brian McDonald, Thomas Dippel, Scott Sergeant, Dirk Sab Houlihan Lokey Howard & Zukin Raise $ | |
| May 9, 2006 | Claire Woodman, Isaac Wolf | |
| May 10, 2006 | Isaac Wolf | |
| May 10, 2006 | Gary Katz | Delaware Street Capital |
| May 10, 2006 | Gary Katz, Isaac Wolf | Delaware Street Capital |
| May 10, 2006 | Brooks Schaden, Ami Aharon,Isaac Wolf | Merrill Lynch |
| May 30, 2006 | Michael Levy, Isaac Wolf | |
| May 30, 2006 | J. Francis Lavelle, Isaac Wolf | Houlihan Lokey Howard & Zukin Investment |
| May 30, 2006 | Mark Rubin, Isaac Wolf | Chanin Capital Partners |
| May 31, 2006 | Michael Levy, Isaac Wolf | Paragon Capital Partners | Raise $ |
| May 31, 2006 | C. Scott Shed, Robert Samaan, Avi Elishis, Isaac Wolf, Ka Jeffries & Company | Raise $ |
| May 31, 2006 | Karl Schumacher, Claire Woodman | MegaSpirea |
| May 31, 2006 | Isaac Wolf | MegaSpirea |
| July 12, 2006 | Isaac Wolf | MegaSpirea |
| July 12, 2006 | Dirk Salens, Isaac Wolf | MegaSpirea |
| July 13, 2006 | Brian McDonald, Isaac Wolf | Houlihan Lokey Howard & Zukin Raise $ |
| July 13, 2006 | Isaac Wolf | MegaSpirea |
| July 13, 2006 | Mark Rubin, Isaac Wolf | Chanin Capital Partners |
| July 17, 2006 | Hersch Reich, Claire Woodman | MegaSpirea | Manageme |
| July 24, 2006 | Isaac Wolf | MegaSpirea |
| July 24, 2006 | Hersch Reich, Isaac Wolf, Dirk Salens | MegaSpirea | Manageme |
| July 25, 2006 | Isaac Wolf | MegaSpirea |
| July 25, 2006 | Hersch Reich, Dirk Salens, Isaac Wolf, Gladys Chao | UBS, MegaSpirea | Manageme |
| August 6, 2006 | Hersch Reich, Mendel Klein, Isaac Wolf | MegaSpirea |
| Augst 6, 2006 | Isaac Wolf | MegaSpirea |
| August 7, 2006 | Isaac Wolf | MegaSpirea |
| August 7, 2006 | Hersch Reich, Isaac Wolf, Mendell Klein | MegaSpirea |
| August 24, 2006 | Frank Romano, Isaac Wolf, Hersch Reich, Mendell Klein | Rochester Institute of Technolog Advice |
| August 24, 2006 | Isaac Wolf | MegaSpirea |
| August 24, 2006 | Jack Avital, Isaac Wolf | Jack Vital Inc., MegaSpirea | MOU Mexi |
| August 24, 2006 | Brian McDonald, Isaac Wolf | Houlihan Lokey Howard & Zukin Investment |

| August 24, 2006 | Meyer Koplow, Isaac Wolf | Wachtall Lipton, MegaSpirea    Legal |
| August 28, 2006 | Isaac Wolf, Ira Goldstein, IDT officials | IDT corporate offices in Newark, NJ |
| August 28, 2006 | Isaac Wolf, Yitzchak Teshuva | MegaSpirea |
| August 28, 2006 | Isaac Wolf | MegaSpirea |
| August 28, 2006 | Mark Rubin, Isaac Wolf | Chanin Capital Partners |
| August 29, 2006 | Erwin Gruss, Isaac Wolf | Potential investor, MegaSpirea    Raise $ |
| August 29, 2006 | Isaac Wolf | MegaSpirea |
| October 16, 2006 | Isaac Wolf | MegaSpirea |
| October 16, 2006 | Phlipp Steinman, Colin Christie, Marcel Beeler, Hersch Re | UBS Investment Bank |
| October 16, 2006 | Hersch Reich, Isaac Wolf | MegaSpirea |
| October 16, 2006 | Isaac Wolf | MegaSpirea |
| October 16, 2006 | Marcel Beeler, Hersch Reich, Isaac Wolf, Dirk Salens | UBS Investment Bank, MegaSpirea |
| October 17, 2006 | Mark Rubin, Isaac Wolf | Chanin Capital Partners |
| October 17, 2006 | Brian Mcdonald, Isaac Wolf | Houlihan Lokey Howard & Zukin Investment |
| October 17, 2006 | Isaac Wolf | MegaSpirea |

**Other meetings in NYC which I don't have the dates recorded inlcude:**

Harold Kaufman, Hersch Reich in Brooklyn
Harold Kaufman, Isaac Wolf in Brooklyn
Samuel Kestenbaum and potential investors in Williamsburg
Abraham Mandel in Manhattan
Hersch Reich and Saul Richter in Mahattan

**Place**

Hilton Hotel, 1335 Avenue of the Americas, room 3747
Prime Grill Restaurant, 60 East 49 Street

Hilton Hotel, 1335 Avenue of the Americas
Sheraton Hotel
Hilton Hotel, 1335 Avenue of the Americas
276 Riverside Drive
Hilton Hotel, 1335 Avenue of the Americas
Hilton Hotel, 1335 Avenue of the Americas
Hilton Hotel, 1335 Avenue of the Americas
Hilton Hotel, 1335 Avenue of the Americas

UBS
Solo Restaurant, 560 Madison Ave.

West 72 Street
Rochester, NY
One New York Plaza
Hilton Hotel, 1335 Avenue of the Americas
Prime Grill Restaurant, 60 East 49 Street

210 West 90 Street
Talia's Steak House on Amsterdam Avenue
Talia's Steak House on Amsterdam Avenue
JFK Airport

Newark Airport

1370 Avenue of the Americas, 25th Floor
245 Park Avenue, 20th Floor

245 Park Avenue, 20th Floor

1370 Avenue of the Americas, 25th Floor
1370 Avenue of the Americas, 25th Floor
4 World Financial Center, 11th Floor

245 Park Avenue, 20th Floor
330 Madison Ave., 11th Floor
450 Park Avenue, Suite 2500
520 Madison Avenue

245 Park Avenue, 20th Floor

330 Madison Ave., 11th Floor
JFK Airport

Hilton Hotel, 1335 Avenue of the Americas

Hilton Hotel, 1335 Avenue of the Americas
Avenue Plaza Hotel, Brooklyn

Rochester, NY

Flatbush, Brooklyn
245 Park Avenue, 20th Floor

330 Madison Ave., 11th Floor
Williamsburg, Brooklyn

299 Park Avenue

Prime Grill Restaurant, 60 East 49 Street
330 Madison Ave., 11th Floor
245 Park Avenue, 20th Floor

# Exhibit H

**From:** Frank Romano [fxrppr@rit.edu]
**Sent:** יום שלישי 02 אוגוסט 2005 14:07
**To:** herzberg_jordan@yahoo.com
**Subject:** RE: Thursday meeting

**Attachments:** Frank2.jpg



Frank2.jpg (557 KB)

                Jordan

I will meet you at the airport.

Here is my picture.

Frank


-----Original Message-----
From: Jordan Herzberg [mailto:herzberg_jordan@yahoo.com]
Sent: Tue 8/2/2005 7:49 AM
To: Frank Romano
Cc: Hersch Reich
Subject: FW: Thursday meeting


Frank,

Hersch Reich and I are planning to land Thursday in Rochester at 14:40 in order to
meet with you.  I will let you know more details as they become available.

I look forward to meeting with you.

Jordan Herzberg

917 865 4100

Frank Romano
Fawcett Professor
School of Print Media
College of Imaging Arts & Sciences
Rochester Institute of Technology

April 9, 2004

To Whom It May Concern

Re: U.S. Patent 5,971,260, European patent EU 0873.263.31
Continuous strip of detachably interconnected folded products *The invention relates to a continuous strip of detachable consecutive interconnected products manufactured by folding, such as envelopes and the like, and to a process for manufacturing the said strip, two of those consecutive products being interconnected through a joint which is not part of the products themselves and links up detachably, through successive lines of demarcation, with each of those two consecutive products in such a way that, on removing this joint, the said two consecutive products are entirely separated.*

The patent described above and the draft business model are extremely interesting.

There is a significant potential in the U.S. market for the automation of direct marketing and postal-based correspondence, beyond what is being done today.

My personal opinion is that this patent and the technology that will implement it will have an impact on mailed communication used for promotion and personal communication and create new revenue streams for users and the patent holders.

Sincerely,

*Frank Romano*

Frank Romano

# **Exhibit I**

**From:**     Dirk Salens [dsa@SOFADI.BE]
**Sent:**     יום שלישי 15 מרץ 2005 11:35
**To:**       Jordan Herzberg
**Subject:**  RE: Update from NYC

Thanks for the update. I look forward to hear about their offer.
Some info:
- Frank Romano put me into contact with David Pesko, one of the toppeople of CAPV
(consulting firm with high reputation in our industry). I have a call with David this
afternoon. CAPV and David have an enormous network.
- the third patent has been granted;
- Colmar will be in contact with Printsoft (software for hybrid mail). If we could
combine our device with this soft ...
Dirk


-----Oorspronkelijk bericht-----
Van: Jordan Herzberg [mailto:jordan@megaspirea.com]
Verzonden: dinsdag 15 maart 2005 0:38
Aan: dirk.salens@biz.tiscali.be; 'Dirk Salens'; Dirk Salens
CC: luc@megaspirea.com
Onderwerp: Update from NYC


We had a meeting with Bob Rubin and Barry Pomerantz this afternoon.  We are convinced
that they will make an offer by Thursday.  We have more meetings set up for Tuesday.

Hersch passes on his regards.

Jordan

1

**From:** Mendel Klein [mklein@pandora.be]
**Sent:** 14:05 2005 אוגוסט 26 יום שישי
**To:** Jordan Herzberg
**Subject:** Schwartz...

After I talked with him about the 3 mil investment, Here's a list of the documents he needs.

In addition to what he wrote below, he needs:

1. Articles of incorporation.
2. Company bylaws (we sent it to him, but it needs to be translated, more on this in the next mail).
3. Shareholders agreement (I was in contact with Izhakoff re this, and he told me that we should ask THEM to say what they want, as it's the minority party who needs an agreement.
4. A term sheet. (We'll try to make it 3 million euro for 3 million shares, payble within 30 days).
5. Shareholders list. (I think it's ok if we give him the 3 principles -Hubert, Dirk and Foxgloves. Because foxgloves contains all the others inside).

----- Original Message -----
**From:** DovidSchwartz@aol.com
**To:** hersch@megaspirea.com
**Cc:** hrmfglobel@msn.com ; mklein@pandora.be
**Sent:** Friday, August 19, 2005 5:25 PM
**Subject:** Re: Documents needed...

Thank you very much. Additionally I will need;
#1 Share holders agreement
#2 What type of corporation, where is the company domiciled
#3 Who is you transfer or escrow agent
#4 History of the funding of the company with timeline
#5 Map of how the sale/transaction will work
#6 Relevant laws of the countries where the business are located.
Looking Forward,

Dovid Schwartz
1011 Ocean Parkway
Brooklyn N.Y. 11230
917-439-6960
fax# 718-228-4800
dovidschwartz@aol.com

# MegaSpirea Spa Business Plan

### October 8, 2005

Eric Gelb, MBA & CPA
T: 914 234 5622
C: 914 260 1027 (24/7)
F: 720 294 3202 (24/7)

Mail: PO Box 758
Armonk, NY 10504-0758 USA

Street Address: 11 Franklin Avenue
Hewlett, NY 11557 USA

## Notes/Comments:

1. Since we have not had the opportunity to meet or hold any conference calls, I did not receive any direct feedback or insight; so I have completed this work largely independently.

2. My work custom is to engender close working relationships with all my clients and to foster a spirit of cooperation, open communication and interaction. Please give me all thoughts, insights, and directions so we can make this an outstanding product that helps you realize your business goals and objectives.

3. I drew knowledge and information for this business plan from your web Site, your March 2005 business plan, the UPU report, the PwC report and general knowledge.

4. In the text, you will find a number of brackets [  ] that contain a note or a question from me. Please address these in the text or in writing or when we speak.

5. I would like to discuss the intended audience for this business plan. I have worked to capture the style and direction of your earlier Business Plan and have done my best to keep this theme/style consistent and expand. Let's discuss.

6. Add any additional 'Strengths' you have considered or think of based on my write-up

7. In the 'Weaknesses' section I have listed all risks/weaknesses I could think of. Please add more if any, and also, please add or let's discuss offsets/mitigants to these weaknesses. In other words, how have you addressed these issues and considerations.

8. One important, open point, is the inclusion of financial information, projections, budgets, etc. But this depends on what and how much you want to disclose here and your intended audience.

# Exhibit J

**Belgium Meetings**

| | 2005 Person | **Purpose** |
|---|---|---|
| May 17, 2005 | | |
| May 18, 2005 | Luc Mertens, Prof. Timmermans | Patent |
| October 10, 2005 | Luc Mertens, Hersch Reich, Mendel Klein | Patent |
| December 19, 2005 | Luc Mertens, Didi Melchior | Patent |

| | 2006 | |
|---|---|---|
| Jan. 11, 2006 | Dirk Salens, Hersch Reich, Clare Woodman | Meeting |
| March 26, 2006 | Hersh Reich, Isaac Wolf | Shares |
| May 11, 2006 | Mendell Klein | Meeting |
| May 23, 2006 | Mendell Klein, Dirk Salens, Jan Rasschaert | Strategy |

# Exhibit K

**Israel Meetings**

### 2005

| | |
|---|---|
| March 6, 2005 | Hersch Reich |
| March 7, 2005 | Hersch Reich, Rentgen |
| March 8, 2005 | Hersch Reich, Ephraim Kunda, Moty Strobel |
| March 8, 2005 | Hersch Reich, Jacob Harkavy |
| March 8, 2005 | Hersch Reich, Roni Milo |
| March 20, 2005 | Hersch Reich |
| May 12, 2005 | Hersch Reich |
| May 31, 2005 | Hersch Reich, Asher Leshem |
| September 8, 2005 | Hersch Reich, Didi Melchior |
| September 15, 2005 | Hersch Reich, Didi Melchior, Dan Lapidot, |
| September 19, 2005 | Hersch Reich, Didi Melchior |
| September 26, 2005 | Hersch Reich |
| September 28, 2005 | Hersch Reich, Dirk Sakens, Jan Rasschaert, Didi Melchior |
| September 28, 2005 | Hersch Reich |
| September 29, 2005 | Hersch Reich, Dirk Salens, Moty Strobel, Be'eri Printing |
| October 6, 2005 | Hersch Reich |
| October 20, 2005 | Hersch Reich, Mendell Klein |
| October 22, 2005 | Didi Melchior |
| October 27, 2005 | Hersch Reich |
| October 30, 2005 | Hersch Reich, Didi Melchior |
| November 22, 2005 | Hersch Reich, Clare Woodman, Dirk Salens, |
| November 23, 2005 | Jan Rasschaert, Didi Melchior |
| November 24, 2005 | Hersch Reich, Jan Rasschaert |

### 2006

| | |
|---|---|
| February 2, 2006 | Mendell Klein |
| March 7, 2006 | Mendell Klein |
| May 2, 2006 | Hersch Reich |
| May 14, 2006 | Didi Melchior, Dan Lapidot |
| May 17, 2006 | Hersch Reich, Didi Melchior |
| May 24, 2006 | Hersch Reich |
| May 25, 2006 | Hersch Reich, Jacob Dallal |
| May 29, 2006 | Hersch Reich, Didi Melchior |
| July 5, 2006 | Issac Wolf, Hersh Reich, Didi Melchior, Mendel Klein |
| July 5, 2006 | Sanford Colb |
| July 9, 2006 | Sanford Colb |
| July 11, 2006 | Hersch Reich, Didi Melchior, Gidon Fisher |
| August 20, 2006 | Sanford Colb |
| October 4, 2006 | Hersch Reich, Sanford Colb, Isaac Wolf, Didi Melchior |
| October 4, 2006 | Hersch Reich, Isaac Wolf |
| November 30, 2006 | Isaac Wolf, Jacob Kedmi |
| December 24, 2006 | Sanford Colb |

### 2007

| | |
|---|---|
| January 7, 2007 | Hersch Reich, Mendell Klein, Didi Melchior |
| January 11, 2007 | Didi Melchior |

# Exhibit L

Mega Spira Report

| RECEIPT | AMMOUNT | DEP. | ITINERARY | DATE | TICKET NO. | INVOICE# | PAID | NAME |
|---|---|---|---|---|---|---|---|---|
| | $1,520.40 | BUSINESS | TLV ZRH TLV | 08.01.06 | 249269 | 32885 | 1 | melchior yedidya |
| | $1,591.44 | BUSINESS | TLV LON TLV | 09.02.06 | 250267 | 33280 | 1 | melchior yedidya |
| | $1,965.94 | BUSINESS | TLV ZRH TLV | 02.04.06 | 252048 | 34479 | 1 | melchior yedidya |
| | $773.80 | BUSINESS | TLV IST TLV | 19.07.06 | 256168 | 38000 | 1 | melchior yedidya |
| | $633.48 | | BRU LON BRU | 22.01.06 | 249691 | 32865 | 1 | melchior yedidya |
| | $2,842.68 | Tourist | BRV TLV BRU | 06.03.06 | 251123 | 33794 | 1 | klein mendel |
| | $1,750.64 | BUSINESS | TLV LON TLV | 04.04.06 | 252174 | 34271 | 1 | klein mendel+REICH IE |
| | $4,359.36 | BUSINESS | TLV LON TYO LON TLV | 22.01.06 | 249659 | 32864 | 1 | klein mendel |
| | $1,287.36 | BUSINESS | TLV ZRH TLV | 01.02.06 | 249994 | 33104 | 1 | strobel mordcha |
| | $1,286.76 | BUSINESS | TLV ZRH TLV | 06.02.06 | 250131 | 33178 | 1 | strobel mordcha |
| | $3,997.72 | BUSINESS | TLV ZRH NYC ZRH TLV | 08.02.06 | 250228 | 33253 | 1 | strobel mordcha |
| | $3,691.06 | BUSINESS | TLV ZRH TLV | 15.02.06 | 250474 | 33392 | 1 | strobel mordcha |
| | $4,071.66 | BUSINESS | TLV ZRH NYC TLV | 19.02.06 | 250570 | 33440 | 1 | strobel mordcha |
| | $2,096.22 | BUSINESS | TLV ZRH NYC TLV | 08.03.06 | 251159 | 33786 | 1 | strobel mordcha |
| | $4,555.06 | BUSINESS | TLV ZRH TLV | 09.03.06 | 251159 | 33826 | 1 | strobel mordcha |
| | $4,384.18 | BUSINESS | TLV NYC TLV | 20.03.06 | 251622 | 33984 | 1 | strobel mordcha |
| | $13,076.32 | BUSINESS | NYC TLV NYC | 27.03.06 | 251834 | 34095 | 1 | strobel mordcha |
| | $4,171.68 | BUSINESS | NYC TLV NYC | 11.04.06 | 252219 | 34454 | 1 | strobel mordcha |
| | $4,171.68 | BUSINESS | TLV NYC TLV NYC | 03.05.06 | 253049 | 34941 | 1 | strobel mordcha |
| | $2,087.94 | BUSINESS | TLV BUD TLV | 11.05.06 | 253357 | 34942 | 1 | strobel mordcha |
| | $3,230.84 | BUSINESS | BRU ZRH NYC | 22.05.06 | 253778 | 35595 | 1 | strobel mordcha |
| | $4,171.66 | BUSINESS | NYC TLV NYC | 24.05.06 | 253877 | 35596 | 1 | strobel mordcha |
| | $5,432.32 | BUSINESS | TLS ZRH NYC ZRH TLV | 14.06.06 | 254814 | 35593 | 1 | strobel mordcha |
| | $4,944.00 | BUSINESS | TLV NYC TLV | 11.06.06 | 254656 | 35594 | 1 | strobel mordcha |
| | $874.00 | Tourist | TLV NYC TLV | 12.06.06 | 255948 | 39184 | 1 | strobel mordcha |
| | $9,303.50 | BUSINESS | MEZUDAT DAVID | 13.06.06 | 258583 | 39181 | 1 | strobel mordcha |
| | $5,575.00 | BUSINESS | ZRH NYC ZRH+TLS ZRH TLV | 19.07.06 | 256198 | 39182 | 1 | strobel mordcha |
| | $4,869.60 | BUSINESS | TLV NYC TLV | 23.07.06 | 256289 | 39178 | 1 | strobel mordcha |
| | $2,973.00 | BUSINESS | TLV YYZ YUL | 07.09.06 | 257801 | 38224 | 1 | strobel mordcha |
| | $6,663.00 | BUSINESS | ZRH TLV ZRH | 21.06.06 | 255142 | 39166 | 1 | wolf isaac |
| | $1,513.40 | BUSINESS | NYC ZRH NYC | 22.08.06 | 257257 | 39172 | 1 | wolf isaac |
| | | | TLV ZRH TLV | 25.10.06 | 259210 | 39272 | 1 | wolf isaac |
| | $2,301.92 | BUSINESS | LON NYC LON | 06.04.06 | 252282 | 34468 | 1 | kestenbaum shmuel |

| Amount | Class | Route | Date | | | | Name |
|---|---|---|---|---|---|---|---|
| $1,434.76 | BUSINESS | BRU TLV BRU | 15.1.06 | 249491 | 32855 | 1 | reich hersch |
| $1,494.90 | BUSINESS | TLV PARIS BRU TLV | 17.01.06 | 249562 | 32857 | 1 | reich hersch |
| $899.34 | BUSINESS | TLV BRU TLV | 13.02.06 | 250370 | 33333 | 1 | reich hersch |
| $2,721.46 | BUSINESS | ZRH TLV ZRH | 15.02.06 | 250418 | 33390 | 1 | reich hersch |
| $351.70 | e | ZRH BRU ZRH | 17.02.06 | 250542 | 33443 | 1 | reich hersch |
| $1,469.86 | BUSINESS | BRU ZRH TLV BRU ZRH | 05.03.06 | 251115 | 33797 | 1 | reich hersch |
| $4,035.76 | BUSINESS | TLV ZRH NYC ZRH TLV | 08.03.06 | 251158 | 33791 | 1 | reich hersch |
| $3,652.14 | BUSINESS | BRU ZRH TLV ZRH BRU | 14.03.06 | 251160 | 33787 | 1 | reich hersch |
| $1,901.14 | BUSINESS | BRU ZRH TLV ZRH BRU | 19.03.06 | 251567 | 33950 | 1 | reich hersch |
| $2,704.18 | BUSINESS | ZRH TLV ZRH | 02.04.06 | 251722 | 34973 | 1 | reich hersch |
| $1,491.40 | BUSINESS | BRU ZRH TLV ZRH BRU | 02.04.06 | 252084 | 34478 | 1 | reich hersch |
| $3,361.28 | BUSINESS | TLV LON TLV | 04.04.06 | 252173 | 34267 | 1 | reich hersch |
| $1,307.44 | BUSINESS | TLV BRU TLV | 01.06.06 | 254244 | 35566 | 1 | reich hersch+moli |
| $1,552.62 | BUSINESS | TLV BRU TLV | 01.06.06 | 254288 | 35587 | 1 | reich hersch |
| $230.49 | BUSINESS | LAX LAS | 05.06.06 | 254932 | 35589 | 1 | reich hersch |
| $1,799.78 | BUSINESS | LAS HOU TLV | 07.06.06 | 254609 | 35590 | 1 | reich hersch |
| $5,232.16 | BUSINESS | BRU ZRH NYC ZRH BRU | 11.06.06 | 254657 | 35591 | 1 | reich hersch |
| $3,375.30 | BUSINESS | TLV IST TLV | 06.07.06 | 255788 | 39185 | 1 | reich hersch |
| $4,040.10 | BUSINESS | YUL NYC YUL | 24.07.06 | 256353 | 39176 | 1 | hersch+Moli+KESTENB |
| $4,119.00 | BUSINESS | TLV YYZ NYC TLV | 07.09.06 | 257802 | 39167 | 1 | reich hersch |
| $3,272.30 | BUSINESS | NYC YYZ NYC | 07.09.06 | 257842 | 39166 | 1 | hersch+Moli+KESTENE |
| $6,206.44 | | | 30.8.06 | 255142 | 36191 | 1 | wolf isaac |
| **$168,521.21** | | | | | | | |
| $1,396.16 | BUSINESS | liv zrh lon zrh bru | 06.02.06 | 250180 | 33200 | 2 | reich benzion |
| $678.80 | Tourist | TLV BRU ZRH TLV | 02.05.06 | 240529 | 28876 | 2 | strobel mordcha |
| $762.10 | Tourist | ZRH BRU ZRH | 20.06.05 | 242702 | 28875 | 2 | strobel mordcha |
| $915.40 | BUSINESS | ZRH TLV ZRH | 30.06.05 | 243142 | 28880 | 2 | strobel mordcha |
| $1,201.10 | BUSINESS | TLV ZRH TLV | 25.07.05 | 244116 | 30779 | 2 | herzberg jordan |
| $1,462.90 | BUSINESS | tlv zrh bru tlv | 27.05.05 | 241678 | 28884 | 2 | herzberg jordan |
| $1,463.00 | BUSINESS | tlv bru tlv | 20.05.05 | 241348 | 28890 | 2 | reich hersch |
| $1,463.40 | BUSINESS | tlv zrh bru tlv | 12.05.05 | 241006 | 28891 | 2 | eich hersch+klvger aron |
| $1,532.90 | BUSINESS | tlv zrh bru tlv | 28.07.05 | 241913 | 28883 | 2 | reich hersch |
| $1,565.10 | BUSINESS | TLV ZRH TLV | 30.06.05 | 243092 | 30777 | 2 | herzberg jordan |
| $1,571.52 | BUSINESS | BRU LON LON TYO | 22.01.06 | 249160 | 33572 | 2 | salens dirk |
| $1,571.88 | BUSINESS | TLV LON TLV | 16.02.06 | 250506 | 33444 | 2 | salens dirk |
| $1,565.80 | BUSINESS | TLV BRU TLV | 30.09.06 | 246050 | 31135 | 2 | salens dirk |
| $1,671.40 | BUSINESS | tlv lon tlv | 24.05.05 | 241506 | 28885 | 2 | reich hersch |

| Amount | Class | Route | Date | | | Count | Name |
|---|---|---|---|---|---|---|---|
| $1,683.40 | BUSINESS | TLV PAR LEEDS PAR TLV | 22.06.05 | 242779 | 30784 | 2 | herzberg jordan |
| $2,044.40 | BUSINESS | BRU ZRH TLV ZRH BRU | 22.11.05 | 248015 | 31601 | 2 | rasschaert jan |
| $2,516.45 | Tourist | NNYC ZRH NYC | 11.04.05 | 239334 | 30771 | 2 | kestenbaum samuel |
| $2,669.88 | BUSINESS | LON NYC LON | 12.01.06 | 249417 | 32853 | 2 | herzberg jordan |
| $2,741.62 | Tourist+business | ZRH TLV ZRH TLV LON | 15.02.06 | 250518 | 33409 | 2 | sykes joseph |
| $2,829.94 | BUSINESS | ZRH TLV ZRH | 15.02.06 | 250467 | 33366 | 2 | salens dirk |
| $2,902.10 | BUSINESS | ZRH TLV ZRH | 04.05.05 | 240702 | 28877 | 2 | strobel mordcha |
| $3,045.70 | BUSINESS | BRU NYC BRU | 30.11.06 | 248203 | 31783 | 2 | salens dirk |
| $3,047.46 | BUSINESS | BRU GVA NYC ZRH BRU | 20.06.05 | 242697 | 28878 | 2 | strobel mordcha |
| $3,053.70 | BUSINESS | TLV ZRH NYC ZRH TLV | 07.11.05 | 247490 | 31560 | 2 | wolf isaac |
| $3,220.80 | BUSINESS | TLV ZRH BRU | 15.11.06 | 246592 | 31134 | 2 | salens dirk |
| $3,255.55 | BUSINESS | bru NYC bru | 27.06.05 | 242872 | 28881 | 2 | reich hersch |
| $3,345.50 | BUSINESS | bru fra tlv fra bru | 28.07.05 | 240710 | 28893 | 2 | reich hersch |
| $3,374.15 | w | CHI LON CHI LON PAR LON | 13.09.06 | 245991 | 31199 | 2 | freyburger hubert |
| $3,646.82 | BUSINESS | BRU TYO LON BRU | 22.01.06 | 249180 | 32480 | 2 | salens dirk |
| $3,728.15 | BUSINESS | TLV NYC TLV | 14.03.05 | 238742 | 30780 | 2 | herzberg jordan |
| $3,838.65 | BUSINESS | NYC TLV NYC | 22.06.06 | 242048 | 28879 | 2 | strobel mordcha |
| $4,003.70 | BUSINESS | TLV NYC TLV | 02.11.05 | 247342 | 30968 | 2 | herzberg jordan |
| $4,148.35 | BUSINESS | BRU LON NYC LON BRU | 17.04.06 | 240164 | 30785 | 2 | salens dirk |
| $4,154.95 | BUSINESS | TLV NYC LAX TLV | 30.03.05 | 239457 | 30761 | 2 | herzberg jordan |
| $4,185.64 | BUSINESS | BRU ZRH NYC ZRH BRU | 08.03.06 | 251185 | 33785 | 2 | salens dirk |
| $4,371.95 | BUSINESS | CHI ZRH BRU | 15.09.06 | 245995 | 31138 | 2 | salens dirk |
| $4,715.75 | BUSINESS | TLV NYC TLV | 01.08.05 | 244423 | 30975 | 2 | herzberg jordan |
| $4,863.45 | BUSINESS | bru gva NYC zrh bru | 20.06.05 | 242701 | 28882 | 2 | reich hersch |
| $5,292.90 | BUSINESS | ZRH NYC ZRH | 26.07.05 | 244126 | 31191 | 2 | kaufman harold |
| $6,795.45 | BUSINESS | NYC ZRH NYC | 11.04.05 | 239937 | 30766 | 2 | rotenberg kalman |
| $7,178.30 | BUSINESS | NYC ZRH NYC | 09.11.05 | 247621 | 31588 | 2 | kestenbaum shmuel |
| $7,178.30 | BUSINESS | NYC ZRH NYC | 09.11.05 | 247621 | 31589 | 2 | sigler abraham |
| $7,394.90 | BUSINESS | NYC ZRH NYC | 31.01.06 | 249975 | 33102 | 2 | gelb eric |
| $8,172.56 | BUSINESS | NYC ZRH NYC | 14.02.06 | 250437 | 33384 | 2 | chow gladys |
| $1,748.30 | | | 02.03.06 | 249312 | 32844 | 2 | elchadad yakov |
| $1,748.30 | | | 02.03.06 | 249312 | 32845 | 2 | elchadad yakov |
| $1,459.20 | | | 02.03.06 | 249562 | 32858 | 2 | fedida natan |
| $121.00 | | | 02.03.06 | 249562 | 32861 | 2 | fedida natan |
| $142,231.92 | | | | | | | |
| $9,049.40 | FIRST | NYC ZRH NYC | 10.10.05 | 246733 | 31130 | 3 | woodman clare |

3

| Amount | Class | Route | Date | | | | Name |
|---|---|---|---|---|---|---|---|
| $3,660.60 | BUSINESS | NYC BRU | 05.11.05 | 247423 | 31132 | 3 | woodman clare |
| $3,550.30 | BUSINESS | ZRH NYC ZRH | 10.11.05 | 247667 | 31592 | 3 | woodman clare |
| $3,736.70 | BUSINESS | NYC TLV NYC | 20.11.05 | 247968 | 31599 | 3 | woodman clare |
| $5,782.40 | FIRST | BSL LON NYC LON BSL | 08.12.05 | 248536 | 32112 | 3 | woodman clare |
| $3,924.20 | Y | NYC LON BSL | 04.12.05 | 248357 | 32117 | 3 | woodman clare |
| $7,394.30 | BUSINESS | NYC ZRH NYC | 05.02.06 | 250107 | 33155 | 3 | woodman clare |
| $7,393.80 | BUSINESS | NYC ZRH NYC | 27.02.06 | 250850 | 33614 | 3 | woodman clare |
| $6,467.84 | Y | NYC AMS BRU AMS NYC | 07.03.06 | 251117 | 33792 | 3 | woodman clare |
| $50,959.54 | | | | | | | |
| $1,575.34 | BUSINESS | TLV ZRH BRU ZRH TLV | 09.01.06 | 249312 | 32849 | 5 | uri yaacov |
| $3,196.40 | Tourist | NYC BRU TLV | 06.04.06 | 252287 | 38426 | 5 | wind yitzhak |
| $1,107.15 | Tourist | TLV BRU NYC BRU TLV | 20.06.06 | 242704 | 31184 | 5 | d benzion+ DECGER D / weinberg itzhakmaity |
| $50.00 | | CHANGE | 09.01.06 | 249312 | 32639 | | uri yaacov |
| $4,239.72 | BUSINESS | ZRH TLV ZRH  ZRH BRU ZRH | 01.03.06 | 250963 | 33800 | 5 | twersky nachum |
| $808.92 | Tourist | TLV BRU TLV | 10.04.06 | 252360 | 34934 | 5 | twersky nachum |
| $1,250.04 | Tourist | zurich BRU LAS *NYC ZRH | 05.06.06 | 254419 | 36204 | 5 | twersky nachum |
| $1,502.40 | Tourist | BRU NYC BRU | 15.06.06 | 254342 | 36195 | 5 | twersky nachum |
| $578.74 | Tourist | TLV NYC TLV | 21.02.06 | 250657 | 33564 | 5 | twersky nachum |
| $50.00 | Tourist | CHANGE | 09.01.06 | 249312 | 32835 | | twersky itzhak |
| $1,525.34 | BUSINESS | TLV ZRH BRU ZRH TLV | 09.01.06 | 249312 | 32833 | | twersky david |
| $1,146.28 | Tourist | YOL YYZ SFO NYC | 14.02.06 | 250345 | 33317 | | teitelbaum zvi |
| $1,250.40 | Tourist | TLV NYC TLV | 11.05.06 | 253111 | 34945 | | teitelbaum zvi |
| $340.80 | Tourist | CHANGE TICKETS | 11.05.06 | 253111 | 36223 | | teitelbaum zvi |
| $1,500.60 | Tourist | NYC DFW NYC | 20.02.06 | 250240 | 33481 | | teitelbaum chaim |
| $5,701.92 | Tourist | TLV YYZ NYC YUL YYZ YTO | 12.02.06 | 250240 | 33279 | | teitelbaum chaim |
| $302.07 | | INSURANCE | 12.02.06 | 250240 | 33343 | | teitelbaum chaim |
| $3,960.15 | Tourist | NYC TLV NYC | 27.09.05 | 246200 | 31144 | | teitelbaum blima |
| $562.90 | Tourist | TLV LON TLV | 26.07.05 | 244167 | 28900 | | teitelbaum aaron |
| $85.00 | | CHAGE TLV LON TLV | 10.08.05 | 244167 | 31192 | | teitelbaum aaron |
| $1,242.10 | | GVA TLV TLV BRU | | 246764 | 31090 | 5 | taub nachum |
| $1,518.00 | business | BRU ZRH TLV ZRH BRU | 14.08.05 | 244829 | 31195 | 5 | taub aron |
| $4,859.26 | BUSINESS | BRU ZRH NYC ZRH BRU | 27.03.06 | 251888 | 34105 | | stroh solomon |
| $4,167.40 | BUSINESS | TLV NYC TLV | 23.02.06 | 250740 | 33561 | | strobel/eitel/oibaum nir |
| $4,613.50 | BUSINESS | TLV NYC TLV | 11.04.06 | 252422 | 33627 | | strobel tekufdl yehud |
| $1,587.28 | Tourist | TLV NYC TLV | 10.05.06 | 253199 | 36226 | | strobel moshie |
| $859.00 | Tourist | TLV NYC TLV | 16.11.06 | 259806 | 39268 | | strobel moshie |

| Amount | Class | Route | Date | | | | Name |
|---|---|---|---|---|---|---|---|
| $1,137.50 | Tourist | TLV ZRH BRO ZRH TLV | 09.01.06 | 249312 | 32841 | | strobel mosthle |
| $1,444.20 | Tourist | TLV BRU TLV BRO ZRH BRU TLV | 30.10.05 | 247125 | 31009 | | strobel moslie |
| $1,742.65 | Tourist | TLV NYC TLV | 06.01.06 | 239745 | 30782 | 5 | strobel moslie |
| $1,694.65 | Tourist | TLV NYC TLV | 18.04.06 | 240167 | 30783 | 5 | strobel mordcha |
| $1,052.80 | Tourist | TLV BRU TLV | 18.07.05 | 244707 | 31006 | 5 | strobel mordcha |
| $1,505.80 | BUSINESS | TLV ZRH TLV | 25.07.05 | 244759 | 31004 | 5 | strobel mordcha |
| $4,225.65 | BUSINESS | TLV ZRH TLV | 03.08.06 | 244407 | 31008 | 5 | strobel mordcha |
| $3,949.65 | BUSINESS | TLV NYC TLV | 08.08.05 | 244608 | 31007 | 5 | strobel mordcha |
| $4,248.70 | BUSINESS | TLV NYC TLV | 16.10.05 | 246734 | 31005 | | strobel mordcha |
| $1,262.90 | BUSINESS | TLV ZRH TLV | 08.11.05 | 247529 | 31581 | 5 | strobel mordcha |
| $345.20 | Tourist | GVA BRU GVA | 17.11.05 | 247869 | 31569 | 5 | strobel mordcha |
| $3,054.10 | BUSINESS | TLV ZRH NYC ZRH TLV | 29.11.05 | 248196 | 31786 | | strobel mordcha |
| $794.20 | Tourist | LON TLV LON | 01.12.06 | 28324 | 31863 | | strobel mordcha |
| $337.91 | Tourist | ZRH LON ZRH | 01.12.06 | 248320 | 32122 | | strobel mordcha |
| $1,293.00 | BUSINESS/TOURI | TLV GVA BRU TLV | 17.11.06 | 247854 | 32125 | 5 | strobel mordcha |
| $1,422.70 | BUSINESS | BRU TLV BRU | 22.12.06 | 248894 | 32467 | | strobel mordcha |
| $4,129.00 | Tourist | NYC TLV NYC TLV NYC | 04.10.06 | 258214 | 39265 | | strobel dirved |
| $1,265.65 | Tourist | NYC TLV NYC | 20.09.05 | 246219 | 31137 | 5 | strobel mordcha |
| $1,518.80 | BUSINESS | TLV BRU TLV | 30.09.05 | 246488 | 31136 | 5 | stark chaim |
| $4,739.46 | BUSINESS | NYC TLV NYC | 09.02.06 | 250302 | 33314 | 5 | stark chaim |
| $2,683.97 | Tourist | TLV NYC TLV NYC TLV | 22.05.06 | 253753 | 36213 | | stark chaim |
| $1,071.65 | Tourist | NYC TLV | 05.09.06 | 253520 | 31142 | 5 | stark chaim |
| $550.00 | | TCHANGE | 09.01.06 | 249312 | 32834 | 5 | spielman avraham |
| $435.44 | Tourist | NYC CHI NYC | 13.09.05 | 245932 | 31140 | 5 | slonim avraham |
| $3,500.65 | BUSINESS | TLV NYC TLV | 19.09.05 | 246105 | 31141 | 5 | schwartz david |
| $694.26 | BUSINESS | TLV BRU | 17.02.06 | 250467 | 33387 | 4 | schwartz david |
| $4,460.56 | BUSINESS | TLV NYC TLV | 09.06.06 | 253208 | 34963 | 4 | salens dirk |
| $4,336.70 | BUSINESS | BRU ZRH NYC ZRH BRU | 21.08.06 | 257158 | 37996 | 4 | salens dirk |
| $4,555.06 | BUSINESS | TLV NYC TLV | 21.03.06 | 251655 | 34019 | | salens dirk |
| $1,262.80 | Tourist | NYC TLV NYC | 10.05.06 | 253356 | 34946 | | rosenbaum meyer |
| $563.60 | Tourist | tlv zrh tlv | 11.08.06 | 244715 | 30999 | 5 | richter moses |
| $924.70 | Tourist | tlv zrh tlv | 24/05/05 | 241521 | 28808 | 5 | reich yesoecher |
| $1,014.40 | Tourist | tlv lon tlv | 29/5/05 | 241762 | 28899 | 5 | reich yehezkel |
| $1,052.80 | Tourist | tlv bro tlv | 18/6/05 | 244708 | 3098 | 5 | reich yehezkel |
| $801.16 | Tourist | tlv nyc tlv | 01/08/05 | 244388 | 30995 | 5 | reich yehezkel |
| $1,608.65 | Tourist | tlv nyc tlv | 29/08/05 | 245906 | 30987 | 5 | reich yehezkel |
| $3,064.70 | BUSINESS | tlv zrh nyc zrh tlv | 31.10.05 | 247146 | 30996 | | reich yehezkel |
| $583.60 | Tourist | tlv zrh tlv | 10.11.05 | 247665 | 31591 | 5 | reich yehezkel |

| Amount | Class | Routing | Date | No. | No. | Flag | Name |
|---|---|---|---|---|---|---|---|
| $3,772.00 | Tourist | bru zrh lax chi zrh bru | | | | | |
| $593.00 | Tourist | bru tlv bru | | | | | |
| $1,025.80 | Tourist | | 14.11.05 | 247721 | 31594 | 5 | reich yehezkel |
| $2,951.00 | BUSINESS | bru zrh tlv zrh bru | 17.11.05 | 247865 | 31598 | 5 | reich yehezkel |
| $952.10 | Tourist | tlv bru tlv | 05.12.05 | 248425 | 32114 | 5 | reich yehezkel |
| $1,137.50 | Tourist | tlv bru tlv (+change) | 04.12.05 | 248365 | 32116 | 5 | reich yehezkel |
| $443.38 | Tourist | tlv zrh bro zrh tlv | 20.12.05 | 248810 | 32470 | 5 | reich yehezkel |
| $778.56 | Tourist | tlv bru tlv | 20.12.05 | 248810 | 32842 | 5 | reich yehezkel |
| $1,031.04 | Tourist | ton tlv ton bru | 09.01.05 | 249312 | 32663 | 5 | reich yehezkel |
| $1,771.06 | Tourist | zrh tlv zrh | 19.01.06 | 249637 | 32867 | | reich yehezkel |
| $2,069.82 | Tourist | tlv nyc tlv | 22.01.06 | 249692 | 33103 | 5 | reich yehezkel |
| $2,115.16 | Tourist | nyc zrh tlv zrh NYC | 01.02.06 | 249904 | 33103 | 5 | reich yehezkel |
| $2,147.00 | Tourist | tlv waw zrh tlv | 20.02.06 | 250572 | 33568 | 5 | reich yehezkel |
| $1,332.34 | BUSINESS | tlv zrh nyc zrh tlv | 22.02.06 | 250769 | 33563 | 5 | reich yehezkel |
| $1,849.36 | Tourist | tlv bru tlv | 21.03.06 | 251680 | 34026 | 5 | reich yehezkel |
| $1,153.06 | Tourist | tlv NYC tlv | 22.02.06 | 252000 | 34483 | 5 | reich yehezkel |
| $4,043.00 | Tourist | tlv bru tlv | 24.04.06 | 252673 | 34535 | 5 | reich yehezkel |
| $1,043.00 | BUSINESS | tlv nyc tlv | 03.05.06 | 253048 | 35582 | 5 | reich yehezkel |
| $4,460.56 | BUSINESS | tlvnyc tlv | 18.05.06 | 253689 | 35583 | 5 | reich yehezkel |
| $2,174.60 | BUSINESS | tlv nyc tlv | 28.05.06 | 254713 | 39592 | 5 | reich yehezkel |
| $1,963.00 | Tourist | tlv zrh tlv | 12.06.06 | 254712 | 39187 | 5 | reich yehezkel |
| $4,052.10 | BUSINESS | tlv nyc tlv | 18.06.06 | 254956 | 36278 | 5 | reich yehezkel |
| $1,613.28 | Tourist | bru tlv bru | 15.06.06 | 257979 | 39174 | 5 | reich yehezkel |
| $2,352.20 | BUSINESS | TLV NYC TLV | 27.09.06 | 255438 | 39330 | 5 | reich yehezkel |
| $1,848.40 | BUSINESS | tlv bru tlv | 20.10.06 | 246958 | 39302 | 5 | reich yehezkel |
| $1,128.42 | BUSINESS | bru zrh tlv bru | 04.07.06 | 256699 | 36184 | 5 | reich nechama +rivka+s |
| $3,508.00 | BUSINESS | LAS NYC | 30.10.06 | 247120 | 31000 | 5 | reich meir |
| $6,000.60 | FIRST | BRU ZRH BRU | 20.10.06 | 248943 | 31000 | | reich mali |
| $3,207.60 | BUSINESS | TLV ZRH TLV ZRH TLV | 15.11.06 | 247795 | 31597 | | reich mali |
| $2,927.00 | BUSINESS | tlv bru tlv | 21.12.05 | 248871 | 32468 | 5 | jch hersch+reich yehezk |
| $9,718.52 | BUSINESS | tlv bru tlv | 13.07.06 | 255988 | 39163 | 5 | reich hersch+moll |
| $3,876.80 | BUSINESS | BRU ZRH NYC ZRH BRU | 29.04.05 | 240436 | 28897 | 5 | reich hersch+moll |
| $1,437.40 | BUSINESS | BRU ZRH TLV ZRH BRU | 06.05.05 | 240713 | 28892 | 5 | reich hersch+kivger aron |
| $5,041.75 | BUSINESS | BRU ZRH TLV ZRH BRU | 27.03.06 | 251867 | 34094 | 5 | reich hersch+kivger aron |
| $1,406.70 | BUSINESS | tlv NYC bru tlv | 21.11.05 | 247940 | 31785 | | reich hersch+isaac wolf |
| $1,820.30 | BUSINESS | tlv bru tlv | 23.11.05 | 248016 | 31600 | | reich hersch+difik salen |
| $5,083.35 | BUSINESS | bru zrh tlv zrh bru | 06.04.05 | 239739 | 30774 | | reich hersch+ |
| $1,895.40 | BUSINESS | bru lon NYC lon / bru zm tlv zrh bru | 15.04.05 | 240096 | 30773 | | reich hersch |
| | | | 14.04.05 | 240046 | 30770 | 5 | reich hersch |
| | | | 17.04.05 | 240165 | 30772 | 5 | reich hersch |
| | | | 28.04.05 | 240437 | 28895 | 5 | reich hersch |

| Amount | Class | Route | Date | Num1 | Num2 | Num3 | | Name |
|---|---|---|---|---|---|---|---|---|
| $4,815.35 | BUSINESS | bru zrh NYC zrh bru | 24.07.05 | 244095 | 30992 | | | reich hersch |
| $808.80 | Tourist | zrh tlv zrh | 26.07.05 | 244760 | 30888 | 5 | | reich hersch |
| $1,435.30 | BUSINESS | tlv bru tlv | 29.07.05 | 244705 | 30890 | 5 | | reich hersch |
| $5,930.85 | BUSINESS | NYC bru NYC | 04.08.05 | 244548 | 30991 | 5 | | reich hersch |
| $4,764.20 | BUSINESS | bru zrh NYC gva bru | 15.08.05 | 244840 | 30987 | 5 | | reich hersch |
| $5,926.25 | BUSINESS | NYC gva bru zrh NYC | 11.09.05 | 244860 | 31446 | 5 | | reich hersch |
| $5,519.95 | BUSINESS | bru zrh chi zrh bru | 11.09.05 | 245466 | 30986 | 5 | | reich hersch |
| $64.96 | BUSINESS | lax-bru zrh chi zrh bru | 11.09.05 | 245466 | 33824 | 5 | | reich hersch |
| $10,229.65 | BUSINESS | chi lon tlv lon bru lon | 13.09.05 | 245988 | 30985 | 5 | | reich hersch |
| $5,997.35 | BUSINESS | nyc tlv nyc yul | 20.09.05 | 246170 | 30984 | 5 | | reich hersch |
| $1,519.00 | BUSINESS | tlv bru tlv | 23.09.05 | 246761 | 30982 | 5 | | reich hersch |
| $3,038.00 | BUSINESS | tlv bru tlv 2 tickets | 30.09.05 | 246423 | 30983 | 5 | | reich hersch |
| $6,162.50 | BUSINESS | nyc bru nyc | 16.10.05 | 246836 | 30993 | 5 | | reich hersch |
| $1,477.70 | BUSINESS | bru zrh tlv zrh bru | 20.10.05 | 246942 | 30979 | 5 | | reich hersch |
| $3,648.70 | BUSINESS | zrh NYC zrh | 31.10.05 | 247202 | 30978 | 5 | | reich hersch |
| $1,193.50 | BUSINESS | zrh bru zrh | 04.11.05 | 247426 | 31578 | 5 | | reich hersch |
| $6,321.00 | BUSINESS/FIRST | bru zrh lax zrh bru | 14.11.05 | 247734 | 31593 | 5 | | reich hersch |
| $204.38 | BUSINESS | LAX-LAS | 14.11.05 | 247760 | 31596 | 5 | | reich hersch |
| $4,244.70 | BUSINESS | BRU ZRH NYC ZRH BRU | 20.11.05 | 247910 | 31565 | 5 | | reich hersch |
| $3,545.10 | BUSINESS | BRU ZRH NYC ZRH BRU | 29.11.05 | 248204 | 31784 | 5 | | reich hersch |
| $1,005.50 | BUSINESS | ZRH LON ZRH | 01.12.05 | 248319 | 32123 | 5 | | reich hersch |
| $1,306.46 | BUSINESS | TLV ZRH BRU ZRH TLV | 30.12.05 | 249059 | 32466 | 5 | | reich hersch |
| $6,718.82 | BUSINESS | BRU LON TYO LON BRU | 22.01.06 | 249179 | 32479 | | | reich hersch |
| $4,794.50 | BUSINESS | BRU ZRH NYC ZRH BRU | 08.02.06 | 249227 | 33262 | | | reich hersch |
| $12,790.76 | BUSINESS | NYC TLV NYC | 09.02.06 | 250391 | 33310 | | | reich hersch |
| $4,772.18 | BUSINESS | BRU ZRH NYC ZRH BRU | 19.02.06 | 250531 | 33442 | | | reich hersch |
| $7,049.40 | BUSINESS | BRU ZRH NYC ZRH BRU/NYC | 27.02.06 | 250852 | 33801 | 4 | | reich hersch |
| $6,697.36 | BUSINESS | TLV NYC TLV | 03.05.06 | 253033 | 34954 | 4 | | reich hersch |
| $7,888.72 | BUSINESS | TLV NYC TLV | 09.05.06 | 253202 | 35579 | | | reich hersch |
| $5,340.92 | BUSINESS | BRU ZRH NYC ZRH BRU | 24.05.06 | 253878 | 35585 | | | reich hersch |
| $6,054.92 | BUSINESS | TLV NYC MCO NYC TLV | 05.06.06 | 254386 | 35588 | 4 | | reich hersch |
| $8,950.24 | BUSINESS | NYC BRU NYC | 16.07.06 | 256138 | 39180 | 5 | | reich hersch |
| $6,386.10 | BUSINESS | BRU ZRH NYC | 20.07.06 | 256290 | 39179 | 5 | | reich hersch |
| $9,482.80 | BUSINESS | ZRH NYC GVA | 23.07.06 | 256291 | 39177 | 4 | | reich hersch |
| $6,114.60 | FIRST | YTO LON BRU | 21.08.06 | 257361 | 39173 | 5 | | reich hersch |
| $2,025.44 | BUSINESS | tlv lon tlv | 07.09.06 | 257844 | 39166 | | | reich hersch |
| $1,355.56 | BUSINESS | tlv zrh bru zrh tlv | 09.04.06 | 252352 | 34336 | 4 | | reich avram |
| | | | 08.03.06 | 251216 | 33790 | | | reich ben |

8

| Amount | Class | Route | Date | Ref1 | Ref2 | Flag | Name |
|---|---|---|---|---|---|---|---|
| $2,606.70 | Tourist | TLV YYZ YUC | 04.12.06 | 260303 | 39357 | 5 | pollack mordechai |
| $624.70 | Tourist | TLV LON TLV | 01.08.05 | 244389 | 31193 | 5 | pollack mordechai |
| $4,665.60 | BUSINESS | TLV PAR LON PAR TLV | 19.04.05 | 240177 | 30768 | 5 | lueli+HEZKI ROSENBAU |
| $873.90 | Tourist | TLV TTZ NYC TLV | 31.05.06 | 254210 | 39188 | 5 | moshkovitz haim |
| $1,416.74 | BUSINESS | TLV BRU TLV | 20.12.05 | 248925 | 32469 |  | moshkovitz haim |
| $1,287.36 | BUSINESS | TLV ZRH TLV | 29.01.06 | 249907 | 33131 |  | melchior yedidya |
| $2,315.64 | BUSINESS | TLV LON TLV | 23.03.06 | 251713 | 34057 |  | melchior yedidya |
| $1,533.50 | BUSINESS | TLV BRU TLV | 05.05.06 | 242405 | 34187 |  | melchior yedidya |
| $1,437.36 | Tourist | TLV BRU TLV | 09.04.06 | 252218 | 34972 |  | mandel mayer |
| $1,096.86 | Tourist | TLV BRU NYC BRU TLV | 20.06.06 | 242703 | 31188 | 5 | lerner aaron |
| $1,723.15 | Tourist | TLV NYC TLV | 08.08.06 | 241693 | 31194 | 5 | laufur mrdchaizeev |
| $443.38 | Tourist | TLV BRU TLV | 19.01.06 | 249637 | 32062 | 5 | laufur mrdchaizeev |
| $778.56 | Tourist | LON TLV LON | 22.01.06 | 249692 | 32668 | 5 | laufur mrdchaizeev |
| $970.62 | Tourist | TLV ZRH TLV | 14.02.06 | 250436 | 33269 | 5 | laufur mrdchaizeev |
| $970.42 | Tourist | TLV NYC TLV | 20.02.06 | 250573 | 33446 | 5 | laufur mrdchaizeev |
| $1,526.34 | BUSINESS | TLV ZRH BRU ZRH TLV | 09.01.06 | 249312 | 32043 | 5 | laufur mrdchaizeev |
| $629.70 | Tourist | BRU ZRH TLV ZRH BRU | 16.03.06 | 251503 | 33920 | 5 | kupperman mordechai |
| $548.00 | Tourist | BRU FRA TLV FRA BRU | 20.05.05 | 241349 | 31536 | 5 | kubitsek sruly |
| $3,345.50 | E | TLV ZRH BRU ZRH TLV | 05.05.05 | 240710 | 28894 | 5 | kluger aharon |
| $646.50 | Tourist | BRU ZRH TLV ZRH BRU | 27.05.05 | 241680 | 31538 | 5 | kluger aharon |
| $1,477.70 | Tourist | TLV BRU TLV | 20.10.05 | 246942 | 30660 | 5 | kluger aharon |
| $1,201.70 | BUSINESS | TLV BRU TLV | 23.10.05 | 246959 | 37221 | 5 | kluger aharon |
| $3,063.44 | BUSINESS | BRU ZRH TLV ZRH BRU | 18.04.06 | 252624 | 34423 | 5 | kluger aharon |
| $1,895.40 | BUSINESS | BRU ZRH TLV ZRH BRU | 28.04.06 | 240437 | 34896 | 5 | kluger aharon |
| $3,355.18 | BUSINESS | BRU ZRH TLV ZRH BRU | 19.02.06 | 250569 | 33445 | 5 | kluger aharon |
| $601.40 | Tourist | EH LON BRU LON | 13.11.05 | 248003 | 31602 | 5 | kluger aaron |
| $3,504.75 | BUSINESS | CH ZRH BRU | 13.09.05 | 245990 | 31125 | 5 | klein shimon |
| $3,790.35 | BUSINESS | BRU ZRH TLV ZRH BRU | 20.09.05 | 245996 | 31124 |  | klein mendel |
| $1,477.70 | BUSINESS | BRU ZRH TLV BRU | 20.10.05 | 246941 | 31123 |  | klein mendel |
| $1,201.70 | BUSINESS | TLV BRU TLV | 23.10.05 | 246956 | 31122 | 5 | klein mendel |
| $5,406.00 | BUSINESS | BRU ZRH NYC ZRH BRU/YUL | 23.10.05 | 246972 | 31121 |  | klein mendel |
| $702.10 | Tourist | BSL BRU BSL | 08.11.05 | 247532 | 31582 |  | klein mendel |
| $3,500.70 | BUSINESS | BRU ZRH NYC GVA BRU | 20.11.05 | 247909 | 31566 |  | klein mendel |
| $492.20 |  | YUL LGA | 01.11.05 | 247298 | 31128 |  | klein david |
| $4,252.05 | Tourist+business | NYC ZRH NYC | 25.07.05 | 244135 | 31139 | 5 | kestenbaum shimuel |
| $219.22 | Tourist | CHI NYC | 13.09.05 | 245989 | 31540 |  | kestenbaum shmuel |
| $6,941.96 | BUSINESS | BRU ZRH LAX ZRH BRU +MCO 943 USD | 05.06.06 | 254387 | 36205 | 5 | jacobowitz joel |
| $1,010.50 | Tourist | ZRH BRU ZRH | 04.11.05 | 247427 | 31579 | 5 | jacobowitz joel |

$609,894.59

| Amount | Class | Route | Date | | | | Name |
|---|---|---|---|---|---|---|---|
| $1,105.01 | BUSINESS | LAS HOU NYC | | | | | |
| $967.30 | Tourist | CHI LGA | | | | | |
| $3,371.59 | BUSINESS | TLV NYC TLV (VEGAS PAID) | 07.06.06 | 254610 | 36201 | 5 | jacobowitz joel |
| $1,476.90 | BUSINESS | TLV NYC TLV | 17.10.06 | 258954 | 39273 | 4 | zberg jordan+WOLF ISA |
| $609.72 | Tourist | TLV BRU TLV | 24.08.06 | 257259 | 38430 | 4 | herzberg jordan |
| $2,935.65 | BUSINESS | NYC ROC NYC | 17.05.05 | 241110 | 30776 | | herzberg jordan |
| $1,492.70 | BUSINESS | TLV NYC TLV | 01.06.05 | 241752 | 30778 | | herzberg jordan |
| $3,470.60 | BUSINESS | TLV BRU TLV | 04.08.05 | 244541 | 30974 | | herzberg jordan |
| $1,968.80 | Tourist | TLV NYC TLV | 10.08.05 | 244654 | 30973 | | herzberg jordan |
| $1,693.00 | Tourist | YUL NYC | 10.10.05 | 246670 | 30972 | | herzberg jordan |
| $1,274.20 | BUSINESS | NYC YUL | 31.10.05 | 247210 | 30970 | | herzberg jordan |
| $1,262.30 | BUSINESS | TLV ZRH TLV | 01.11.05 | 247293 | 30967 | | herzberg jordan |
| $4,034.54 | BUSINESS | TLV ZRH TLV | 01.11.05 | 247287 | 30969 | | herzberg jordan |
| $3,897.94 | BUSINESS | TLV ZRH TLV | 09.11.05 | 247560 | 31584 | | herzberg jordan |
| $1,310.48 | BUSINESS | ATL TYO NYC | 07.12.05 | 248149 | 31844 | | herzberg jordan |
| $3,834.52 | BUSINESS | TLV ZRH TLV | 22.01.06 | 249750 | 32471 | | herzberg jordan |
| $3,280.36 | BUSINESS | TLV NYC ZRH TLV | 15.02.06 | 249897 | 32870 | | herzberg jordan |
| $1,285.52 | BUSINESS | NYC HRA ZRH TLV | 01.11.06 | 250417 | 33391 | | herzberg jordan |
| $1,643.80 | BUSINESS | TLV ZRH TLV | 27.02.06 | 250849 | 33616 | | herzberg jordan |
| $3,739.00 | BUSINESS | TLV BRU TLV | 28.02.06 | 250849 | 33660 | | herzberg jordan |
| $557.00 | BUSINESS | TLV NYC TLV | 09.03.06 | 251116 | 33660 | | herzberg jordan |
| $1,750.64 | BUSINESS | BRU TLV | 26.03.06 | 251832 | 33768 | | herzberg jordan |
| $2,097.04 | BUSINESS | TLV LON TLV | 28.03.06 | 251903 | 34096 | | herzberg jordan |
| $3,241.12 | BUSINESS | BHX AMS TLV | 26.03.06 | 251832 | 37296 | | herzberg jordan |
| $3,905.32 | BUSINESS | TLV NYC TLV | 04.04.06 | 252172 | 34101 | | herzberg jordan |
| $4,460.16 | BUSINESS | NYC BRU TLV | 06.04.06 | 252283 | 34265 | | herzberg jordan |
| $5,767.96 | BUSINESS | TLV NYC TLV | 25.04.06 | 252745 | 34467 | | herzberg jordan |
| $4,480.56 | BUSINESS | TLV BUD BRU TLV NYC TLV | 11.05.06 | 283306 | 34947 | | herzberg jordan |
| $1,532.70 | BUSINESS | TLV NYC TLV | 09.06.06 | 253218 | 34962 | | herzberg jordan |
| $1,709.20 | BUSINESS | TLV NYC TLV | 22.06.06 | 253773 | 36212 | 4 | herzberg jordan |
| $4,639.50 | BUSINESS | TLV ZRH TLV | 29.05.06 | 254004 | 35603 | 4 | herzberg jordan |
| $50.00 | CHANGE | TLV NYC TLV | 06.06.06 | 254441 | 33276 | 4 | herzberg jordan |
| $4,957.90 | BUSINESS | TLV NYC TLV | 19.06.06 | 255007 | 38008 | 4 | herzberg jordan |
| $7,393.90 | BUSINESS | TLV NYC TLV | 12.07.06 | 255799 | 38007 | 4 | herzberg jordan |
| $14,820.00 | FIRST | NYC TLV NYC | 10.10.06 | 256696 | 39274 | 4 | herzberg jordan |
| $1,052.80 | T | NYC TLV NYC | 15.10.06 | 258003 | 39275 | 4 | herzberg jordan |
| $1,261.34 | Tourist | TLV BRU TLV | 27.02.06 | 290851 | 33802 | 4 | herzberg jordan |
| | | TLV ZRH TLV | 10.09.06 | 257864 | 39164 | 5 | hart william |
| | | TLV ZRH BRU | 18.07.05 | 244761 | 31088 | 5 | halberstam samuel |
| | | | 09.01.06 | 249312 | 32838 | 5 | gottlieb akiva |
| | | | | | | | gottli arie |

10

| Amount | Class | Route | Date | Number | Number | | Name |
|---|---|---|---|---|---|---|---|
| $1,205.20 | BUSINESS | TLV ZRH TLV | 25.09.05 | 246321 | 31089 | 5 | gollib akiva |
| $1,306.40 | BUSINESS | TLV BRU TLV | 22.11.06 | 248017 | 31603 | 5 | |
| $1,575.70 | Tourist | TLV NYC TLV | 04.12.06 | 248286 | 32308 | 5 | |
| $170.00 | | visa | | 247563 | 31585 | 5 | gollib akiva |
| $1,440.86 | BUSINESS | TLV ZRH BRU ZRH TLV | 10.01.06 | 249312 | 32840 | 5 | gollib akiva |
| $1,657.66 | BUSINESS | TLV ZRH DYC ZRH TLV | 19.02.06 | 250568 | 33805 | 5 | gollib akiva |
| $2,214.46 | Tourist | TLV NYC TLV+NYC LAS | 06.06.06 | 254440 | 36202 | 5 | gollib akiva |
| $1,722.63 | Tourist | LAS HOU NYC | | | | | gollib akiva |
| $50.00 | Tourist | CHANGE | 07.06.06 | 254611 | 36200 | 5 | gollib akiva |
| $669.60 | Tourist | TLV LON TLV | 09.01.06 | 249312 | 32837 | 5 | gollib akiva |
| $842.80 | Tourist | TLV LON TLV | 15.01.06 | 249374 | 32856 | 5 | goodfarb mordechai |
| $2,701.50 | BUSINESS | ZRH LON NYC LON ZRH | 09.11.06 | 247586 | 32035 | 5 | goldshtein moshe |
| $399.10 | Tourist | BSL FRA IST FRA BSC | 05.07.06 | 255787 | 37998 | | goldenberg yoel |
| $1,215.46 | Tourist | TLV AMS TLV | 25.08.06 | 258068 | 39169 | 5 | freyburger hubert |
| $8,414.30 | Tourist | BRU ZRH TLV ZRH BRU | 06.03.06 | 251144 | 33793 | | freedaman luvia |
| $1,598.20 | Tourist | BRU ZRH DUC ZRH BRU | 13.03.06 | 257349 | 39171 | 5 | feldman elimelech |
| $2,821.15 | Tourist | TLV NYC TLV | 06.04.06 | 250507 | 33441 | 5 | feldman elimelech |
| $1,527.22 | Tourist | TLV NYC TLV | 24.08.06 | 247911 | 31564 | 5 | dinfeld mordechay |
| $3,426.60 | Tourist | BRU ZRH NYC ZRH BRU | 19.02.06 | 247911 | 32472 | 5 | denciger shnior |
| $610.56 | Tourist | NYC ZRH NYC | 20.11.06 | 249841 | 33570 | 5 | denciger shnior |
| $787.20 | Tourist | ZRH BRU NYC | 22.12.06 | 251433 | 33872 | 5 | denciger shnior |
| $1,686.62 | Tourist | NYC TLV NYC | 26.01.06 | 252236 | 38427 | 5 | denciger shnior |
| $566.56 | Tourist | NYC BRU NYC | 13.03.06 | 252452 | 35016 | 5 | denciger shnior |
| $891.28 | Tourist | TLV BRU TLV | 06.04.06 | 253096 | 34950 | 5 | denciger shnior |
| $574.74 | Tourist | BRU NYC BRU | 12.04.06 | 256784 | 36196 | 5 | denciger shnior |
| $1,453.20 | Tourist | BRU NYC BRU | 02.05.06 | 255230 | 34951 | 5 | denciger shnior |
| $7,178.30 | BUSINESS | BRU NYC BRU | 13.06.06 | 259966 | 39175 | 5 | denciger menucharac |
| $2,069.82 | Tourist | BRU NYC BRU | 09.05.06 | 247621 | 31590 | | denciger dvorah |
| $7,548.88 | BUSINESS | NYC ZRH NYC | 25.07.06 | 250770 | 33562 | 5 | brachfeld naftali |
| $1,941.24 | Tourist | NYC ZRH TLV ZRH NYC | 09.11.06 | 250270 | 33205 | 5 | birnfeld mordchai |
| $3,925.25 | BUSINESS | LON NYC LON | 22.02.06 | 250400 | 33358 | 5 | berger israel |
| $699.00 | touris | TLV ZRH TLV | 14.02.06 | 239461 | 30775 | 5 | shimon+TEICHMAN ye |
| $1,623.60 | BUSINESS | TLV BRU TLV | 30.03.06 | 248364 | 32115 | 5 | reich nersch |
| $60.06 | BUSINESS | tlv NYC tlv | 04.12.06 | 260435 | 40078 | 4 | chazot ahron |
| $1,593.00 | BUSINESS | TLV BRU TLV | 11.12.06 | 260436 | 40080 | 4 | melcior yeditya |
| $1,279.00 | Tourist-business | tlv bru zrh | 17.01.06 | 249562 | 32859 | 5 | melcior yeditya |
| | | xxl fee insurance | | | | | elchadad yakov |
| $1,103.00 | BUSINESS | TLV LON TLV | 05.02.06 | 250090 | 33161 | 5 | elchadad yakov |
| $1,166.88 | Tourist-business | tlv ost tlv | 28.02.06 | 250386 | 33352 | | elchadad yakov |

12

| Amount | Category | Route | Date | Number | Number | Name |
|---|---|---|---|---|---|---|
| $329.44 | BUSINESS | mia dnc | 01.02.07 | 262025 | 40658 | MR.RUBINSTEIN/YAKOV |
| $1,416.80 | BUSINESS | mia hatford | 01.02.07 | 261840 | 40659 | MR.IFARGAN/YAACOVIS |
| $5,129.70 | A-BUSINESS | tlv dnc mia dnc tlv | 30.01.07 | 261941 | 40660 | MR.REICH/BEN |
| $1,295.80 | TOURS | tlv dnc mia tlv | 29.01.07 | 261876 | 40663 | MR.KAKON/DAVID |
| $134.10 | IT | tlv fra tlv | 28.01.07 | 261849 | 40665 | MR.BIRNFELD/MORDEC |
| $4,149.23 | IT | tlv dnc mia+kakon | 26.01.07 | 261817 | 40668 | MR.MOSHKOVITS/HAIME |
| $845.60 | IT | tlv bru tlv | 18.01.07 | 261612 | 40673 | MRS.WOLF/ANTONIA |
| $1,721.80 | IT | zrh bru zrh+jordan | 17.01.07 | 261603 | 40674 | MR.WOLF/ISAAC |
| $1,755.50 | BUSINESS | tlv zrh / bru tlv | 17.01.07 | 260441 | 40675 | MR.HERZBERG/JORDA |
| $1,801.60 | BUSINESS | tlv zrh tlv | 16.01.07 | 261498 | 40676 | MR.HERZBERG/JORDAN |
| $2,969.83 | TOURS | tlv dnc mia dnc tlv | 09.01.07 | 261268 | 40677 | MR.WOLF/ANTONIA |
| $1,569.50 | BUSINESS | tlv zrh tlv | 06.02.07 | 262169 | 40757 | MR.STROBEL/MORDECH |
| $909.80 | TOURS | tlv zrh bru tlv | 09.02.07 | 262222 | 40772 | MR.MOSHKOVITS/AIDE |
| $1,784.90 | BUSINESS | tlv zrh tlv | 17.01.17 | 261400 | 40773 | MR.WOLF/ISAAC |
| $1,536.60 | BUSINESS | tlv zrh lon zrh tlv | 18.02.07 | 262536 | 40903 | MR.WOLF/ISAAC |
| $1,479.60 | BUSINESS | tlv zrh tlv | 12.02.07 | 262352 | 40986 | MR.KEDMY/JAKOB |
| $1,403.80 | BUSINESS | tlv zrh tlv | 09.02.07 | 262062 | 40988 | MR.REICH/YECHEZKEL |
| $157.00 | TOURS | zrh bru | 11.02.07 | 262222 | 40989 | MRS.MOSHKOVITS/AIDE |
| $60.00 | TOURS | chanc lon tlv | 26.02.07 | 261906 | 41001 | MR.POLLACK/MORDECH |
| $1,649.30 | BUSINESS | tlv zrh bru par tlv | 28.02.07 | 262908 | 41097 | MRS.STROBEL/MORDECH |
| $1,316.40 | BUSINESS/TOURS | tlv bru tlv | 11.03.07 | 263263 | 41230 | MR.STROBEL/MORDECH |
| $2,965.20 | BUSINESS | tru zrh dnc zrh bru | 14.03.07 | 263415 | 41295 | MR.STROBEL/MORDECH |
| $2,211.60 | TOURS | tlv zrh gra ist tlv | 12.03.07 | 263312 | 41379 | MR.CASPI/MR.JANIRAC |
| $4,263.70 | BUSINESS | tlv fdnc tlv | 19.03.07 | 263326 | 41451 | MR.MELCHIOR/YEDIDY |
| $299.80 | BUSINESS | xxl fee | 18.03.07 | 263491 | 41453 | MRS.IFARGAN/RUCHAM |
| $619.60 | TOURS | tlv par bru tlv | 15.03.07 | 263459 | 41456 | MRS.PALLAK/RIVKA |
| $12,125.20 | BUSINESS | tlv dnc zrh tlv | 18.03.07 | 263441 | 41459 | MR.IFARGAN/YAACOVIS |
| $687.40 | TOURS | tlv par bru tlv | 12.03.07 | 263231 | 41462 | MR.IFARGAN/YAACOVIS |
| $867.50 | TOURS | lon tlv lon | 27.02.07 | 262787 | 41468 | MR.POLLACK/MORDECH |
| $9,826.00 | BUSINESS | dnc tllv | 19.03.07 | 263566 | 41706 | MR.TWERSKY/NUCHEN |
| TOTAL FOR CLI: $315,474.20 | | | 01/10/00 | 264115 | 41772 | IFARGAN |

# Exhibit M

ACCOUNT #:        | SAMUEL HOLDINGS LLC

FINANCIAL CONSULTANT: H985| LARRY BERNSTEIN | 561/653-6000    800/964-9493

Redacted

**EDWARDS**
FULLY INVESTED IN OUR CLIENTS™
Member SIPC   A.G. Edwards & Sons, Inc.
PAGE 2 OF 3

Primary Investment Objective - Conservative Appreciation

## CASH FLOW SUMMARY

FOR THE PERIOD: August 1, 2005 - August 31, 2005

| | This Period | Year to Date |
|---|---|---|
| Beginning Balance | | |
| Income | | |
| Deposits/Transfers In | | |
| Ending Balance | $ | |
| Net Change | | |

## INCOME SUMMARY

| | This Period | Year to Date |
|---|---|---|
| Taxable | | |
| Money Fund | $ | $ |
| Total Income | | |

## PORTFOLIO HOLDINGS

| Quantity | Description | Symbol | % of Account | Current Price | Current Value | Estimated Annual Income | % Yield | Type |
|---|---|---|---|---|---|---|---|---|
| | | | | | | $ | | C |
| | | | | | | $ | | |

**CASH & MONEY FUND**

TOTAL CASH & MONEY FUND

TOTAL ACCOUNT VALUE

## ACTIVITY DETAIL

| Date | Transaction Type | Quantity | Description | Price | Amount |
|---|---|---|---|---|---|
| 08/16 | Money Trnsfr | | BK POPULAIRES FRANCE SENDER SAS MEGA 32982. 16 EUR 1. 2311 | 3om exten Jer | 40, 604. 34 |
| 08/17 | Investment | | | 1 | 40, 604. 34 |
| 08/19 | Dividend | | | | |
| 08/19 | Reinvestment | | | | |
| 08/19 | Withholding | | | | |
| 08/19 | Withholding | | | | |
| 08/22 | Withholding | | | 1 | |
| 08/22 | Withholding | | | | |
| 08/29 | Investment | | | | |

ACCOUNT #: ▓ | SAMUEL HOLDINGS LLC

FINANCIAL CONSULTANT: H985 | LARRY BERNSTEIN | 561/663-6000    800/964-9493

Redacted

## EDWARDS
FULLY INVESTED IN OUR CLIENTS℠
Member SIPC  A.G. Edwards & Sons, Inc.

PAGE 2 OF 3

FOR THE PERIOD: *December 1, 2005 - December 31, 2005*    Primary Investment Objective - *Conservative Appreciation*

### CASH FLOW SUMMARY

| | This Period | Year to Date |
|---|---|---|
| Beginning Balance | $ | |
| Income | | |
| Deposits/Transfers In | | |
| Ending Balance | $ | |
| Net Change | $ | |

### INCOME SUMMARY

| | This Period | Year to Date |
|---|---|---|
| Taxable | | |
| Money Fund | $ | $ |
| Total Income | $ | $ |

### PORTFOLIO HOLDINGS

| Quantity | Description | Symbol | % of Account | Current Price | Current Value | Estimated Annual Income | % Yield | Type |
|---|---|---|---|---|---|---|---|---|
| | CENTENNIAL MONEY MKT TR* | | ▓ | ▓ | $ | $ | | C |
| | **TOTAL CASH & MONEY FUND** | | | | $ | $ | $ | |
| | **TOTAL ACCOUNT VALUE** | | | | $ | | | |

**CASH & MONEY FUND**

### ACTIVITY DETAIL

| Date | Transaction Type | Quantity | Description | Price | Amount |
|---|---|---|---|---|---|
| 12/16 | Dividend | | ▓ | | ▓ |
| 12/16 | Reinvestment | | DEPOSIT | | |
| 12/20 | Deposit | | FOREIGN PAPER 10000 EUROS @ RATE OF 1. 1809 - 10 FEE | | 11,799. 00 |
| 12/27 | Investment | | ▓ | 1 | |
| 12/30 | Dividend | | ▓ | | -11,799. 00 |
| 12/30 | Reinvestment | | ▓ | | ▓ |

### INCOME DETAIL

| Date | Transaction Type | Quantity | Description | | Amount |
|---|---|---|---|---|---|
| 12/16 | Dividend | | ▓ | | ▓ |

EDWARDS.
FULLY INVESTED IN OUR CLIENTS.™
Member SIPC   A.G. Edwards & Sons, Inc.

ACCOUNT #: _____ SAMUEL HOLDINGS LLC

FINANCIAL CONSULTANT: H985 | LARRY BERNSTEIN | 561/653-6000   800/964-9493

FOR THE PERIOD: *January 1, 2006 - January 31, 2006*

## ACTIVITY DETAIL

| Date | Transaction Type | Quantity | Description | Price | Amount |
|------|------------------|----------|-------------|-------|--------|
| 12/31 | | | | | |
| 01/12 | Bought | 100,000 | | | |
| 01/13 | Redemption | | | | |
| 01/20 | Dividend | | | 1 | |
| 01/20 | Reinvestment | | | | |
| 01/31 | Deposit | | DEPOSIT FOREIGN PAPER 10000 EURO @ THE RATE OF 1. 199 = $11990 - $10 FEE | | 11,980. 00 |
| 01/31 | | | | | 11,980. 00 |

## INCOME DETAIL

| Date | Transaction Type | Quantity | Description | | Amount |
|------|------------------|----------|-------------|--|--------|
| 01/20 | Dividend | | | | |
| | | | Total | | |

END OF STATEMENT

Redacted

ACCOUNT #: ▮▮▮▮▮  **SAMUEL HOLDINGS LLC**

FINANCIAL CONSULTANT: H985 | **LARRY BERNSTEIN** | 561/653-6000    800/964-9493

**EDWARDS**
FULLY INVESTED IN OUR CLIENTS
Member SIPC    A.G. Edwards & Sons, Inc.
PAGE 3 of 4

FOR THE PERIOD: *February 1, 2006 - February 28, 2006*

### ACTIVITY DETAIL

| Date | Transaction Type | Quantity | Description | Price | Amount |
|---|---|---|---|---|---|
| 01/31 | | | | | |
| 02/02 | Interest On | | ▮▮▮▮▮▮▮ | | ▮▮▮ |
| 02/06 | Investment | | ▮▮▮▮▮▮▮ | | ▮▮ |
| 02/17 | Dividend | | ▮▮▮▮▮▮▮ | 1 | ▮▮ |
| 02/17 | Reinvestment | | ▮▮▮▮▮▮▮ | | |
| 02/24 | Deposit | | DEPOSIT FOREIGN PAPER 10000 EURO @ THE RATE OF 1. 1805 = $11805 - $10 | | 11,795.00 |
| 02/27 | Investment | | ▮▮▮▮▮▮▮ | 1 | -11,795.00 |
| 02/28 | | | | | |

### INCOME DETAIL

| Date | Transaction Type | Quantity | Description | Amount |
|---|---|---|---|---|
| 02/02 | Interest On | | ▮▮▮▮▮▮▮ | ▮▮ |

Redacted

Redacted

EDWARDS™
FULLY INVESTED IN OUR CLIENTS™
Member SIPC  A.G. Edwards & Sons, Inc.

ACCOUNT #: ▮▮▮▮▮▮▮ SAMUEL HOLDINGS LLC
FINANCIAL CONSULTANT: H985 | LARRY BERNSTEIN | 561/653-6000  800/964-9493

FOR THE PERIOD: *March 1, 2006 - March 31, 2006*

## ACTIVITY DETAIL

| Date | Transaction Type | Quantity | Description | Price | Amount |
|---|---|---|---|---|---|
| 02/28 | | | | | |
| 03/02 | Interest On | | | | |
| 03/06 | Investment | | | 1 | |
| 03/17 | Dividend | | | | |
| 03/17 | Reinvestment | | | | |
| 03/21 | Deposit | | DEPOSIT FOREIGN PAPER 10000 EURO @ RATE OF 1.2030-10 FEE | | 12,020.00 |
| 03/27 | Investment | | | 1 | |
| 03/30 | Interest On | | | | -12,020.00 |
| 03/31 | | | | | |

ACCOUNT #: ▓▓▓▓▓ SAMUEL HOLDINGS LLC

FINANCIAL CONSULTANT: H985| LARRY BERNSTEIN | 561/653-6000    800/964-9493

Redacted

EDWARDS
FULLY INVESTED IN OUR CLIENTS.
Member SIPC  A.G. Edwards & Sons, Inc.

PAGE 3 OF

FOR THE PERIOD: *May 1, 2006 - May 31, 2006*

## ACTIVITY DETAIL

| Date | Transaction Type | Quantity | Description | Price | Amount |
|------|------------------|----------|-------------|-------|--------|
| 04/30 | Investment | | ▓▓▓▓▓▓▓▓ | | ▓▓▓ |
| 05/01 | Dividend | | ▓▓▓▓▓▓▓▓ | 1 | ▓▓▓ |
| 05/19 | | | ▓▓▓▓▓▓▓▓ | | ▓▓▓ |
| 05/19 | Reinvestment | | ▓▓▓▓▓▓ | | 12,790.00 |
| 05/22 | Deposit | | FOREIGN PAPER 10000 EURO @ RATE OF 1.2800-10 FEE | | |
| 05/24 | Investment | | ▓▓▓▓▓▓▓ | 1 | -12,790.00 |
| 05/25 | Interest On | | ▓▓▓▓▓▓▓ | | ▓▓▓ |
| 05/30 | Investment | | ▓▓▓▓▓▓▓ | 1 | ▓▓ |
| 05/31 | | | ▓▓▓▓▓▓▓ | | |

## INCOME DETAIL

| Date | Transaction Type | Quantity | Description | Amount |
|------|------------------|----------|-------------|--------|
| 05/19 | Dividend | | ▓▓▓▓▓▓ | ▓▓▓ |

ACCOUNT #: ▓▓▓ | SAMUEL HOLDINGS LLC

FINANCIAL CONSULTANT: H985 | LARRY BERNSTEIN | 561/653-6000    800/964-9493

*Redacted*

EDWARDS
FULLY INVESTED IN OUR CLIENTS™
Member SIPC  A.G. Edwards & Sons, Inc.

FOR THE PERIOD: **June 1, 2006 - June 30, 2006**

## ACTIVITY DETAIL

| Date | Transaction Type | Quantity | Description | Price | Amount |
|---|---|---|---|---|---|
| 05/31 | Dividend | | ▓▓▓▓▓▓ | | ▓▓ |
| 06/16 | Dividend | | ▓▓▓▓▓▓ | | ▓▓ |
| 06/16 | Reinvestment | | ▓▓▓▓▓▓ | | |
| 06/21 | Money Trnsfr | | BK POPULAIRE FRANCE SENDER MEGASPIREA 10000 EUR 1.2603 | | 12,603.00 |
| 06/22 | Interest On | | ▓▓▓▓▓▓ | | ▓ |
| 06/26 | Investment | | ▓▓▓▓▓▓▓▓ | 1 | |
| 06/30 | Money Trnsfr | | ▓▓▓▓▓▓▓ | | -12,985.67 |
| 06/30 | Fee | | ▓▓▓▓ | | ▓ |

## INCOME DETAIL

| Date | Transaction Type | Quantity | Description | Amount |
|---|---|---|---|---|
| 06/16 | Dividend | ▓▓ | ▓▓ | ▓ |



# Exhibit N

**Michael Serrapica CPA, PLLC.**
873 Manor Road
Staten Island, NY 10314
718.494.9587

Client 317
April 15, 2005

**ANNE L. QUINTAL**
**210 WEST 90TH STREET 4K**
**NEW YORK, NY 10024**
**Home: 212-721-0150 Work: 212-294-6727**

| FEDERAL FORMS | | | |
|---|---|---|---|
| Form 1040 | 2004 U.S. Individual Income Tax Return | $ | 160.00 |
| Schedule A | Itemized Deductions | | 95.00 |
| Form 8453 | Declaration for Electronic Filing | | |
| Form 8879 | IRS e-file Signature Authorization | | |

| NEW YORK FORMS | | | |
|---|---|---|---|
| Form IT-201 | 2004 New York Resident Income Tax Return | $ | 100.00 |
| Form IT-201-E | New York Declaration for Electronic Filing | | |
| Form IT-201ATT | Summary of Other Credits and Taxes | | |
| e-file Sign. Auth. | NYS e-file Signature Authorization Worksheet | | 35.00 |

| FEE SUMMARY | | |
|---|---|---|
| Preparation Fee | $ | 390.00 |
| ADDITIONAL - REIMBURSEMENT | | 35.00 |
| Amount Due | $ | 425.00 |