Gil Feder (GF-6550)
Casey D. Laffey (CL-1483)
REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
Tel. (212) 521-5400
Fax. (212) 521-5450

Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JORDAN HERZBERG,                            :
                                            :
                Plaintiff,                  :      ECF Case
                                            :
        - against -                         :
                                            :      07 Civ. 10503 (RJS)(RLE)
MEGASPIREA PRODUCTIONS SAS,                 :
MEGASPIREA INTERNATIONAL INC.,              :
MEGASPIREA HOLDINGS LTD.,                   :
MEGASPIREA HOLDING A.G., MEGASPIREA         :
NV, and HERSCH REICH,                       :
                                            :
                Defendants.                 :
------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

REED SMITH LLP
599 Lexington Avenue, 29th Floor
New York, New York 10022
(212) 521-5400

*Attorneys for Defendants*

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF THE FACTS .............................................................................................. 2

ARGUMENT............................................................................................................................. 3

    POINT I
    BECAUSE PLAINTIFF CONCEDES HE WAS DOMICILED IN
    ISRAEL AT THE TIME THE COMPLAINT WAS FILED, THIS
    COURT LACKS SUBJECT MATTER JURISDICTION ........................................ 3

    POINT II
    BECAUSE PLAINTIFF HAS CONCEDED THAT ALL PARTIES ARE LOCATED
    OVERSEAS, THIS ACTION SHOULD BE DISMISSED UNDER THE *FORUM NON
    CONVENIENS* DOCTRINE ................................................................................... 7

    POINT III
    THE DEFENDANTS HAVE NOT TRANSACTED BUSINESS IN NEW YORK ................. 8

CONCLUSION........................................................................................................................ 10

# TABLE OF AUTHORITIES

Page

## CASES

Banco de Seguros Del Estado v. JP Morgan Chase & Co., 500 F. Supp. 2d 251
  (S.D.N.Y. 2007) ........................................................................................................... 8

Blumatte v. Quinn, 521 F.Supp.2d 308 (S.D.N.Y. 2007) .................................................. 5

Calavro Growers of California v. Generali Belgium, 632 F.2d 963 (2d Cir. 1980) ......... 8

Capello v. Union Carbide & Carbon Corp., 276 A.D. 277, 95 N.Y.S.2d 36
  (4th Dep't 1950) ......................................................................................................... 10

Catskill Litig. Trust v. Park Place Entm't Corp., 169 Fed. Appx. 658 (2d Cir. 2006) ..... 3

CCS Int'l, Ltd. v. ECI Telesystems, Ltd., 1998 WL 512951 (S.D.N.Y. Aug. 18, 1998) ... 8

Clarke v. Fonix Corp., 1999 WL 105031 (S.D.N.Y. Mar. 1, 1999) .................................. 9

Cresswell v. Sullivan & Cromwell, 922 F.2d 60 (2d Cir. 1990) ...................................... 3

Diagnostic Cardioline Monitoring of New York, Inc. v. Leavitt, 171 Fed. Appx. 374
  (2d Cir. 2006) .............................................................................................................. 3

Fidan v. Austral Am. Trading Corp., 8 Misc.2d 598, 168 N.Y.S.2d 27
  (Sup. Ct. N.Y. Co. 1957) ........................................................................................... 10

Gestetner v. Congregation Merkaz, 2004 WL 602786 (S.D.N.Y. Mar. 29, 2004) ....... 3, 7

Hamm v. United States, 483 F.3d 135 (2d Cir. 2007) ...................................................... 3

Iragorrie v. United Technologies Corp., 274 F.3d 65 (2d Cir. 2001) ............................... 7

Johnson v. The Smithsonian Inst., 4 Fed. Appx. 69 (2d Cir. 2001) .................................. 3

Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd., 956 F.Supp. 1131 (S.D.N.Y. 1997) ....... 10

Kavowras v. Pinkerton, Inc., 1998 WL 209617 (S.D.N.Y. Apr. 29, 1998) ............ 3, 5, 6, 7

Leeds v. Focom, Inc., 1983 U.S. Dist. LEXIS 12551 (S.D.N.Y. Oct. 21, 1983) .............. 3

Linardos v. Fortuna, 157 F.3d 945 (2d Cir. 1998) ............................................................ 3

Molozanov v. Quantum Telecomm. Ltd., 2006 U.S. Dist. LEXIS 16788
  (S.D.N.Y. Apr. 6, 2006) .............................................................................................. 9

Peregrine Myanmar Ltd. v. Segal, 1995 U.S. Dist. LEXIS 18179 (S.D.N.Y. 1995) ........ 7

Piper Aircraft & Co. v. Reyno, 454 U.S. 235 (1981) ....................................................... 7

Ski Train Fire in Kaprun, 2003 WL 1807148 (S.D.N.Y. Apr. 4, 2003) ........................... 9

Strategic Value Master Fund, Ltd. v. Cargill Fin. Services, Corp., 421 F. Supp. 2d 741
  (S.D.N.Y. 2006) .......................................................................................................... 8

Usha (India), Ltd. v. Honeywell Int'l, Inc., 2004 U.S. Dist. LEXIS 4236
  (S.D.N.Y. Mar. 17, 2004) ........................................................................................... 8

## STATUTES

CPLR § 301(a)(1) ............................................................................................................. 8

## **PRELIMINARY STATEMENT**

Plaintiff seeks to turn the standards for domicile and subject matter jurisdiction upside down.[1] Plaintiff concedes that he is currently living in Israel with his wife and two children, was living there at the time this action was commenced, and, in fact, has been living there for (at the very least) the past *three years*. Then how does plaintiff support his argument that he is domiciled in New York (a requirement to confer subject matter jurisdiction upon this Court)? He claims -- in extremely convenient and purely conclusory fashion -- that he feels New York is really his home and that it is his intention to *someday* move back to New York and *someday* make this forum his permanent home.

Well the law does not allow a plaintiff who is *indisputably* residing and working overseas with his wife and two children (and paying taxes and participating in the army and religious and political activities there) to sustain subject matter jurisdiction simply by making a self-serving, conclusory assertion that he intends to someday make New York his permanent home. The law is clear: it is plaintiff's burden to prove that subject matter jurisdiction existed at the time of filing of the complaint, *i.e.* that plaintiff was, in fact, domiciled in New York at the time the complaint is filed and to sustain that burden with *objective facts*. Having conceded that he is living and working in Israel and was at the time that the complaint was filed, plaintiff fails to sustain this burden.

Similarly, plaintiff's concession that he is currently living and working in Israel is exactly why this action should be dismissed under the *forum non conveniens* doctrine. If each of the defendants is present overseas in Israel and Belgium and plaintiff himself is residing in Israel,

---

[1] Capitalized terms not expressly defined herein are defined in Defendants' Moving Memorandum of Law dated January 31, 2008.

- 2 -

New York is the least convenient forum for all parties involved. This Court has no real interest in adjudicating a dispute solely between foreign parties.

Finally, plaintiff has failed to present any factual allegations or evidentiary proof that any of the defendants have transacted business in New York and subjected themselves to personal jurisdiction here. In fact, the only affirmative evidence that plaintiff proffers to show any connection between the corporate defendants and this forum is a statement on MegaSpirea International Inc.'s website that it is located "in Norwalk, Connecticut, USA, in the New York City metropolitan area". However, the mere presence of a corporate defendant *in Connecticut* does not constitute presence *in New York* for jurisdictional purposes. Finally, the mere fact that some of the investors or shareholders of the defendants may reside in New York is insufficient to establish that the defendants are transacting business here. Simply put, plaintiff presents nothing because there is nothing.

Because plaintiff has failed to satisfy his burden of establishing that this Court has subject matter jurisdiction over this action and that each defendant is subject to personal jurisdiction here, the complaint should be dismissed in its entirety.

## STATEMENT OF THE FACTS

The facts pertaining to this Reply Memorandum of Law are fully set forth in the accompanying Reply Declaration of Mendel Klein dated February 21, 2008 ("Klein Reply Decl."), as well as the Moving Declaration of Mendel Klein dated January 29, 2008 ("Klein Moving Decl.") and Defendants' Moving Memorandum of Law dated January 31, 2008 ("Moving Mem.") and are incorporated as if fully set forth herein.

# ARGUMENT

## POINT I

### BECAUSE PLAINTIFF CONCEDES HE WAS DOMICILED IN ISRAEL AT THE TIME THE COMPLAINT WAS FILED, THIS COURT LACKS SUBJECT MATTER JURISDICTION

The Second Circuit and this Court have repeatedly held that the plaintiff has the burden of proving a valid basis of subject matter jurisdiction. Hamm v. United States, 483 F.3d 135, 137 (2d Cir. 2007); Diagnostic Cardioline Monitoring of New York, Inc. v. Leavitt, 171 Fed. Appx. 374, 375 (2d Cir. 2006); Gestetner v. Congregation Merkaz, 2004 WL 602786, at *2 (S.D.N.Y. Mar. 29, 2004); Kavowras v. Pinkerton, Inc., 1998 WL 209617, at *1 (S.D.N.Y. Apr. 29, 1998).[2] Similarly, the Second Circuit has repeatedly held that United States citizens who are domiciled abroad are neither citizens of any state of the United States nor citizens or subjects of a foreign state for diversity purposes. Johnson v. The Smithsonian Inst., 4 Fed. Appx. 69, 71 (2d Cir. 2001); Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 68 (2d Cir. 1990). See also Kavowras, 1998 WL 209617, at *1. Plaintiff does not dispute that this is the law in this Circuit.

However, plaintiff ignores another well-settled rule in this Circuit: a party's domicile is only judged *at the time of filing of plaintiff's complaint*. Catskill Litig. Trust v. Park Place Entm't Corp., 169 Fed. Appx. 658, 660 (2d Cir. 2006); Linardos v. Fortuna, 157 F.3d 945, 947 (2d Cir. 1998); Leeds v. Focom, Inc., 1983 U.S. Dist. LEXIS 12551, at *2 (S.D.N.Y. Oct. 21, 1983). Plaintiff's domicile prior to and subsequent to filing of the complaint is irrelevant. Id. Therefore, in order for this Court to sustain subject matter jurisdiction over this action, plaintiff must prove that he was domiciled in New York at the time the complaint was filed on November

---

[2] This standard is undisputed in this Circuit. Plaintiff's argument that defendants have the burden of disproving subject matter jurisdiction by clear and convincing evidence goes against decades of precedent in this Circuit.

22, 2007. Plaintiff has failed to meet this burden and has repeatedly conceded that he has been living in Israel for -- at the very least -- the past three years.

Plaintiff's own complaint concedes that he "is a US citizen and current resident of Israel." Complaint (Exh. A to Klein Moving Decl.), ¶ 4. The Second Circuit has held that these admissions alone warrant dismissal of the complaint for lack of subject matter jurisdiction. Johnson, 4 Fed. Appx. at 71. However, here plaintiff's admissions go even further.

Specifically, plaintiff submits a sworn declaration conceding that he has been living is Israel with his wife since as early as 2005. See Declaration of Jordan Herzberg dated February 13, 2008 ("Herzberg Decl."), ¶¶ 23, 37-41, 60. Plaintiff's wife also submits a sworn declaration admitting the same. See Declaration of Anne Quintal Herzberg dated February 13, 2008 ("Quintal Decl."), ¶¶ 16-17. Plaintiff's assertion that his family "returns" to New York several times a year "to visit" friends and family is a telling example of plaintiff's admission of permanent residence in Israel. See Herzberg Decl. ¶ 60. See also id. ¶¶ 16, 17, 32. Plaintiff's wife also refers to her trips to New York as "return" trips and "visits". See Quintal Decl. ¶¶ 34. If plaintiff and his wife live in New York and treat this forum as their permanent home, then why do they continuously refer to their trips to New York as "visits" to the forum?

In addition, neither plaintiff's declaration nor his wife's declaration address or dispute the fact that their two children were born in Israel and permanently reside there. Klein Moving Decl. ¶ 6, Exh. B. Plaintiff even concedes that he is currently an active member of the Israeli army (Herzberg Decl. ¶¶ 6, 7), has an Israeli passport (Id. ¶ 8), works and studies in Israel (Id. ¶¶ 15,

37), and pays taxes there. Pl. Br. at p. 12.³ Overall, outside of the single fact that plaintiff's wife purchased a Manhattan cooperative apartment in 2002 *in her own name and before she even met plaintiff*, plaintiff has not presented any evidence of a permanent or ongoing connection to New York. See Quintal Decl. ¶¶ 9-10. Plaintiff also conveniently fails to mention that he owns a more valuable home in Israel. Klein Reply Decl. ¶ 7.

Plaintiff's sole response to this overwhelming evidence of permanent residence and domicile in Israel is a self-serving statement that:

> Although we are currently residing in Israel, we have maintained our lives in New York and consider ourselves to be domiciliaries of New York.

Herzberg Decl. ¶ 41. However, this Court has already held that testimony by a plaintiff residing overseas that he has a general intention of moving back to New York at some unspecified period of time is insufficient to establish domicile in New York. Kavowras, 1998 WL 209617, at *4;⁴ Blumatte v. Quinn, 521 F.Supp.2d 308, 312 (S.D.N.Y. 2007).

The facts of this case cannot be distinguished from the facts in Kavowras. There, a 35-year-old native of New York and graduate of a New York university decided to study Asian studies abroad and return to the United States after doing so. Kavowras, 1998 WL 209617, at *2. While in China, the plaintiff took a job working in Hong Kong. Id. After commencing an action in New York, the defendant moved to dismiss the complaint for lack of subject matter jurisdiction, claiming that plaintiff was domiciled in China. Id. at *1.

---

³ Plaintiff's assertion that he was required to file New York State tax returns in 2001 and 2002 actually supports the defendants' position that he is domiciled in Israel because plaintiff offers no evidence of any tax filings in New York since 2002. See Herzberg Decl. ¶ 57. If plaintiff was domiciled in New York at the time of filing of this lawsuit (*i.e.*, this year), then why hasn't he filed New York State tax returns since 2002? Plaintiff's wife also concedes that she has not filed New York State income tax returns since 2004. Quintal Decl. ¶ 30, Exh. N.

⁴ For the convenience of the Court, a copy of the Kavowras decision is annexed to the back of this Memorandum of Law.

In response, the plaintiff -- like Herzberg -- argued that he was a New York domiciliary because he maintained an apartment in New York and a New York driver's license and often visited New York. Id. at *2.[5] However, other objective evidence indicated that the plaintiff -- like Herzberg -- had been living and working in China for over two years, received mail in China, had bank accounts there, and was a member of religious organizations there. Id. at *3. In granting the defendant's motion to dismiss for lack of subject matter jurisdiction, this Court held as follows:

> From the above facts, it is plain that Kavowras can return to New York without much difficulty if he decides to do so. He has a place to stay -- an apartment set aside for his use at his parents' home that he does not in any real sense maintain, a bank account, a car, and a current driver's license in New York. What is not at all plain is that he has formed any articulable plan to return to New York at a particular time or upon the occurrence of a particular event. To the contrary, insofar as he testified to the specificity as opposed to the certainty of his intent, he testified simply that he had a "general sense" that he would return to New York. (Tr. 37). Although he has explored the possibility of attending law school to the extent of taking only part of a preparatory course, such conduct is as consistent with a weighing of options as it is with the choice of an option. To put it another way, he appears to be residing in Hong Kong for the indefinite future and has not met the burden of showing otherwise.

Id. at *4.

Here, like in Kavowras, Herzberg concedes that he has been living in Israel, was living in Israel with his wife and two children at the time the complaint was filed, and was living there for several years before that. Like the plaintiff in Kavowras, Herzberg has not identified an articulable plan for when he will return to New York, a particular time when he will move back to New York, nor a particular event that would cause him to move back to New York. Like the

---

[5] Again, the only apartment plaintiff claims to be maintaining in New York is a Manhattan cooperative owed by plaintiff's wife which she purchased in 2002 in her own name before she even met plaintiff. See Quintal Decl. ¶¶ 9-10. However, he owns a house in Israel (Klein Reply Decl. ¶ 7) and does not claim to have a New York State driver's license or to be registered to vote in New York.

plaintiff in Kavowras, plaintiff instead takes the position that a general intent to return to live in New York at some unspecified date in the future establishes domicile here.

If Herzberg's position here were to be accepted by this Court, any foreign resident could maintain subject matter jurisdiction in a New York district court by simply making a self-serving, general assertion of intent to return to New York at some indefinite time. Because this is not the law in this Circuit, the Complaint should be dismissed for lack of subject matter jurisdiction. See, e.g., Kavowras, 1998 WL 209617, at *4; Gestetner, 2004 WL 602786, at *1, 4 (dismissing complaint, holding that plaintiff was domiciled in Canada, and relying upon statement in plaintiff's affidavit attesting that she "established residency in Canada").[6]

## POINT II

### BECAUSE PLAINTIFF HAS CONCEDED THAT ALL PARTIES ARE LOCATED OVERSEAS, THIS ACTION SHOULD BE DISMISSED UNDER THE *FORUM NON CONVENIENS* DOCTRINE

Plaintiff's admission of current residency in Israel is further evidence of why, in the alternative, this action should be dismissed under the *forum non conveniens* doctrine. It is undisputed that *none* of the parties to this action are located in this forum. See Complaint ¶¶ 5-10 (attached as Exh. A to Klein Moving Decl.); Klein Moving Decl. ¶¶ 12-18. As a non-resident, plaintiff's choice of forum should be given less deference by the Court. Piper Aircraft & Co. v. Reyno, 454 U.S. 235, 255–56 (1981); Iragorrie v. United Technologies Corp., 274 F.3d 65, 73 (2d Cir. 2001). Because plaintiff concedes he is residing in Israel and has been since at

---

[6] The *only* case that plaintiff can find to support his position is Peregrine Myanmar Ltd. v. Segal, 1995 U.S. Dist. LEXIS 18179 (S.D.N.Y. 1995), a decision decided three years before Kavowras. However, Segal is easily distinguishable from the facts of this case. In Segal, it was a single defendant that was arguing that subject matter jurisdiction did not exist because she was a domiciliary of Myanmar, and the Court held that the defendant was domiciled in New York, not Myanmar. However, the Court relied upon objective evidence demonstrating that the defendant -- unlike Herzberg -- did not own property in Myanmar, did not pay taxes there, did not receive pay checks there, and was not involved in religious and social organizations there. Id. at *13-18. In fact, unlike Herzberg who concedes that he was residing in Israel at the time of filing of his complaint, the plaintiff in Segal submitted documentary evidence evidencing the defendant's permanent residence in New York at the time the action was commenced. Id. at *15-16.

least 2005, he cannot claim that Israel is an inconvenient forum. See, e.g., CCS Int'l, Ltd. v. ECI Telesystems, Ltd., 1998 WL 512951, at *6 (S.D.N.Y. Aug. 18, 1998) (holding that Israel was an appropriate alternative forum because the parties were located there).

This Court is one of the busiest district courts in the country. It has no real interest in adjudicating a dispute solely between foreign residents. See, e.g., Calavro Growers of California v. Generali Belgium, 632 F.2d 963, 967 (2d Cir. 1980).[7] As a result, this action should be dismissed under the *forum non convenience* doctrine in favor of litigation in Israel or Belgium. See, e.g., Banco de Seguros Del Estado v. JP Morgan Chase & Co., 500 F. Supp. 2d 251, 260–62 (S.D.N.Y. 2007) (granting motion to dismiss under forum *non conveniens* when parties were located overseas and dispute had little connection to New York); Strategic Value Master Fund, Ltd. v. Cargill Fin. Services, Corp., 421 F. Supp. 2d 741, 758–60 (S.D.N.Y. 2006) (same); Usha (India), Ltd. v. Honeywell Int'l, Inc., 2004 U.S. Dist. LEXIS 4236, at *10-16 (S.D.N.Y. Mar. 17, 2004) (same).

## POINT III

## THE DEFENDANTS HAVE NOT TRANSACTED BUSINESS IN NEW YORK

Finally, plaintiff's wholly conclusory, unsupported assertions that the defendants are transacting business in New York are insufficient to establish personal jurisdiction over the defendants. Again, the sole basis upon which plaintiff asserts personal jurisdiction over the defendants is under New York's long-arm statute, CPLR § 301(a)(1) which confers limited jurisdiction over a defendant for causes of action arising out of the defendant's transaction of

---

[7] Plaintiff's assertion that this action concerns a contract executed in New York and to be performed in New York is erroneous. Plaintiff's complaint does not allege that the "offer" was accepted in New York and concedes that the majority of the subsequent discussions between the parties and all the underlying transactions took place in Israel, Belgium, and various other countries. Complaint (Exh. A to Klein Moving Decl.) ¶¶ 19, 20, 25, 31, 36. Outside of a few preliminary meetings between plaintiff and defendant Reich in New York, the transactions alleged in the complaint all relate to events and business transactions that took place in Israel and Belgium and various other countries. Klein Moving Decl. ¶¶ 4, 19-24; Klein Reply Decl. ¶¶ 15-19.

business within the State. See Complaint ¶ 12 (attached as Exh. A to Klein Decl.). However, plaintiff has not alleged any facts or presented any evidence that *any* of the defendants are present in New York or transacting business here.

Plaintiff seemingly argues that the mere fact that one defendant -- MegaSpirea International, Inc. -- has stated on its website that it is located "in Norwalk, *Connecticut*, USA, in the New York City Metropolitan area" is sufficient to confer personal jurisdiction upon all defendants. Pl. Br. at p. 14. However, although there is no dispute that MegaSpirea International, Inc. is a Delaware corporation with its principal place of business in Connecticut and that Connecticut is in the New York City Metropolitan area, plaintiff presents no evidence of how its presence *in Connecticut* in any way subjects it -- or any of the other defendants -- to jurisdiction *in New York*.[8]

In addition, plaintiff argues that the defendants are subject to personal jurisdiction in New York because some of their investors are located here. Pl. Br. at p. 19. However, the mere fact that a corporate defendant may have some investors in New York, does not alone constitute transacting business here. In re Ski Train Fire in Kaprun, 2003 WL 1807148, at *4 (S.D.N.Y. Apr. 4, 2003) (holding that engaging in financing in New York does not subject a foreign corporation to personal jurisdiction here). To hold otherwise would mean that "almost every company in the country would be subject to New York's jurisdiction." Id. (quoting Clarke v. Fonix Corp., 1999 WL 105031, at *5 (S.D.N.Y. Mar. 1, 1999)).

Finally, plaintiff argues that service in New York upon defendant Hirsch Reich somehow confers personal jurisdiction upon each of the corporate defendants named in this action. Pl. Br.

---

[8] Plaintiff's opposition papers seemingly infer that the MegaSpirea entities have common management, officers, and employees. See, e.g., Pl. Br. at 17; Herzberg Decl. ¶ 79. To the extent that plaintiff is attempting to assert "alter ego" allegations, such bare and conclusory allegations are insufficient to pierce the corporate veil for jurisdictional purposes as a matter of law. Molozanov v. Quantum Telecomm. Ltd., 2006 U.S. Dist. LEXIS 16788, at *14-15 (S.D.N.Y. Apr. 6, 2006).

at pp. 14-15. Plaintiff's argument is contrary to well-settled precedent in this state which holds that mere service in New York upon an officer or director of a foreign corporation does not confer personal jurisdiction over the foreign corporation unless the plaintiff demonstrates proof that the corporation is actually transacting business in the State. Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd., 956 F.Supp. 1131, 1137 (S.D.N.Y. 1997); Capello v. Union Carbide & Carbon Corp., 276 A.D. 277, 278–79, 95 N.Y.S.2d 36, 38 (4th Dep't 1950); Fidan v. Austral Am. Trading Corp., 8 Misc.2d 598, 599, 168 N.Y.S.2d 27 (Sup. Ct. N.Y. Co. 1957). Having failed to satisfy his burden of demonstrating that the defendants are transacting business in New York, plaintiff's complaint should be dismissed for lack of personal jurisdiction.

## CONCLUSION

For the foregoing reasons and those set forth in the accompanying reply declaration of Mendel Klein and defendants' moving papers, defendants' motion to dismiss should be granted and the complaint should be dismissed in its entirety with prejudice, along with such other and further relief as the Court deems just, proper, and equitable.

Dated:   New York, New York
         February 21, 2008

                                          REED SMITH LLP

                                          By: _____
                                              Gil Feder (GF-6550)
                                              Casey D. Laffey (CL-1483)
                                          599 Lexington Avenue
                                          New York, New York 10022
                                          Tel. (212) 521-5400
                                          Fax. (212) 521-5450

                                          Attorneys for Defendants

# **APPENDIX**

Case 1:07-cv-10503-RJS   Document 17   Filed 02/21/2008   Page 14 of 18

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 209617 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Page 1

C
Kavowras v. Pinkerton, Inc.
S.D.N.Y.,1998.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Theodore KAVOWRAS, Plaintiff,
v.
PINKERTON, INC., U.S.A., Pinkerton (Asia) Ltd., Steven J.S. Payne and Ringo Leung, Defendants.
No. 97 CIV. 6098(MBM).

April 29, 1998.

Gregory Antollino, Esq., New York, for Plaintiff.
John J. O'Donnell, Esq., Morgan, Lewis and Bockius LLP, New York, for Defendants Pinkerton's, Inc., Pinkerton (Asia) Ltd. and Stephen J.S. Payne.
Douglas A. Rappaport, Esq., Amy Schulman, Esq., Piper and Marbury LLP, New York, for Defendant Ringo Leung.

OPINION AND ORDER

MUKASEY, D.J.

*1 Plaintiff sues defendants for defamation, and bases jurisdiction on diversity of the parties' citizenship. Defendants have moved to dismiss, arguing that plaintiff is domiciled abroad rather than in New York, and therefore cannot rely on his claim of New York citizenship to establish diversity jurisdiction. Plaintiff testified at a hearing on March 5, 1998, and the parties submitted papers both before and after. For the reasons set forth below, it appears from the evidence presented in the parties' papers and during the hearing that plaintiff cannot establish that he was domiciled in New York at the time he brought this action. Therefore, the court lacks subject matter jurisdiction in this case, and the complaint must be dismissed.

I.

Because the parties' dispute appears to center more on the law than on the facts, it seems advisable to set forth the controlling principles at the outset. First, for present purposes, a plaintiff who relies on diversity of citizenship as the basis for jurisdiction must establish that he is a citizen of one state suing a citizen of another, or that he is a citizen of a foreign country suing a citizen of a state. See 28 U.S.C. § 1331(a)(1), (2) (1994). There is no diversity jurisdiction in an action brought by a United States citizen domiciled abroad who is not a citizen of a particular state for jurisdictional purposes. See Galu v. Attias, 923 F.Supp. 590, 594 (S.D.N.Y.1996), and cases cited therein. "Once a plaintiff's allegations of diversity are challenged by a defendant, plaintiff must prove by a preponderance of the evidence that diversity in fact exists." Bevilagua v. Bernstein, 642 F.Supp. 1072, 1073 (S.D.N.Y.1986) (Weinfeld, J.), and cases cited therein.

Moreover, inasmuch as diversity of citizenship is established at the time the case is filed, a party's residence at that time is prima facie evidence of his domicile. See Attias, 923 F.Supp. at 595, and cases cited therein. Although a person can have more than one residence at a time, he can have only one domicile at a time. See id.; see also Williamson v. Osenton, 232 U.S. 619, 625, 34 S.Ct. 442, 58 L.Ed. 758 (1914). There are two components for establishing domicile: physical presence, and intent to remain "indefinitely." Bevilaqua, 642 F.Supp. at 1073. Kavowras has asserted that his expressed intent to return to New York at some indefinite point, without more, is sufficient to establish domicile in New York and, in support of this proposition, apparently relies on a footnote in Galu v. Swissair: Swiss Air Transport Co., Ltd., 873 F.2d 650, 653 n. 1 (2d Cir.1989), that reads in pertinent part as follows:

We need not decide whether federal question jurisdiction exists ... since, as the District Court concluded, diversity jurisdiction exists; Galu has expressed an intention to return to her native state of California upon the termination of her residence

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 209617 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Page 2

in France.

The quoted segment is plainly dictum, inasmuch as the Court did not rule on the issue of what is sufficient to establish domicile, and its oblique reference to a conclusion by the district court is not the sort of considered dictum meant to guide other courts in deciding future cases. *See United States v. Oshatz,* 912 F.2d 534, 540 (2d Cir.1990) (distinguishing between considered dictum and other statements not strictly necessary to the holding), *cert. denied,* 500 U.S. 910, 111 S.Ct. 1695, 114 L.Ed.2d 89 (1991); *see also Attias,* 923 F.Supp. at 596 n. 7 (factual basis for footnote in *Swissair* is "unclear from the record"). I find it impossible to believe that the Court of Appeals would have sought to establish a standard different from a previously accepted one by stating it so offhandedly in a footnote. An expressed intention to return to this country eventually may be evidence of domicile; standing alone, such expression is not sufficient to establish it.

*2 The cases on domicile, as one can imagine, are highly fact specific, and courts have looked to a wide variety of factors to determine the second, volitional, component of the test. Among those factors are voting-both registration and exercise of the franchise, place of employment, residence, affidavits of intention, location of real property rented or owned, location of personal property, location of spouse and family, drivers licenses, automobile registration, licenses other than drivers licenses, brokerage and bank accounts, payment of taxes, tax return addresses, membership in unions, affiliation with religious organizations, membership in fraternal and other social organizations, business and financial transactions, exercise of civil and political rights other than voting, location of physicians and other service providers, payment of utilities, acquisition and listing of telephones, receipt of mail, membership in professional organizations, and membership in civil organizations. *See* 15 James Wm. Moore et al., *Moore's Federal Practice,* § 102.36[1] (3d Ed.1998). Obviously, some of these indicia are more meaningful than others. Voting, for example, is more significant than voting registration. *See Boston Safe Deposit and Trust Co. v. Morse,* 779 F.Supp. 347, at 349 (S.D.N.Y.1991). The availability of the parental home to a young person for mailing and possible residence is not a persuasive indicium of domicile in that home, when other evidence suggests domicile elsewhere. *See Bair v. Peck,* 738 F.Supp. 1354, 1357-58 (D.Kan.1990). However, it is important to recall that the touchstone is not entries on a checklist; it is intent either to stay or not to stay in a particular place indefinitely.

II.

Plaintiff is 35 years old and a native of New York. He retired, due to a disability, from the New York City Police Department in 1986. Thereafter, he attended college in New York, became interested in Asian studies, attended universities at Nanjing and Yunnan, in China, both before and after receiving his college degree, and planned to return to the United States after doing so. Before he attended Nanjing University, Kavowras lived in an apartment on East 81st Street in Manhattan, which he leased for four years. (Tr. 45, 70) He subleased that apartment when he left for Nanjing, returned to it for an additional year, and then gave it up when he left for Yunnan in late 1995. (Tr. 70)

In 1995, while attending Yunnan University, his plans to return to the United States changed when he was told of a job opening at Pinkerton in Hong Kong, where he was hired. (Tr. 7-8) At the time he was hired, he believed it was possible for him eventually to transfer "back to New York or anywhere else." (Tr. 9)

On his Hong Kong visa application and in other documents, plaintiff listed as his permanent residence 1421 Oriental Boulevard in Brooklyn, New York, a two-family house owned by his parents. (Tr. 9, 46) Kavowras takes the position that his residence is the downstairs apartment in that house.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.    Page 3
Not Reported in F.Supp., 1998 WL 209617 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Although he averred in his affidavit in opposition to defendants' motion that he pays "monthly rent" on that apartment (Kavowras 1/13/98 Aff. ¶ 47), he acknowledged candidly in his testimony at the hearing that he does not, but rather that he gives his parents money toward the upkeep of the premises pursuant to a "casual relationship" with them. "They actually don't want me to contribute, and I actually insist on contributing." (Tr. 47) Kavowras has a current New York driver's license and owns a car registered in New York that he uses when he visits New York, which he did four times in 1997 (Def.Ex. B), but that is otherwise used by his parents and other family members. (Tr. 17-19, 57-58) He is certified in New York as an emergency medical technician, and believes he will "most likely" renew that certification when it expires in October 1998. (Tr. 20-21)

*3 Although plaintiff has a health plan in connection with his employment in Hong Kong, he testified that he does not use it but prefers to consult physicians in New York. (Tr. 20)

Plaintiff testified that the last time the apartment he now claims as his legal residence was leased by his parents to third parties was in 1991. (Tr. 49) As noted, Kavowras rented an apartment in Manhattan until 1995, when he gave it up at the time he left to study in China. He claims he is registered to vote in New York, but acknowledges that the last time he voted was in 1993, when he was living on East 81st Street (Tr. 30) Plainly, that registration is no longer valid inasmuch as he has no connection with that apartment any longer.

Kavowras was fired by Pinkerton in July 1996 (Kavowras 1/13/98 Aff. ¶ 28), and was employed thereafter by Christian Dior in China (id. at ¶ 38) and then, since December 1996, by his current employer, Traquair, in Hong Kong. (Tr. 51) He was employed initially by Traquair pursuant to a one-year contract, but now works "on a month-to-month basis, which is fairly standard in Hong Kong."(Tr. 52) In contrast to the opportunity he might have had to return to the United States if he had continued in the employ of Pinkerton (Tr. 9), Kavowras did not testify to any similar opportunity available through his current employer, Traquair. Kavowras leases an apartment in Hong Kong on which he paid the first three months rent, but on which the rent is now paid by Traquair, in essence as part of his compensation. (Tr. 39, 43) He has a telephone and receives mail at that apartment. (Tr. 44) He is a member of a religious congregation in Hong Kong. (Tr. 35) His current work visa in Hong Kong does not expire until the year 2000; that visa could be extended for at least another three years. (Tr. 55)

Kavowras' Police Department pension is deposited by wire direct to an account he maintains in New York (Tr. 36), although he maintains an account in Hong Kong from which he pays his expenses in Hong Kong. (Tr. 35)

Kavowras pays taxes in New York, where he claims such tax credits as may accrue as the result of his foreign residence. (Tr. 12-13, 67) He pays taxes as well in Hong Kong. (Tr. 69)

Plaintiff testified that he took a course in February 1996 to prepare for the Law School Aptitude Test, although he did not complete it and has not applied to any law school. (Tr. 59-60) As to law school, he testified that "if I go" it will be to Cardozo Law School in New York. (Id.)

Although Kavowras averred repeatedly that he has always intended to return to New York (see, e.g., Tr. 32), he pointed to no particular event or date that would trigger his return; rather, he testified to a "general sense" that he will return. (Tr. 37) He testified that when he took the job with Pinkerton he expected to remain in Asia for about two or three years. "The average stay for an expat[riate] in Hong Kong or Asia is two to three years and, usually, by then, you have established yourself with a network of contacts as international manager or whatever your specialty is." (Id.)He acknowledged that his expectations have changed in the past, as opportunities arose, noting that he intended to return to New York after studying at Yunnan Uni-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 4
Not Reported in F.Supp., 1998 WL 209617 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

versity. (*Id.*) He has not actively sought employment in New York. (Tr. 53)

### III.

*4 From the above facts, it is plain that Kavowras can return to New York without much difficulty if he decides to do so. He has a place to stay-an apartment set aside for his use at his parents' home that he does not in any real sense maintain, a bank account, a car, and a current driver's license in New York. What is not at all plain is that he has formed any articulable plan to return to New York at a particular time or upon the occurrence of a particular event. To the contrary, insofar as he testified to the specificity as opposed to the certainty of his intent, he testified simply that he had a "general sense" that he would return to New York. (Tr. 37) Although he has explored the possibility of attending law school to the extent of taking only part of a preparatory course, such conduct is as consistent with a weighing of options as it is with the choice of an option. To put it another way, he appears to be residing in Hong Kong for the indefinite future and has not met the burden of showing otherwise.

Under the standards articulated by Judge Weinfeld in *Bevilaqua,* Kavowras' physical presence in Hong Kong and his apparent intent to remain there indefinitely mean that his domicile is in Hong Kong rather than in New York, notwithstanding his ongoing contacts with New York. Therefore, the court lacks subject matter jurisdiction over this action, *see Attias,* 923 F.Supp. at 594, and the complaint must be dismissed.

SO ORDERED.

S.D.N.Y.,1998.
Kavowras v. Pinkerton, Inc.
Not Reported in F.Supp., 1998 WL 209617 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.